**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

_____

)
)
TIMOTHY BOZUNG, individually and on )
behalf of all others similarly situated, )
)
       Plaintiff, )
)     Hon. Paul L. Maloney
    v. )     Case No. 22-cv-00304-PLM-SJB
)
CHRISTIANBOOK, LLC, )
)
      Defendant. )
)
_____ )

### DEFENDANT CHRISTIANBOOK, LLC'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Christianbook, LLC ("Christianbook") hereby respectfully requests that this Court dismiss the Class Action Complaint ("Complaint") of Plaintiff, Timothy Bozung, individually and on behalf of all others similarly situated, with prejudice, for failure to state a claim upon which relief can be granted.

As described in more detail in Christianbook's supporting brief (submitted herewith), Plaintiff's Complaint does not plead sufficient nonspeculative factual detail to state a plausible claim for relief under Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"). Separately, even if Plaintiff had plead the amount of factual support required to state a plausible PPPA claim, his Complaint is subject to dismissal because it complains of alleged violations occurring before July 30, 2016, and Plaintiff did not file his Complaint until March 31, 2022, well outside of the three-year limitations period set forth in

Mich. Comp. Laws § 600.5805(2). To the extent this Court disagrees that this section sets forth the applicable limitations period, and determines that the six-year period in Mich. Comp. Laws Ann. § 600.5813 controls, partial dismissal of Plaintiff's Complaint is nonetheless proper to the extent it complains of alleged violations occurring more than six-years before Plaintiff filed his Complaint—*i.e.*, March 31, 2016.

WHEREFORE, Defendant respectfully requests that this Court grant this Motion to Dismiss, with prejudice, for failure to state a claim under Rule 12(b)(6).

Dated:  June 10, 2022

Respectfully submitted,

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher
Mboettcher@plunkettcooney.mom
Patrick C. Lannen
Plannen@plunkettcooney.com
Plunkett Cooney, PC
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Tel.:  (248) 901-4035
Fax:  (248) 901-4040

Jennifer L. Chunias
JChunias@goodwinlaw.com
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  (617) 570 1000
Fax.:  (617) 523 1231

*Attorneys for the Defendants*

**LOCAL RULE 7.1(d) CERTIFICATION AND CERTIFICATE OF SERVICE**

The undersigned counsel certifies pursuant to Local Civil Rule 7.1(d) that, on June 10, 2022, counsel emailed Plaintiff's counsel to ascertain whether Plaintiff will oppose Christianbook, LLC's Motion to Dismiss. Plaintiff's counsel informed the undersigned that Plaintiff will oppose the motion.

The undersigned further certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the non-registered participants this 10th day of June, 2021.

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher

## LOCAL RULE 7.2(b)(ii) CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies pursuant to Local Civil Rule 7.2(b)(ii) that the accompanying Brief in Support of Defendant Christianbook, LLC's Motion to Dismiss contains 7,467 words, excluding the parts of the document that are exempted by Local Civil Rule 7.2(b)(i). This word count was generated using Microsoft Word version 2180.

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

_____

TIMOTHY BOZUNG, individually and on
behalf of all others similarly situated,

        Plaintiff,

      v.

CHRISTIANBOOK, LLC,

        Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Hon. Paul L. Maloney
Case No. 22-cv-00304-PLM-SJB

## BRIEF IN SUPPORT OF DEFENDANT CHRISTIANBOOK, LLC'S
## MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

    A. Plaintiff's Allegations. ............................................................................... 3

    B. The PPPA. .................................................................................................. 5

LEGAL STANDARDS ............................................................................................. 7

ARGUMENT ............................................................................................................. 8

  I.     Plaintiff Fails to State a Plausible Claim for Violations of the PPPA ............................ 8

    A. Plaintiff Pleads No Facts Supporting his Conclusory Allegations that Christianbook Disclosed his or Anyone Else's PPPA-Protected Information in the Pre-July 2016 Period he Targets. ...................................................................... 9

    B. Even if Plaintiff Had Plausibly Pled that Christianbook Disclosed Customer Information in the Pre-July 2016 Time Period, He Pleads No Facts Supporting that Such Disclosures Contained the Type of Information Prohibited by the PPPA ......... 12

  II.    Plaintiff's Claim is Untimely Under Section 5805's Three-Year Limitations Period .......................................................................................................... 13

    A. Section 5805 Applies Because Plaintiff Seeks to Recover For "Injury to a Person." .................................................................................................14

    B. State and Federal Courts Apply Section 5805 to Common-Law Invasion of Privacy Claims and Statutory Claims Implicating Injuries to Persons. ................................. 16

    C. Plaintiff's Complaint is Time-Barred Under Section 5805. ....................................... 18

    D. Section 5813 Forecloses Alleged PPPA Breaches Pre-Dating March 31, 2016 ......... 19

CONCLUSION .......................................................................................................... 20

**Cases**

*Anzaldua v. Neogen Corp.*,
    808 N.W.2d 804 (Mich. Ct. App. 2011) ...............................................................................15

*Arbre Farms Corp. v. Great Am. E&S Ins.*,
    No. 1:20-CV-551, 2021 WL 81780 (W.D. Mich. Jan. 11, 2021) ............................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................7, 8

*Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*,
    569 F. App'x 438 (6th Cir. 2014) ............................................................................................19

*Bailey v. City of Ann Arbor*,
    860 F.3d 382 (6th Cir. 2017) ...................................................................................................11

*Barry v. Ally Fin., Inc.*,
    No. 20-12378, 2021 WL 2936636 (E.D. Mich. July 13, 2021) ...............................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................... *passim*

*Boelter v. Hearst Comm's, Inc.*,
    269 F. Supp. 3d 172 (S.D.N.Y. 2017) ....................................................................................18

*Bruneau v. Aquinas Coll.*,
    No. 1:19-CV-1037, 2021 WL 4975755 (W.D. Mich. Oct. 5, 2021) ......................................17

*Bufalino v. Michigan Bell Tel. Co.*,
    404 F.2d 1023 (6th Cir. 1968) .................................................................................................17

*Gallagher v. Chrysler Corporation*,
    613 F.2d 167 (6th Cir. 1980) ...................................................................................................17

*Cataldo v. U.S. Steel Corp.*,
    676 F.3d 542 (6th Cir. 2012) .....................................................................................................8

*Cellasto Corp. v. International Tel. & Tel. Corp.*,
    215 USPQ 998 (E.D. Mich. 1982) ..........................................................................................17

*Cooper v. Team Wellness (Mental Health) Servs. Supervisor*,
    No. 18-1162, 2018 WL 7360647 (6th Cir. Oct. 11, 2018) .....................................................16

*D'Ambrosio v. Marino*,
    747 F.3d 378 (6th Cir. 2014) ...................................................................7, 8

*Dabish v. McMahon*,
    818 F. App'x 423 (6th Cir. 2020) ...................................................................17

*Daniel v. DTE Energy*,
    No. 2:11-CV-13141, 2012 WL 12925071 (E.D. Mich. Aug. 30, 2012)................................16

*Derderian v. Genesys Health Care Sys.*,
    689 N.W.2d 145 (Mich. Ct. App. 2004) ...........................................................16

*Dimond Rigging Co., LLC v. BDP Int'l, Inc.*,
    914 F.3d 435 (6th Cir. 2019) ...................................................................18

*Edwards v. Hearst Communications, Inc.*,
    No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016)................................18

*Gamino-Ramirez v. Hoornstra*,
    No. 1:16-CV-1141, 2018 WL 10394898 (W.D. Mich. Feb. 22, 2018) ......................8, 11

*Garg v. Macomb Cty. Cmty. Mental Health Servs.*,
    696 N.W.2d 646 (Mich. 2005)...................................................................17

*Goldsby v. Ford Motor Co.*,
    183 F. Supp. 2d 943 (E.D. Mich. 2001)...........................................................17

*Green v. Lansing Automakers Fed. Credit Union*,
    No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019).........................16

*Hanson Cold Storage Co. v. Chizek Elevator & Transp., Inc.*,
    205 F. Supp. 3d 920 (W.D. Mich. 2016) ...........................................................8

*Jones v. Bock*,
    549 U.S. 199 (2007)...................................................................19

*Krueger v. United States*,
    No. 17-CV-10574, 2017 WL 5467743 (E.D. Mich. Nov. 14, 2017)......................17

*Krum v. Sheppard*,
    255 F. Supp. 994 (W.D. Mich. 1966), *aff'd*, 407 F.2d 490 (6th Cir. 1967)............................14

*Lin v. Crain Commc'ns Inc.*,
    No. 19-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020) ................................15

*Lindke v. Tomlinson*,
    31 F.4th 487 .................................................................................7, 8

*Littlejohn v. Mackinac Fin. Corp.*,
    No. 2:06-CV-20, 2006 WL 2039981 (W.D. Mich. July 19, 2006) ........................ 19

*Marlowe v. Fisher Body*,
    489 F.2d 1057 (6th Cir. 1973) ............................................................................. 17

*McCree v. Cont'l Mgmt., LLC*,
    No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021) ......................... 17

*Moeller v. Am. Media, Inc.*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017) .............................................................. 15

*National Sand, Inc. v. Nagel Construction, Inc.*,
    451 N.W.2d 618 (Mich. Ct. App. 1990) .............................................................. 14

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) .............................................................. 18

*Phifer v. City of Grand Rapids, Michigan*,
    657 F. Supp. 2d 867 (W.D. Mich. 2009) ............................................................. 19

*Rayfield v. Grand Rapids, City of*,
    373 F. Supp. 3d 962 (W.D. Mich. 2018) ............................................................. 18

*S.E.C. v. Tambone*,
    597 F.3d 436 (1st Cir. 2010) ................................................................................. 8

*Smith v. Asphalt Specialists, Inc.*,
    190555, 1997 WL No. 33344052 (Mich. Ct. App. Oct. 17, 1997) ....................... 16

*Stewart's Est. v. Armstrong*,
    187 N.W.2d 223 (Mich. 1971) ............................................................................. 17

*Terry v. Tyson Farms, Inc.*,
    604 F.3d 272 (6th Cir. 2010) ................................................................................. 7

*Wheaton v. Apple Inc.*,
    No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ................. 12

*Wolfe v. Perry*,
    412 F.3d 707 (6th Cir. 2005) (claims under 42 U.S.C. § 1983) ........................... 17

## Statutes

Mich. Comp. Laws § 445.1712 ............................................................... 6, 7, 12, 13

Mich. Comp. Laws § 445.1715 (effective through July 30, 2016) ................................. 6

Mich. Comp. Laws § 600.5805(2) ...................................................................... *passim*

Mich. Comp. Laws § 600.5813 .................................................................................. *passim*

1988 Mich. Legis. Serv. 378 No. 5331 .............................................................................5

2016 Mich. Pub. Acts 92 ...................................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................7, 8, 20

<u>**PRELIMINARY STATEMENT**</u>

Defendant Christianbook, LLC ("Christianbook" or the "Company") is a business in Peabody, Massachusetts that has grown over four decades into one of the leading online sellers of Christian books, Bibles, gifts, DVDs, CDs, church supplies, and other Christian-themed products to customers across the United States. In his single-count, cookie-cutter Complaint, Plaintiff alleges that he was a Christianbook customer, that he purchased a video from Christianbook on an unspecified date over six years ago, and that Christianbook disclosed certain of his allegedly personal information to unnamed third-party data aggregators, resulting in Plaintiff receiving "a barrage of unwanted junk mail." ECF No. 1, PageID.1-2 ¶ 1. Plaintiff claims (individually and on behalf of a purported class of similarly-situated individuals) that this alleged conduct constituted violations of Michigan's Preservation of Personal Privacy Act ("PPPA"). But even accepting all of Plaintiff's conclusory allegations as true (they are not), the Complaint fails to state a claim upon which relief can be granted and must be dismissed for two independent reasons:

***First***, Plaintiff fails to plead facts that could even plausibly support a claim that Christianbook disclosed his or anyone else's personal information in violation of the PPPA on or before July 30, 2016, which is the time period Plaintiff alleges his and the purported class's PPPA claims accrued. The only "fact" Plaintiff sets forth to support his claims that Christianbook disclosed his personal information before July 30, 2016 is a screenshot purportedly showing that "a list broker" is marketing access to a so-called Christianbook "Catalog Buyers Mailing List" that apparently contains unidentified information about Christianbook buyers. But this "mailing list" expressly states that it contains customer counts through ***February 28, 2022*** – nearly six years after the pre-July 30, 2016 period in which Plaintiff alleges Christianbook disclosed his and the purported class's data. Further, Plaintiff does not allege any connection between this "list broker"

1

advertising a so-called "Catalog Buyers Mailing List" and any alleged disclosure of Plaintiff's PPPA-protected information by Christianbook, nor does Plaintiff assert any allegations about the origins of the purported "Catalog Buyers Mailing List" or whether Christianbook itself disclosed any customer information to the "list broker." Finally, Plaintiff alleges no facts plausibly supporting any inference that Christianbook disclosed the type of information prohibited by the PPPA. Given the complete lack of allegations even plausibly supporting an alleged violation of the PPPA, it is clear that Plaintiff's claim is based on pure conjecture and must be dismissed.

*Second*, Plaintiff's claims are time-barred. In a footnote and without citation to any authority, Plaintiff states that a six-year limitations period applies to the PPPA. Pursuant to black-letter Michigan law, however, all actions seeking to recover for injuries to a person that do not have their own limitations period—such as the PPPA—are subject to a three-year statute of limitations. Plaintiff fails to point to any controlling Michigan state authority that has held otherwise, because there is none. Plaintiff complains of alleged PPPA violations taking place *before* July 30, 2016, and, under the three-year limitations period, any such claims must have been brought by July 30, 2019—at the latest. But Plaintiff did not file his Complaint until March 31, 2022, rendering his claims untimely by nearly three years.

For each of these independent reasons, addressed more fully below, Plaintiff's claim fails as a matter of law, the Complaint must be dismissed with prejudice, and Christianbook should be awarded its attorney's fees and costs.

<u>**FACTUAL BACKGROUND**</u>

**A.      Plaintiff's Allegations.**

Plaintiff alleges that, at some unidentified point before July 30, 2016, he purchased a video called *The Drop Box* from Christianbook.  ECF No. 1, PageID.5-6 ¶ 9.  The crux of his purported class action Complaint is that Christianbook then disclosed information about that purchase to "data aggregators, data appenders, data cooperatives, and list brokers," which he contends was done in violation of the PPPA.  *Id.*, Page ID.1-2 ¶ 1; *see also id.*, PageID.22-23 ¶¶ 60-65.  Specifically, he alleges that "[d]ocumented evidence confirms" that, prior to July 30, 2016,[1] Christianbook "rented, exchanged, and/or otherwise disclosed detailed information" about that purchase, and about the purchases of other Christianbook customers, including what Plaintiff calls "Private Reading, Listening and Viewing information," which he defines as "full names, the titles of written materials, sound recordings, or video recordings purchased, and home addresses."  *Id.*, PageID.1-2 ¶ 1; *id.*, PageID.4 ¶ 5; *see also id.*, PageID.23 ¶ 66.  According to Plaintiff, he has "[a]s a result" of that purported disclosure "received a barrage of unwanted junk mail."  *Id.*, PageID.1-2 ¶ 1.

The "[d]ocumented evidence" that Plaintiff claims "confirms" that Christianbook disclosed his Private Reading, Listening, and Viewing Information is in a single apparent screenshot of what appears to be a website for "a list broker," NextMark, Inc. ("NextMark").  Plaintiff alleges this screenshot shows that NextMark "offers to provide renters access to the mailing list titled

---

[1] As discussed further below (*infra*, pp. 5-7), Plaintiff presumably ties Christianbook's purported violations of the PPPA to some unspecified date prior to July 30, 2016 because, effective July 31, 2016, the Michigan legislature amended the PPPA in several ways that arguably makes it more difficult for plaintiffs to prevail on their potential claims.  Michigan courts, however, have held that these amendments *do not* apply retroactively, so the (more lenient) pre-amendment version of the PPPA applies to conduct on or before July 30, 2016.  *See* ECF No. 1, PageID.2 ¶ 1 n.2 (citing cases).

'Christianbook Catalog Buyers Mailing List'," which allegedly "contains the Private Reading, Listening, and Viewing Information of 3,264,000 of Christianbook's U.S. customers[.]" *Id.*, PageID.2 ¶ 2. In its "mailing list," copied at paragraph 2 of the Complaint and attached as Exhibit A, NextMark purports to "count" Christianbook buyers "through" February 28, 2022, and claims to market various information concerning Christianbook customers from the previous twenty-four months. *See id.* The NextMark screenshot does not itself indicate what a potential purchaser of the "Christianbook Catalog Buyers Mailing List" will receive, what customer information NextMark compiles on the purported mailing list, whether such information identifies the purchases made by individual Christianbook customers, or even how NextMark obtained that information. *See* ECF No. 1-2, PageID.29. Nor does the Complaint allege any facts whatsoever about these critical pieces of information.[2]

Plaintiff seeks to assert his PPPA claim on behalf of a putative class of similarly situated individuals, which he defines as "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period, had their Private Reading, Listening, and Viewing Information disclosed to third parties by Christianbook without consent (the 'Class')."[3] ECF No. 1, PageID.19 ¶ 49. He claims that "individual joinder" is "impracticable" given the proposed Class's numerosity, but admits he does not know "[t]he precise number of Class members and their identities[.]" *Id.*, PageID.19 ¶ 50. Plaintiff also contends that common questions of fact and law would predominate over individualized ones, but then proceeds to list questions concerning

---

[2] It is unsurprising that Plaintiff's allegations are so sparse: Christianbook values its customers, and takes great care to protect their personal information, rigorously ensuring that its data protection practices are top-line and compliant with the most restrictive data protection statutes across the many jurisdictions in which it operates.

[3] Plaintiff has not yet filed a motion to certify the proposed Class; Christianbook intends to oppose any such motion, as class treatment of Plaintiff's claims would not be appropriate.

individualized inquiries, such as, *e.g.*, "whether Christianbook obtained consent before disclosing to third parties Plaintiff's and the Class's Private Reading, Listening, and Viewing Information[.]" *Id.*, PageID.19-20 ¶ 51. And, according to Plaintiff, his claims are typical of those of the proposed Class, where Christianbook allegedly acted "uniform[ly]" towards him and the proposed Class. *Id.*, PageID.20 ¶ 52. For largely this same reason, Plaintiff claims he would adequately represent the Class, where "his interests do not conflict" with those of the Class, and where he has retained "competent counsel." *Id.*, PageID.20 ¶ 53. Finally, Plaintiff contends a class action would be appropriate to achieve "consistent adjudication of the liability issues" and because "[e]ach individual Class member may lack the resources" necessary to pursue similar claims on their own. *Id.*, PageID.20-21 ¶ 54.

**B.     The PPPA.**

Plaintiff attempts to craft allegations regarding purported pre-July 30, 2016 conduct because Plaintiff seeks relief under the PPPA as enacted in 1988, rather than the amended version effective post-July 30, 2016. *See id.*, PageID.2 ¶ 1 n.2. As enacted in 1988, the PPPA reflected an effort to codify certain privacy rights "with respect to the purchase, rental, or borrowing of certain materials." *See* H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West). These "materials" included "written materials, sound recordings, and video recordings," and the PPPA provided that a customer's "selections made" of such materials could not be disclosed by "a retailer, lender, or renter of such items," unless such disclosure was to a customer itself. *See* Privacy: Sales, Rentals of Videos, etc., House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989. The PPPA thus reflected an effort to "preserve personal privacy" rights by codifying an express cause of action to ensure protection of "the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." *See id.* By doing so, the Michigan

legislature clearly signaled its intent for the PPPA to apply to disclosures of personal information that had been historically encompassed by common-law causes of action for invasion of privacy.

In 2016, the Michigan legislature amended the statute in several key ways. First, it clarified that "a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation." S.B. 490, 2016 Mich. Pub. Acts 92. Thus, whereas violations of the pre-amendment PPPA could result in plaintiffs receiving "actual damages, including damages for emotional distress, or $5,000.00, whichever is greater," Mich. Comp. Laws § 445.1715 (effective through July 30, 2016), the post-amendment PPPA requires plaintiffs to show "actual damages." *See* Mich. Comp. Laws § 445.1715 (effective July 31, 2016).

Second, the legislature amended Mich. Comp. Laws § 445.1712 "to clarify" that the PPPA does "not prohibit disclosing information if it is incident to the ordinary course of business of the person disclosing the information[.]" S.B. 490, 2016 Mich. Pub. Acts 92. And third, it importantly changed that same section to read:

> (1) Subject to subsection (2) and except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not knowingly disclose to any person, other than the customer, a record or information that personally identifies the customer as having purchased, leased, rented, or borrowed those materials from the person engaged in the business.
>
> (2) This section does not apply to the disclosure of a record or information that has been aggregated or has been processed in a manner designed to prevent its association with an identifiable customer.

*See* Mich. Comp. Laws § 445.1712 (effective July 31, 2016) (footnote omitted).

Thus, the 2016 amendments made it more difficult for plaintiffs to succeed on their PPPA claims in at least three ways: (1) by removing a plaintiff's ability to recover statutory damages,

forcing them to prove actual damages; (2) by clarifying that disclosures "incident to the ordinary course of business of the person disclosing the information" are not prohibited by the statute; and (3) by circumscribing the type of disclosures prohibited by the PPPA—*i.e.*, from those "disclos[ing] . . . a record or information ***concerning*** the purchase . . . of [certain] materials by a customer that ***indicates the identity*** of the customer," Mich. Comp. Laws § 445.1712 (effective through July 30, 2016) (emphasis added), to those "disclos[ing] . . . a record or information that ***personally identifies the customer as having purchased, leased, rented, or borrowed [certain] materials***," Mich. Comp. Laws § 445.1712 (effective July 31, 2016) (emphasis added). With its more forgiving pleading requirements, potential statutory awards, and more expansive universe of actionable disclosures, the pre-amendment PPPA is more favorable to potential plaintiffs than the current version of the PPPA.

## LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lindke v. Tomlinson*, 31 F.4th 487, 495-96 (6th Cir. 2022 (citations omitted). "This plausibility standard requires the plaintiff to plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is therefore not enough to plead "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Nor must this Court "accept as true legal conclusions or unwarranted factual inferences" and "conclusory allegations" at the motion to dismiss stage. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[,]'" nor will "conclusory allegations or legal conclusions masquerading as factual allegations . . . suffice." *Id.*

Moreover, where, as here, "the allegations in the complaint affirmatively show that the claim is time-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *Hanson Cold Storage Co. v. Chizek Elevator & Transp., Inc.*, 205 F. Supp. 3d 920, 927 (W.D. Mich. 2016) (granting motion to dismiss on statute of limitations grounds).

## ARGUMENT

Plaintiff's PPPA claim not only suffers from fatal pleading defects, but his Complaint affirmatively shows that his cause of action is time-barred.  Each infirmity entitles Christianbook to dismissal under Rule 12(b)(6).

## I.       Plaintiff Fails to State a Plausible Claim for Violations of the PPPA.

Rule 12(b)(6)'s plausibility standard demands that Plaintiff "plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Lindke*, 31 F.4th at 496-97 (affirming dismissal where plaintiff failed to "factually describe the actions [defendant] took" and made "purely conclusory" allegations).  It is therefore not enough to plead "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Where, as here, naked assertions, conclusory averments, and contradictory allegations are all a plaintiff pleads, the claim must fail.  *See, e.g.*, *Gamino-Ramirez v. Hoornstra*, No. 1:16-CV-1141, 2018 WL 10394898, at *2 (W.D. Mich. Feb. 22, 2018) ("contradict[ory]" averments render "allegations implausible"); *see also* S.*E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too

meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (citing *Twombly*, 550 U.S. at 555)).

Plaintiff's allegations boil down to this: Christianbook violated the PPPA "[b]y renting, exchanging, and/or otherwise disclosing Plaintiff's Private Reading, Listening, and Viewing Information" in addition to "other categories of individualized data and demographic information such as age, gender, ethnicity, and religion" "during the relevant pre-July 30, 2016 time period[.]" ECF No. 1, PageID. 1-2 ¶ 1; *id.*, PageID.3 ¶ 3; *id.*, PageID.4 ¶ 5. Plaintiff likewise claims that Christianbook "rent[s], exchang[es], or otherwise disclos[es]" his and other class members' "Private Reading, Listening, and Viewing Information" "rather than selling" it in order to "disclose the information time and time again to countless third parties" (*id.*, PageID.4 ¶ 6) and reap "handsome[]" "profits." *Id.*, PageID.5 ¶ 8. Plaintiff claims these allegations are supported by "[d]ocumented evidence" in the form of a screenshot purportedly demonstrating that NextMark "offers to provide renters access to the mailing list titled 'Christianbook Catalog Buyers Mailing List', which contains the Private Reading, Listening, and Viewing Information of 3,264,000 of Christianbook's U.S. Customers[.]" *Id.*, PageID.2-3 ¶ 2. For multiple reasons, these allegations utterly fail to state a remotely plausible claim for relief.

### A. Plaintiff Pleads No Facts Supporting his Conclusory Allegations that Christianbook Disclosed his or Anyone Else's PPPA-Protected Information in the Pre-July 2016 Period he Targets.

Plaintiff fails to state a plausible PPPA claim for two related, though independently fatal reasons: (1) Plaintiff pleads no facts in support of his conclusory allegation that Christianbook disclosed any customer information at all during the pre-July 30, 2016 period of which he complains, and (2) he utterly fails to provide any factual support for the allegation that *his* information has been disclosed at all.

*First*, the "[d]ocumented evidence" that Plaintiff contends "confirms" that Christianbook violated the PPPA during the "relevant pre-July 30, 2016 timeframe" (*id.*, PageId.2-4 ¶¶ 2-3) "confirms" nothing of the sort. Such "evidence" is nowhere to be found in the Complaint, as Plaintiff alleges no facts plausibly supporting that Christianbook disclosed his or anyone else's data in the "relevant pre-July 30, 2016 timeframe." Plaintiff's only support for these allegations is the NextMark screenshot purportedly marketing a so-called "Christianbook Catalog Buyers Mailing List." *See id.*, PageID.2-4 ¶¶2-3; *id.*, PageID.17-19 ¶¶ 41-48 (citing only Exhibit A). But this "mailing list" expressly states that it contains customer "counts through 02/28/2022"—nearly *six years after* the pre-July 30, 2016 period in which Plaintiff alleges Christianbook disclosed his and the purported Class's data. Even taking as true that the NextMark 2022 "mailing list" contains Christianbook customer information protected by the PPPA—and Plaintiff alleges no facts plausibly supporting that it does—what Christianbook may or may not have disclosed to NextMark in 2022 says nothing about Christianbook's treatment of customer data during the pre-July 30, 2016 period in which Plaintiff alleges his PPPA claim accrued. Plaintiff pleads no facts at all regarding Christianbook's treatment of customer data in the pre-July 30, 2016 period, which Plaintiff has defined as the relevant time period. Whatever inferences Plaintiff may be inviting the Court to draw about Christianbook's 2022 practices based on NextMark's 2022 "mailing list," Plaintiff alleges no facts that support extending such inferences to Christianbook's 2016 practices, when a materially different version of the PPPA was in force.[4] Such allegations about what

---

[4] Indeed, Plaintiff's speculation about Christianbook's pre-July 30, 2016 conduct is patently unreasonable in light of the PPPA's 2016 amendments, which significantly curtailed what counts as a prohibited disclosure. *See supra*, pp. 6-7. Simply put, certain disclosures that the PPPA countenances now, in 2022, would have violated the pre-amendment PPPA that governed prior to July 30, 2016. Without conceding that Christianbook has ever disclosed customer data to NextMark or anyone else, the simple fact is that a hypothetical disclosure of customer data in

"*might*" have occurred in 2016, "without any factual basis in the pleadings to support that speculative possibility, fail[] to satisfy *Twombly*, which limits claimants to *plausible* claims, not just *possible* ones." *See Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636, at *5 (E.D. Mich. July 13, 2021).

*Second*, and relatedly, Plaintiff provides no factual support—through Exhibit A or otherwise—for his speculative allegation that Christianbook actually disclosed *his* information at all. In fact, Exhibit A affirmatively contradicts this allegation. Specifically, Exhibit A shows that the NextMark mailing list contains Christianbook customer information about "buyers" within, at most, the twenty-four months preceding February 28, 2022—*i.e.*, data concerning "buyers" between February 28, 2020 and February 28, 2022. *See* ECF. No. 1-2, PageID.29. Plaintiff alleges that he purchased *The Drop Box* "during the relevant pre-July 30, 2016 time period[,]" ECF No. 1, PageID.5-6 ¶ 9—multiple years before the two-year window of buyer information that Exhibit A implies is reflected in the mailing list. Plaintiff's own allegations thus foreclose any inference that the only fact he marshals as support of his PPPA claim—*i.e.*, NextMark's 2022 "mailing list"—evidences disclosure of *his* personal information.[5] Far from supporting Plaintiff's speculative allegation that Christianbook disclosed Plaintiff's information, Exhibit A renders that allegation implausible. *See Gamino-Ramirez*, 2018 WL 10394898, at *2 ("if the plaintiff's pleading 'internally contradict[s] verifiable facts central to his claims, that makes his allegations implausible'" (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)). For this

2022, permissible under the current PPPA, could have violated the version of the PPPA that governed prior to July 30, 2016.

[5] Moreover, it is too great an inferential leap to assume that simply because NextMark "offers to provide renters access to the mailing list titled 'Christianbook Catalog Buyers Mailing List'" (ECF No. 1, PageID.2 ¶ 2), that this necessarily means *Christianbook* was the one "renting, exchanging, or otherwise disclosing" that information," *id.*, PageID.3 ¶ 3. Plaintiff pleads no facts in support of that allegation.

reason, too, Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," and his Complaint must be dismissed.  *See Twombly*, 550 U.S. at 570.[6]

**B.      Even if Plaintiff Had Plausibly Pled that Christianbook Disclosed Customer Information in the Pre-July 2016 Time Period, He Pleads No Facts Supporting that Such Disclosures Contained the Type of Information Prohibited by the PPPA.**

Plaintiff also fails to plead any facts that plausibly support his allegation that Christianbook disclosed the type of information prohibited from disclosure under the PPPA.  The pre-amendment PPPA prevented "a person . . . engaged in the business of selling at retail . . . video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer."  Mich. Comp. Laws § 445.1712 (effective through July 30, 2016).  This command could not be clearer: where a disclosure does not identify either the "identity of the customer" or the specific "materials" purchased, then there is no violation.  *See Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019) ("Under the unamended []PPPA, to hold [a defendant] liable, the information disclosed must indicate a customer's identity in connection with their [video] selection.").  Thus, without disclosure of a customer's *selections and their identities*, there is no PPPA violation.

Here, although Plaintiff has alleged in a conclusory manner that Christianbook's purported disclosures indicated "the fact that he purchased *The Drop Box*[,]" in addition to his "name and

---

[6] Plaintiff's claim that Christianbook "rent[s], exchang[es], or otherwise disclos[es]" his and other class members' "Private Reading, Listening, and Viewing Information" "rather than selling it" so that it can reap "handsome[]" "profits" suffers from the same pleading defect (ECF No. 1, PageID.4-5 ¶¶ 6-8)—*i.e.*, Plaintiff pleads no facts remotely suggesting that Christianbook has done anything of the sort.  Plaintiff alleges no facts supporting that Christianbook rented his or anyone else's PPPA-protected data at any point—much less during the relevant pre-July 30, 2016 time period—and alleges no facts regarding any supposed "profits" Christianbook reaped by these alleged practices.

address," ECF No. 1, PageID.23 ¶ 66, he pleads no "further factual enhancement" that support these "naked assertion[s]," *see Twombly*, 550 U.S. at 557. Indeed, the only factual support Plaintiff provides for these assertions is Exhibit A, which nowhere indicates that the allegedly disclosed information identifies the "particular . . . materials" purchased, ECF No. 1, PageID.17 ¶ 42, or even what type of information is included with the purported "mailing list" at all, let alone that the mailing list contains the "identity of the customer," *see* Mich. Comp. Laws § 445.1712 (effective through July 30, 2016). This is not enough to state a claim for violation of the PPPA.

* * *

In short, Plaintiff's Complaint has "not nudged [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and it should be dismissed, with prejudice, for three independently sufficient reasons. *First*, Plaintiff provides no factual support for his allegations that Christianbook made PPPA-prohibited disclosures in the pre-July 30, 2016 period, which he defines as the period in which his and the putative Class's claims accrued. *Second*, the only factual support Plaintiff does provide—*i.e.*, NextMark's 2022 "mailing list"—contradicts any inference that his data was disclosed at all. *Third*, Plaintiff's allegations that Christianbook disclosed the type of information prohibited by the PPPA are insufficient to state a claim, where they are nothing more than conclusory assertions untethered to factual allegations.

## II.   Plaintiff's Claim is Untimely Under Section 5805's Three-Year Limitations Period.

Even if Plaintiff had otherwise set forth allegations sufficient to state a claim for a violation of the PPPA (he has not), his Complaint is still untimely and must be dismissed. Plaintiff's claim is subject to the three-year limitations period in Mich. Comp. Laws § 600.5805(2) ("Section 5805"), and not, as he contends, the six-year period in Mich. Comp. Laws § 600.5813 ("Section 5813"). Section 5805 controls for one simple reason: that limitations period applies to "all actions

to recover damages . . . for injury to a person" (that do not otherwise have their own limitations periods), which is exactly the type of action Plaintiff alleges here. Michigan courts consistently apply Section 5805 to violation of privacy claims analogous to Plaintiff's for this very reason. *See infra*, pp. 16-18.[7] Under Section 5805, Plaintiff had until July 30, 2019 to file a complaint seeking to recover for the injuries he allegedly incurred by July 30, 2016—a deadline he missed by nearly three years.

A.     **Section 5805 Applies Because Plaintiff Seeks to Recover For "Injury to a Person."**

Section 5805 provides:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

> (2) Except as otherwise provided in this section, the period of limitations is 3 years after the time of . . . injury for all actions to recover damages . . . for injury to a person . . . .

Michigan courts "take[] an expansive view of what constitutes 'injuries to person.'" *See National Sand, Inc. v. Nagel Construction, Inc.*, 451 N.W.2d 618, 621-22 (Mich. Ct. App. 1990). The phrase "has a much broader meaning than 'physical injuries,' and includes, for example, such things as loss of consortium, libel, slander, and deprivation of civil rights." *See Krum v. Sheppard*, 255 F. Supp. 994, 999 (W.D. Mich. 1966), *aff'd*, 407 F.2d 490 (6th Cir. 1967). "In determining whether a statute of limitations applies," Michigan courts have held that "the parties' labels" are not dispositive, and instead "look[] to the true nature of a complaint, reading the complaint as a whole

---

[7] Plaintiff asserts without any explanation in a footnote that the six year statute of limitations set forth under Section 5813 applies to this matter. ECF No. 1, PageID.2 ¶ 1 n.1. There is, however, no controlling Michigan state-court precedent that supports this conclusion, and Plaintiff cites to none.

. . . to determine the exact nature of the claim." *Anzaldua v. Neogen Corp.*, 808 N.W.2d 804, 808 (Mich. Ct. App. 2011) (citation omitted).

PPPA claimants seek to recover for an "injury to [their] person"—*i.e.*, violations of their personal privacy rights—and Section 5805's three-year period therefore covers their claims. Courts consistently recognize that the "nature" of a PPPA claim, such as Plaintiff's, is to vindicate personal injuries to one's long-recognized privacy rights. *See, e.g., Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) (noting "Michigan Legislature recognized subscribers' [common law] right to privacy in their personal reading information, and through the enactment of the PPPA, 'define[d] the injury' and 'articulate[d] the chain of causation that gives rise to the injury.'"); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *2 (E.D. Mich. Jan. 16, 2020) (PPPA seeks to "'preserve personal privacy with respect to the purchase, rental, or borrowing' of written materials, sound recordings, and video recordings" so as to "address[] many concerns related to an 'unwarranted invasion of privacy'" (citations omitted)). Indeed, the "right to privacy in . . . personal-reading information" codified in the PPPA "is grounded in an interest 'traditionally regarded as providing a basis for a lawsuit in English or American courts[,]'" and "the common law ha[s] long recognized [such] a right to personal privacy[.]" *See Moeller*, 235 F. Supp. 3d at 873 (citations omitted).

Plaintiff's own allegations further reinforce that PPPA claims seek to vindicate "injur[ies] to a person." He pleads that Christianbook's alleged disclosures "put[] consumers, especially the more vulnerable members of society, at risk of serious harm from scammers." ECF No. 1, PageID.17-18 ¶ 44. And he claims that he and members of the purported Class "suffered invasions of their . . . privacy," *id.*, PageID.24-25 ¶ 73, indicating that he is seeking to recover for "injury to a person." Given how broadly Michigan courts construe "injury to person" and how Plaintiff

himself fashions his PPPA claim as an "invasion[] of [his] . . . privacy," *id.*, Section 5805's three-year limitations period to "recover damages . . . for injury to a person" governs Plaintiff's PPPA claim.

**B.      State and Federal Courts Apply Section 5805 to Common-Law Invasion of Privacy Claims and Statutory Claims Implicating Injuries to Persons.**

Further supporting the application of Section 5805 here are the many decisions applying that section's three-year period to traditional privacy claims—which are functionally equivalent to the PPPA—in addition to the countless decisions applying that section to statutory causes of action that, like the PPPA, govern personal injuries.

To start, Michigan courts—both appellate-level state courts and federal courts—consistently apply Section 5805's three-year limitations period to common-law invasion of privacy claims akin to Plaintiff's PPPA claim. *See Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-160 (Mich. Ct. App. 2004) (false light invasion of privacy claim subject to "general 'injury to person' limitation period"); *Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019) (noting parties "rightfully" "agree[d] that the 3-year statute of limitations for personal injury suits" applied to "invasion of privacy, unlawful instruction claim"); *Smith v. Asphalt Specialists, Inc.*, 190555, 1997 WL No. 33344052, at *4 (Mich. Ct. App. Oct. 17, 1997) ("The period of limitation applicable to a claim of invasion of privacy is three years."); *see also Cooper v. Team Wellness (Mental Health) Servs. Supervisor*, No. 18-1162, 2018 WL 7360647, at *2 (6th Cir. Oct. 11, 2018) ("The statute of limitations for the invasion of privacy . . . in Michigan is three years."); *Daniel v. DTE Energy*, No. 2:11-CV-13141, 2012 WL 12925071, at *4 (E.D. Mich. Aug. 30, 2012) ("With respect to invasion of privacy causes of action, 'the period of limitations is 3 years . . . .'").

Moreover, Michigan appellate-level state courts and this Court have likewise applied Section 5805 to statutory causes of action that, like the PPA, govern personal injuries, consistent with the broad construction Michigan courts give to "injury to person." *See, e.g.*, *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 657-60 (Mich. 2005) (applying Section 5805 to employment discrimination claims and retaliation claims under the Elliott-Larsen Civil Rights Act); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (Section 5805 applied to statutory claims under the Truth in Renting Act and the Housing Law of Michigan); *see also Stewart's Est. v. Armstrong*, 187 N.W.2d 223, 224 (Mich. 1971) (statutory causes of action can be "founded on injury to persons" such that Section 5805 should apply), *overruled on other grounds*, *Hawkins v. Reg'l Med. Lab'ys, P.C.*, 329 N.W.2d 729, 736 (Mich. 1982); *Bruneau v. Aquinas Coll.*, No. 1:19-CV-1037, 2021 WL 4975755, at *5 (W.D. Mich. Oct. 5, 2021) (Section 5805 applied to claims under the ADA, the Rehabilitation Act, and Michigan's Persons With Disabilities Civil Rights Act ), *report and recommendation adopted*, No. 1:19-CV-1037, 2021 WL 4972620 (W.D. Mich. Oct. 26, 2021).[8]

---

[8] Other federal courts applying Michigan law have similarly applied Section 5805 to a wide-array of statutory claims. *See, e.g.*, *Dabish v. McMahon*, 818 F. App'x 423, 427 (6th Cir. 2020) (three-year limitations period applied to statutory claim for ethnic intimidation under Mich. Comp. Laws § 750.147b); *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (applying Section 5805 to the Communications Act of 1934); *Cellasto Corp. v. International Tel. & Tel. Corp.*, 215 USPQ 998, 1000 (E.D. Mich. 1982) ("the effect of a trademark infringement" under the Lanham Act "is the same as the effect of any other injury to property" and thus "from a literal and conceptual standpoint . . . fit[] within the injury to property provisions" in Section 5805); *Krueger v. United States*, No. 17-CV-10574, 2017 WL 5467743, at *5 (E.D. Mich. Nov. 14, 2017) (federal Rehabilitation Act covered by Section 5805); *see also, e.g.*, *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (claims under 42 U.S.C. § 1983); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6th Cir. 1973) ("deprivation of civil rights is primarily the violation of personal . . . rights" such that "the Michigan three-year statute of limitations . . . relating to an action for damages for injuries to the person applies"); *Goldsby v. Ford Motor Co.*, 183 F. Supp. 2d 943, 948 (E.D. Mich. 2001) ("Michigan's three-year statute of limitations for injuries to persons or property . . . applies to an employee's action against the employer under [Labor Management Relations Act] § 301") (citing *Gallagher v. Chrysler Corporation*, 613 F.2d 167 (6th Cir. 1980)).

Given that courts have consistently held that Section 5805 applies to privacy-related causes of action, and the significant case law applying its three-year period to statutory claims governing personal injuries, it is unsurprising that courts and litigants alike agreed for years that the PPPA is subject to Section 5805—particularly where "the right guaranteed by the [PPPA] is similar in kind to other privacy rights," *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017). *See, e.g.*, *Boelter v. Hearst Comm's, Inc.*, 269 F. Supp. 3d 172, 187-89 (S.D.N.Y. 2017) (applying three-year statute of limitations to PPPA claims); *Edwards v. Hearst Communications, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016) (noting that "a three-year statute of limitations admittedly governs [plaintiff's PPPA] claims").

In short, because Plaintiff's statutory PPPA claim is fundamentally about personal injuries, it is encompassed by Section 5805's three-year limitations period, just like any other privacy claim or other statutory causes of action governing personal injuries.

## C. Plaintiff's Complaint is Time-Barred Under Section 5805.

Since Section 5805 applies to claims under the PPPA, Plaintiff was required to file his Complaint within three years of his alleged injury. Plaintiff specifically alleges that Christianbook disclosed his information at some unspecified date "during the relevant pre-July 30, 2016 time period[.]" ECF No. 1, PageID.1-2 ¶ 1. Plaintiff was therefore required to bring his claims by July 30, 2019 at the latest. Plaintiff did not file his Complaint until March 31, 2022—nearly three years after expiration of his PPPA claims. Plaintiff's Complaint should be dismissal as untimely. *See, e.g.*, *Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 441 (6th Cir. 2019) ("Dismissal of a complaint because it is barred by the statute of limitations is proper when 'the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.'" (citation omitted)); *Rayfield v. Grand Rapids, City of*, 373 F. Supp. 3d 962, 974 (W.D.

Mich. 2018) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]" (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)), *aff'd sub nom. Rayfield v. City of Grand Rapids, Michigan*, 768 F. App'x 495 (6th Cir. 2019).

### D. Section 5813 Forecloses Alleged PPPA Breaches Pre-Dating March 31, 2016.

Even if Section 5813's six-year period applied to Plaintiff's claims—and it does not—Plaintiff cannot bring claims premised on the entire pre-July 30, 2016 time period. As noted, Plaintiff did not file his Complaint until March 31, 2022, which means any alleged PPPA violation that occurred before March 31, 2016 would be untimely. Plaintiff's Complaint is therefore subject to dismissal to the extent it complains of alleged PPPA violations occurring before March 31, 2016.

### III. Dismissal of Plaintiff's Complaint Should Be With Prejudice.

Plaintiff's Complaint should be dismissed with prejudice, as Plaintiff can do nothing to any amended complaint that would cure his statute of limitations problem, making amendment futile. *See Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014) (dismissal with prejudice proper where plaintiff "could prove no set of facts in support of its allegations that would entitle it to relief" rendering amendment futile); *see also Phifer v. City of Grand Rapids, Michigan*, 657 F. Supp. 2d 867, 874 (W.D. Mich. 2009) (dismissal on statute of limitations ground rendered with prejudice); *Littlejohn v. Mackinac Fin. Corp.*, No. 2:06-CV-20, 2006 WL 2039981, at *4 (W.D. Mich. July 19, 2006) (dismissing claim "with prejudice because it [wa]s barred by the two-year limitations period"). Moreover, dismissal of the Complaint with prejudice also is warranted because the Complaint is filled with "inescapabl[e]" legal deficiencies (*see supra*, pp. 8-13), about which Plaintiff can do nothing to "save [his]complaint from

dismissal." *Arbre Farms Corp. v. Great Am. E&S Ins.*, No. 1:20-CV-551, 2021 WL 81780, at *4 (W.D. Mich. Jan. 11, 2021), *aff'd sub nom. Arbre Farms Corp. v. Great Am. E&S Ins. Co.*, No. 21-1091, 2021 WL 5095533 (6th Cir. Nov. 2, 2021). "Amendment would be futile" for those reasons, too, meaning "the complaint must be dismissed with prejudice." *Id.*

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint, with prejudice, for failure state a claim under Rule 12(b)(6).

## LOCAL RULE 7.1(d) CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies pursuant to Local Civil Rule 7.1(d) that, on June 10, 2022, counsel emailed Plaintiff's counsel to ascertain whether Plaintiff will oppose Christianbook, LLC's Motion to Dismiss. Plaintiff's counsel informed the undersigned that Plaintiff will oppose the motion.

## LOCAL RULE 7.2(b)(ii) CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies pursuant to Local Civil Rule 7.2(b)(ii) that this Brief in Support of Defendant Christianbook, LLC's Motion to Dismiss contains 7,467 words, excluding the parts of the document that are exempted by Local Civil Rule 7.2(b)(i). This word count was generated using Microsoft Word version 2180.

Dated:  June 10, 2022

Respectfully submitted,

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher
Mboettcher@plunkettcooney.mom
Patrick C. Lannen
Plannen@plunkettcooney.com
Plunkett Cooney, PC
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Tel.:  (248) 901-4035
Fax:  (248) 901-4040

Jennifer L. Chunias
JChunias@goodwinlaw.com
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  (617) 570 1000
Fax.:  (617) 523 1231

*Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 10, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which caused it to be served on all counsel of record.

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher