**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

_____

)
)
TIMOTHY BOZUNG, individually and on )
behalf of all others similarly situated, )
)
       Plaintiff, )
)
       v. )
)
CHRISTIANBOOK, LLC f/k/a CHRISTIAN )
BOOK DISTRIBUTORS CATALOG, LLC, )
)
       Defendant. )
)

_____

Hon. Hala Y. Jarbou
Case No. 22-cv-00304-HYJ-RSK

**ORAL ARGUMENT REQUESTED**


**BRIEF IN SUPPORT OF DEFENDANT CHRISTIANBOOK, LLC'S**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 4

      A.     Plaintiff's Allegations. ............................................................... 4

      B.     The PPPA ................................................................................. 8

PROCEDURAL BACKGROUND .............................................................................. 10

LEGAL STANDARDS .............................................................................................. 11

ARGUMENT ............................................................................................................. 12

    I.     Plaintiff Fails to State a Plausible Claim for Violations of the PPPA. ............... 12

      A.     Plaintiff Pleads No Facts Supporting His Conclusory Allegations That Christianbook Disclosed His or Anyone Else's PPPA-Protected Information in the Pre-July 2016 Period He Targets. .............. 13

      B.     Even if Plaintiff Had Plausibly Pled That Christianbook Disclosed Customer Information in the Pre-July 2016 Time Period, He Pleads No Facts Supporting That Such Disclosures Contained the Type of Information Prohibited by the PPPA. ...................................................... 17

    II.    Plaintiff's Claim is Untimely Under Section 5805's Three-Year Limitations Period. ................................................................................. 19

      A.     Section 5805 Applies Because Plaintiff Expressly Seeks to Recover For "Injury to a Person." ...................................................... 20

      B.     The Privacy Rights Enshrined in the PPPA Are Encompassed By the Traditional Michigan Common-Law Right to Privacy. ..................... 21

      C.     Plaintiff's Complaint is Time-Barred Under Section 5805. ................... 23

      D.     Section 5813 Forecloses Alleged PPPA Breaches Pre-Dating March 31, 2016. .................................................................................. 24

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Arbre Farms Corp. v. Great Am. E&S Ins.*,
   2021 WL 81780 (W.D. Mich. Jan. 11, 2021) ...................................................24, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................11, 12

*Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*,
   569 F. App'x 438 (6th Cir. 2014) ..........................................................................24

*Atlantis Grp., Inc. v. Alizac Partners*,
   1991 WL 319384 (W.D. Mich. Aug. 27, 1991).....................................................18

*Barry v. Ally Fin., Inc.*,
   2021 WL 2936636 (E.D. Mich. July 13, 2021) ....................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................16, 17, 18, 19

*Cataldo v. U.S. Steel Corp.*,
   676 F.3d 542 (6th Cir. 2012) ................................................................................11

*Cooper v. Team Wellness (Mental Health) Servs. Supervisor*,
   2018 WL 7360647 (6th Cir. Oct. 11, 2018)..........................................................21

*D'Ambrosio v. Marino*,
   747 F.3d 378 (6th Cir. 2014) ................................................................................11

*Daniel v. DTE Energy*,
   2012 WL 12925071 (E.D. Mich. Aug. 30, 2012) .................................................21

*Derderian v. Genesys Health Care Sys.*,
   689 N.W.2d 145 (Mich. Ct. App. 2004) ...............................................................21

*Dimond Rigging Co., LLC v. BDP Int'l, Inc.*,
   914 F.3d 435 (6th Cir. 2019) ................................................................................23

*U.S. ex rel. Dingle v. BioPort Corp.*,
   270 F. Supp. 2d 968 (W.D. Mich. 2003) ..............................................................23

*Doe v. Mills*,
   536 N.W.2d 824 (Mich. Ct. App. 1995) ...............................................................23

*Gamino-Ramirez v. Hoornstra*,
   2018 WL 10394898 (W.D. Mich. Feb. 22, 2018)............................................12, 17

*Green v. Lansing Automakers Fed. Credit Union*,
    2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019)......................................................21

*Hanson Cold Storage Co. v. Chizek Elevator & Transp., Inc.*,
    205 F. Supp. 3d 920 (W.D. Mich. 2016) ...............................................................11

*Lin v. Crain Commc'ns Inc.*,
    2020 WL 248445 (E.D. Mich. Jan. 16, 2020)..........................................................20

*Krassick v. Archaeological Inst. of Am.*,
    2022 WL 2071730 (W.D. Mich. June 9, 2022). ....................................3, 19, 21, 23

*Lindke v. Tomlinson*,
    31 F.4th 487 (6th Cir. 2022) ............................................................................11, 12

*Mays v. Int'l Mkt. Place, Inc.*,
    2021 WL 4932057 (Mich. Ct. App. Oct. 21, 2021)...............................................23

*Moeller v. Am. Media, Inc.*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017)...........................................................20, 22

*National Sand, Inc. v. Nagel Construction, Inc.*,
    451 N.W.2d 618 (Mich. Ct. App. 1990) ...............................................................20

*Pahssen v. Boyce Hydro LLC, et al.*,
    2021 WL 5755611 (E.D. Mich. March 12, 2021) ...................................................1

*Rayfield v. Grand Rapids, City of*,
    373 F. Supp. 3d 962 (W.D. Mich. 2018) ..............................................................24

*S.E.C. v. Tambone*,
    597 F.3d 436 (1st Cir. 2010)................................................................................12

*Smith v. Asphalt Specialists, Inc.*,
    1997 WL 33344052 (Mich. Ct. App. Oct. 17, 1997)............................................21

*Taylor v. U.S.*,
    161 Fed. Appx. 483 (W.D. Mich. 2005).................................................................6

*Wheaton v. Apple Inc.*,
    2019 WL 5536214 (N.D. Cal. Oct. 25, 2019)......................................................18

**Statutes**

2016 Mich. Pub. Acts 92..........................................................................................8, 9

Class Action Fairness Act .............................................................................................11

Mich. Comp. Laws § 445.1712............................................................8, 9, 10, 17, 18

Mich. Comp. Laws § 600.5805................................................................................19

Mich. Comp. Laws § 600.5813................................................................................19

**Other Authorities**

1988 Mich. Legis. Serv. 378 No. 5331 .......................................................................8

Fed. R. Civ. P. 12(b)(1)..............................................................................1, 25

Fed. R. Civ. P. 12(b)(6)...........................................................................11, 12, 25

S. REP. 599, 6, 1988 U ...............................................................................22

<u>**PRELIMINARY STATEMENT**</u>

Defendant Christianbook, LLC ("Christianbook" or the "Company") is a limited liability company based in Peabody, Massachusetts that has grown over four decades into one of the leading online sellers of Christian books, Bibles, gifts, DVDs, CDs, church supplies, and other Christian-themed products to customers across the United States. The crux of Plaintiff's claim against Christianbook is that he was a Christianbook customer, that he purchased a video from Christianbook on an unspecified date over six years ago, and that Christianbook disclosed certain of his allegedly personal information to unnamed third-party data aggregators, resulting in Plaintiff receiving "a barrage of unwanted junk mail." ECF No. 11, PageID.582-583 ¶ 1. Plaintiff claims (individually and on behalf of a purported class of similarly-situated individuals) that this alleged conduct violated Michigan's Preservation of Personal Privacy Act ("PPPA"). But, as with Plaintiff's original Complaint, his Amended Complaint still fails to state a claim upon which relief can be granted and must be dismissed. There are two independent bases for dismissal:[1]

---

[1] In addition, Plaintiff alleges diversity as the sole basis for federal jurisdiction, but he does not allege any facts regarding the membership and corresponding citizenship of Christianbook—a limited liability company—warranting dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For this reason, the Court ordered Plaintiff to show cause as to why it should not dismiss his case for lack of subject matter jurisdiction. ECF No. 14, PageID.1121-1122. On July 13, Plaintiff filed a purported response to the Court's order to show cause where he pled no facts regarding the citizenship of Christianbook's members, and instead asserted that "the Court need only consider Defendant's principal place of business and the State under whose laws it is organized" to determine whether subject matter jurisdiction exists over his class action case. ECF No. 17, PageID.1127. But Plaintiff concedes that the Sixth Circuit has never endorsed this view, all the while ignoring multiple federal court decisions in this Circuit expressly requiring a class action plaintiff to spell out the citizenship information for each member of a limited liability company to show subject matter jurisdiction. *See, e.g., Pahssen v. Boyce Hydro LLC, et al.*, 2021 WL 5755611, at *2 (E.D. Mich. March 12, 2021) (directing plaintiff "to provide the members of Defendant LLCs and explain whether this Court has subject matter jurisdiction"). Accordingly, because Christianbook is a limited liability company, Plaintiff must allege the citizenship of each member of Christianbook in order to establish complete diversity between Plaintiff and Christianbook and invoke diversity jurisdiction. Plaintiff has not done this, and dismissal is required.

**First**, Plaintiff pleads no facts that plausibly support a claim that Christianbook disclosed his or anyone else's personal information in violation of the PPPA on or before July 30, 2016, which is the time period Plaintiff alleges his and the purported class's PPPA claims accrued.[2] Plaintiff claims that "documented evidence confirms" that Christianbook disclosed his personal information prior to July 30, 2016, but this "documented evidence" is nothing more than a screenshot purporting to show that "a list broker" is marketing access to a so-called Christianbook "Catalog Buyers Mailing List" that apparently contains unidentified information about Christianbook buyers as of **February 28, 2022**—not as of July 30, 2016. Plaintiff does not claim that his or any other pre-July 30, 2016 Christianbook customer's data is included in this 2022 "mailing list," thus conceding that this "mailing list" by itself does not plausibly support that Christianbook disclosed his or any other putative class members' information during the relevant pre-July 30, 2016 time period. Plaintiff fails to allege a connection between this "list broker" advertising a so-called "Catalog Buyers Mailing List" and any alleged disclosure of Plaintiff's PPPA-protected information by Christianbook; he asserts no allegations about the origins of the purported "Catalog Buyers Mailing List" or whether Christianbook itself disclosed any customer information to the "list broker"; and he alleges no facts plausibly supporting any inference that Christianbook disclosed the type of information prohibited by the PPPA.

Plaintiff tries to remedy these pleading defects at least in part by claiming now—for the first time—that Christianbook "publicly advertised" the "same rates" from the 2022 "datacard"

---

[2] Plaintiff inconsistently identifies the "relevant . . . time period" for his and his putative class members' claims as "pre-July 31, 2016" and "pre-July 30, 2016." *See, e.g.*, ECF No. 11, PageID.587, ¶ 11 (Plaintiff purchased *The Drop Box* "during the relevant pre-July 30, 2016 time period"); *id.*, PageID.601, ¶ 48 (referring to "relevant pre-July 31, 2016 time period"). Plaintiff's claim is untimely regardless of whether it allegedly accrued on July 30, 2016 or July 31, 2016. For the sake of consistency, unless directly quoting from the Amended Complaint, Defendant will refer to the relevant time period as pre-July 30, 2016.

during the "relevant pre-July 31, 2016 time period," but he provides no documentation of Christianbook or anyone else ever "publicly advertis[ing]" this purported customer data during this time period.  Instead, he buries a link to a website in a footnote in his Amended Complaint that he claims shows this information was "accessible" during the "relevant pre-July 31, 2016 time period," but this link leads not to a "datacard" of Christianbook customer data, but a dead end error page.  Given the complete lack of allegations even plausibly supporting an alleged violation of the PPPA, it is clear that Plaintiff's claim is based on pure conjecture and must be dismissed.

*Second*, Plaintiff's claims are time-barred.  Christianbook recognizes that this Court—applying various Michigan federal and state court decisions—found that a six-year statute of limitations governs PPPA claims because this is a "statutory cause of action [that] does not define a statute of limitations and . . . does not have a traditional common-law counterpart." *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *4 (W.D. Mich. June 9, 2022).  Christianbook respectfully submits that the precedents on which this Court relied in *Krassick* have too narrowly construed the concept of "traditional common-law counterpart" when determining whether to apply Michigan's three-year statute of limitations.  Plaintiff's allegations and the documents attached to the Amended Complaint confirm that, far from conjuring a new right unrecognized by Michigan common law, the Michigan legislature enacted the PPPA to "preserve" a "personal privacy" right traditionally recognized under Michigan common law.  ECF No. 11-4, PageID.619.  Because the privacy rights codified in the PPPA encompass traditional "personal privacy" rights recognized under Michigan common law, Michigan's three-year statute of limitations applies to Plaintiff's PPPA claims.  Plaintiff complains of alleged PPPA violations taking place *before* July 30, 2016, and, under the three-year limitations period, any such claims must have been brought by July 30, 2019—at the latest.  But Plaintiff did not file his Complaint until March 31, 2022,

rendering his claims untimely by nearly three years.

Plaintiff has now had two opportunities to plead sufficient facts to survive dismissal, and failed to do so. The Amended Complaint does not meaningfully address, much less cure, the numerous pleading defects identified in Christianbook's original motion to dismiss. Rather, Plaintiff's claim against Christianbook is indistinguishable from claims his counsel has alleged in nine other cookie-cutter cases filed in this Court over the last four months. Plaintiff, like the plaintiffs in those cases, seeks to shoehorn allegedly years'-old PPPA violations into a long-outdated version of the PPPA. But Plaintiff, like the plaintiffs in those cases, relies on purported customer data from 2022 allegedly disclosed in a 2022 "mailing list" as "evidence" that his PPPA-protected data was wrongfully disclosed prior to July 30, 2016. If Plaintiff actually had a good-faith basis to bring a PPPA claim against Christianbook, he would have made that clear by adding further factual support to his Amended Complaint, but he failed to do so.

For each of these independent reasons, addressed more fully below, Plaintiff's claim fails as a matter of law, the Amended Complaint must be dismissed with prejudice, and Christianbook should be awarded its attorney's fees and costs.

## FACTUAL BACKGROUND

### A. Plaintiff's Allegations.

Plaintiff alleges that, at some unidentified point before July 30, 2016, he purchased a video called *The Drop Box* from Christianbook. ECF No. 11, PageID.587 ¶ 11. Plaintiff alleges that Christianbook—a Delaware limited liability company with its principal office in Peabody, MA— "did business under the name 'Christian Book Distributors Catalog, LLC'" during this time period. *Id.*, PageID.588-589, ¶ 12. Christian Book Distributors Catalog, LLC, just like its successor Christianbook, was a limited liability company with its principal office in Peabody, MA. ECF No.

11-3, PageID.616.  The crux of Plaintiff's purported class action Amended Complaint is that

Christianbook then disclosed information about that purchase to "data aggregators, data appenders,

data cooperatives, and list brokers," which he contends was done in violation of the PPPA.  ECF

No. 11, Page ID.582 ¶ 1; *see also id.*, PageID.604-605 ¶¶ 62-67.  Specifically, he alleges that

"[d]ocumented evidence confirms" that, prior to July 30, 2016,[3] Christianbook "rented, exchanged,

and/or otherwise disclosed detailed information" about that purchase, and about the purchases of

other Christianbook customers, including what Plaintiff calls "Private Reading, Listening and

Viewing information," which he defines as "full names, the titles of written materials, sound

recordings, or video recordings purchased, and home addresses."  *Id.*, PageID.582-584 ¶¶ 1-2; *id.*,

PageID.586 ¶ 7; *see also id.*, PageID.605 ¶¶ 64-68.  According to Plaintiff, he has "[a]s a result"

of that purported disclosure "received a barrage of unwanted junk mail."  *Id.*, PageID.583 ¶ 1.

The "[d]ocumented evidence" that Plaintiff claims "confirms" that Christianbook disclosed

his Private Reading, Listening, and Viewing Information is in a single apparent screenshot of what

appears to be a website for "a list broker," NextMark, Inc. ("NextMark").[4]  Plaintiff alleges this

---

[3] As discussed further below (*infra*, pp. 8-10), Plaintiff presumably ties Christianbook's purported
violations of the PPPA to some unspecified date prior to July 30, 2016 because, effective July 31,
2016, the Michigan legislature amended the PPPA in several ways that arguably makes it more
difficult for plaintiffs to prevail on their potential claims.  Michigan courts, however, have held
that these amendments *do not* apply retroactively, so the (more lenient) pre-amendment version of
the PPPA applies to conduct on or before July 30, 2016.  *See* ECF No. 11, PageID.583 ¶ 1 n.2
(citing cases).

[4] In almost all of the other "cognate" cases filed by the same class action firm representing Plaintiff
and reassigned to this Court on July 6, 2022, a version of this same NextMark "mailing list"
tailored to the specific defendant in each case and purportedly containing that defendant's
customers' data as of 2021 or 2022 is attached as "documented evidence" of that defendant's
alleged PPPA violation.  *See Meahl v. The Nation Company, LLC*, No. 22-cv-00402, ECF No. 1,
PageID.2-3 ¶ 2; *Bracy v. The Parable Group, LLC*, No. 22-cv-00403, ECF No. 1, PageID.2-3 ¶ 2;
*Taylor v. Active Media Interest Media, Inc.*, No. 22-cv-00447, ECF No. 1, PageID.2-3 ¶ 2; *Taylor
v. Belvoir Media Group, LLC*, No. 22-cv-00477, ECF No. 1, PageID.2-3 ¶ 2; *Fotis, et al. v. This
Old House Ventures, LLC*, No. 22-cv-00549, ECF No. 1, PageID.2-3 ¶ 2; *Prestel v. Christianity
Today Int'l*, No. 22-cv-00551, ECF No. 1, PageID.2-3 ¶ 2; *Kochanski v. American City Business*

screenshot shows that NextMark "offers to provide renters access to the mailing list titled 'Christianbook Catalog Buyers Mailing List'," which allegedly "contains the Private Reading, Listening, and Viewing Information of 3,264,000 of Christianbook's U.S. customers[.]" *Id.*, PageID.583 ¶ 2. In its "mailing list," copied at paragraph 2 of the Amended Complaint and attached as Exhibit A, NextMark purports to "count" Christianbook buyers "through" February 28, 2022, and claims to market various information concerning Christianbook customers from the previous twenty-four months. *See id.* The NextMark screenshot does not itself indicate what a potential purchaser of the "Christianbook Catalog Buyers Mailing List" will receive, what customer information NextMark compiles on the purported mailing list, whether such information identifies the purchases made by individual Christianbook customers, or even how NextMark obtained that information. *See* ECF No. 11-2, PageID.614. Nor does the Amended Complaint allege any facts whatsoever about these critical pieces of information.[5] Conceding that any information about Plaintiff or his pre-2016 purchase could not possibly be compiled as part of a "datacard" purporting to contain Christianbook customer data from February 28, 2022, Plaintiff now baldly asserts that the "same 'datacard,' with the same rates" as the 2022 "datacard" was "publicly advertised . . . during the relevant pre-July 31, 2016 time period" by a predecessor entity to Christianbook called "Christian Book Distributors, LLC." *See* ECF No. 11, PageID.585 ¶ 4. Plaintiff does not embed a screenshot of this "publicly advertised" "pre-July 31, 2016" data in his

---

*Journals, Inc.*, No. 22-cv-00582, ECF No. 1, PageID.2-3 ¶ 2; *Moore v. Columbia Books, Inc.*, No. 22-cv-00583, ECF No. 1, PageID.2-3 ¶ 2. These complaints are public records properly subject to judicial notice on a motion to dismiss. *See, e.g.*, *Taylor v. U.S.*, 161 Fed. Appx. 483, 486-87 (W.D. Mich. 2005) (holding that it was proper to take judicial notice of complaints that "contained similar facts" and "similar claims filed against similar Defendants" on a motion to dismiss).

[5] It is unsurprising that Plaintiff's allegations are so sparse: Christianbook values its customers, and takes great care to protect their personal information, rigorously ensuring that its data protection practices are top-line and compliant with the most restrictive data protection statutes across the many jurisdictions in which it operates.

Amended Complaint or attach a copy of it to his Amended Complaint.  Instead, he includes a hyperlink to the purported 2016 "datacard" in a footnote that, instead of opening the "datacard" Plaintiff claims was "accessible" during the pre-July 31, 2016 time period, actually directs one to a dead end error page with the message, "Oops, This Page Could Not Be Found!"

Plaintiff seeks to assert his PPPA claim on behalf of a putative class of similarly situated individuals, which he defines as "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period, had their Private Reading, Listening, and Viewing Information disclosed to third parties by Christianbook without consent (the 'Class')."[6]  ECF No. 11, PageID.601 ¶ 51.  He claims that "individual joinder" is "impracticable" given the proposed Class's numerosity, but admits he does not know "[t]he precise number of Class members and their identities[.]"  *Id.*, PageID.602 ¶ 52.  Plaintiff also contends that common questions of fact and law would predominate over individualized ones, but then proceeds to list questions concerning individualized inquiries, such as, *e.g.*, "whether Christianbook obtained consent before disclosing to third parties Plaintiff's and the Class's Private Reading, Listening, and Viewing Information[.]"  *Id.*, PageID.602 ¶ 53.  And, according to Plaintiff, his claims are typical of those of the proposed Class, where Christianbook allegedly acted "uniform[ly]" towards him and the proposed Class.  *Id.*, PageID. 602 ¶ 54.  For largely this same reason, Plaintiff claims he would adequately represent the Class, where "his interests do not conflict" with those of the Class, and where he has retained "competent counsel."  *Id.*, PageID.603 ¶ 55.  Finally, Plaintiff contends a class action would be appropriate to achieve "consistent adjudication of the liability issues" and

---

[6] Plaintiff has not yet filed a motion to certify the proposed Class; Christianbook intends to oppose any such motion, as class treatment of Plaintiff's claims would not be appropriate.

because "[e]ach individual Class member may lack the resources" necessary to pursue similar claims on their own. *Id.*, PageID.603 ¶ 56.

## B. The PPPA.

Plaintiff attempts to craft allegations regarding purported pre-July 30, 2016 conduct because Plaintiff seeks relief under the PPPA as enacted in 1988, rather than the amended version effective post-July 30, 2016. *See id.*, PageID.583 ¶ 1 n.2. As enacted in 1988, the PPPA reflected an effort to codify certain privacy rights "with respect to the purchase, rental, or borrowing of certain materials." *See* H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West). These "materials" included "written materials, sound recordings, and video recordings," and the PPPA provided that a customer's "selections made" of such materials could not be disclosed by "a retailer, lender, or renter of such items," unless such disclosure was to a customer itself. *See* Privacy: Sales, Rentals of Videos, etc., House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989. The PPPA thus reflected an effort to "preserve personal privacy" rights by codifying an express cause of action to ensure protection of "the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." *See id.* By doing so, the Michigan legislature clearly signaled its intent for the PPPA to apply to disclosures of personal information that had been historically encompassed by common-law causes of action for invasion of privacy.

In 2016, the Michigan legislature amended the statute in several key ways. First, it clarified that "a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation." S.B. 490, 2016 Mich. Pub. Acts 92. Thus, whereas violations of the pre-amendment PPPA could result in plaintiffs receiving "actual damages, including damages for emotional distress, or $5,000.00, whichever is greater," Mich.

Comp. Laws § 445.1715 (effective through July 30, 2016), the post-amendment PPPA requires

plaintiffs to show "actual damages." *See* Mich. Comp. Laws § 445.1715 (effective July 31, 2016).

Second, the legislature amended Mich. Comp. Laws § 445.1712 "to clarify" that the PPPA

does "not prohibit disclosing information if it is incident to the ordinary course of business of the

person disclosing the information[.]" S.B. 490, 2016 Mich. Pub. Acts 92. And third, it importantly

changed that same section to read:

> (1) Subject to subsection (2) and except as provided in section 3 or
> as otherwise provided by law, a person, or an employee or agent of
> the person, engaged in the business of selling at retail, renting, or
> lending books or other written materials, sound recordings, or video
> recordings shall not knowingly disclose to any person, other than the
> customer, a record or information that personally identifies the
> customer as having purchased, leased, rented, or borrowed those
> materials from the person engaged in the business.
>
> (2) This section does not apply to the disclosure of a record or
> information that has been aggregated or has been processed in a
> manner designed to prevent its association with an identifiable
> customer.

*See* Mich. Comp. Laws § 445.1712 (effective July 31, 2016) (footnote omitted).

Thus, the 2016 amendments made it more difficult for plaintiffs to succeed on their PPPA

claims in at least three ways: (1) by removing a plaintiff's ability to recover statutory damages,

forcing them to prove actual damages; (2) by clarifying that disclosures "incident to the ordinary

course of business of the person disclosing the information" are not prohibited by the statute; and

(3) by circumscribing the type of disclosures prohibited by the PPPA—*i.e.*, from those

"disclos[ing] . . . a record or information ***concerning*** the purchase . . . of [certain] materials by a

customer that ***indicates the identity*** of the customer," Mich. Comp. Laws § 445.1712 (effective

through July 30, 2016) (emphasis added), to those "disclos[ing] . . . a record or information that

***personally identifies the customer as having purchased, leased, rented, or borrowed [certain]***

*materials*," Mich. Comp. Laws § 445.1712 (effective July 31, 2016) (emphasis added).  With its more forgiving pleading requirements, potential statutory awards, and more expansive universe of actionable disclosures, the pre-amendment PPPA is more favorable to potential plaintiffs than the current version of the PPPA.

## PROCEDURAL BACKGROUND

Plaintiff filed an initial class action Complaint on March 31, 2022, which he served on Christianbook on April 19.  On June 10, 2022, Christianbook moved to dismiss the Complaint on the grounds that Plaintiff failed to allege sufficient facts to support a claim for relief and that it was untimely under Michigan's operative three-year statute of limitations.  On June 15, the Court *sua sponte* entered an order reminding Plaintiff of his "opportunity" to file an amended complaint to "cure the allegedly inadequate pleading."  ECF No. 10, PageID.580.  Plaintiff could either file an amended complaint by July 1, or leave his initial pleading as is and respond to Christianbook's motion to dismiss by July 8.  *See id.*, PageID.581.  Plaintiff chose to file an amended complaint, and did so on July 1.

On July 6, this case and nine other "cognate cases" filed by the same law firm representing this Plaintiff and involving the same PPPA allegations Plaintiff presents here were reassigned to Honorable Hala Y. Jarbou "in the interests of judicial economy and to conserve judicial resources."  ECF No. 13, PageID.1119.  Two days later, this Court entered another *sua sponte* order, this one requiring Plaintiff by July 15 to show cause as to why the Court should not dismiss his case for lack of subject matter jurisdiction.  ECF No. 14, PageID.1121-1122.  On July 13, Plaintiff filed a response to the Order to Show Cause, arguing that the Court should "discharge" the order to show cause because "the Court need only consider Defendant's principal place of business and the State under whose laws it is organized" to decide whether subject matter jurisdiction exists over a class

action filed pursuant to the Class Action Fairness Act. ECF No. 17, PageID.1127. Plaintiff admits that there is no controlling Sixth Court authority endorsing the standard he advances, yet he pleads no facts regarding the citizenship of Christianbook's members, claiming that "[m]embership information for LLCs is not readily available to Plaintiff or his counsel," and instead asks the Court to "compel" Christianbook to disclose this information. *Id.*, PageID.1128-1130.

## LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lindke v. Tomlinson*, 31 F.4th 487, 495-96 (6th Cir. 2022). "This plausibility standard requires the plaintiff to plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is therefore not enough to plead "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Nor must this Court "accept as true legal conclusions or unwarranted factual inferences" and "conclusory allegations" at the motion to dismiss stage. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[,]'" nor will "conclusory allegations or legal conclusions masquerading as factual allegations . . . suffice." *Id.*

Moreover, where, as here, "the allegations in the complaint affirmatively show that the claim is time-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *Hanson Cold Storage Co. v. Chizek Elevator &*

*Transp., Inc.*, 205 F. Supp. 3d 920, 927 (W.D. Mich. 2016) (granting motion to dismiss on statute of limitations grounds).

<h2 style="text-align:center"><u>ARGUMENT</u></h2>

Plaintiff's Amended Complaint is subject to dismissal for two independent reasons. First, Plaintiff's Amended Complaint is plagued by the same fatal defects as his original Complaint, and Plaintiff's failure to allege sufficient facts to support his PPPA claim requires dismissal with prejudice under Rule 12(b)(6). Second, Plaintiff's PPPA claim is time-barred under Michigan's three-year statute of limitations, which applies because the PPPA codifies a right to privacy broadly encompassed by a traditional common-law right to privacy. These infirmities entitle Christianbook to dismissal with prejudice.

## I.  <u>Plaintiff Fails to State a Plausible Claim for Violations of the PPPA.</u>

Rule 12(b)(6)'s plausibility standard demands that Plaintiff "plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lindke*, 31 F.4th at 496-97 (affirming dismissal where plaintiff failed to "factually describe the actions [defendant] took" and made "purely conclusory" allegations). It is therefore not enough to plead "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Where, as here, naked assertions, conclusory averments, and contradictory allegations are all a plaintiff pleads, the claim must fail. *See, e.g.*, *Gamino-Ramirez v. Hoornstra*, 2018 WL 10394898, at *2 (W.D. Mich. Feb. 22, 2018) ("contradict[ory]" averments render "allegations implausible"); *see also S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (citing *Twombly*, 550 U.S. at 555)).

Plaintiff's allegations boil down to this: Christianbook violated the PPPA "[b]y renting, exchanging, and/or otherwise disclosing Plaintiff's Private Reading, Listening, and Viewing Information" in addition to "other categories of individualized data and demographic information such as age, gender, ethnicity, and religion" "during the relevant pre-July 30, 2016 time period[.]" ECF No. 11, PageID.582-583 ¶ 1; *id.*, PageID.584 ¶ 3; *id.*, PageID.586 ¶ 7. Plaintiff likewise claims that Christianbook "rent[s], exchang[es], or otherwise disclos[es]" his and other class members' "Private Reading, Listening, and Viewing Information" "rather than selling" it in order to "disclose the information time and time again to countless third parties" (*id.*, PageID.587 ¶ 8) and reap "handsome[]" "profits." *Id.*, PageID.587 ¶ 10. Plaintiff claims these allegations are supported by "[d]ocumented evidence" in the form of a screenshot purportedly demonstrating that NextMark "offers to provide renters access to the mailing list titled 'Christianbook Catalog Buyers Mailing List', which contains the Private Reading, Listening, and Viewing Information of 3,264,000 of Christianbook's U.S. Customers[.]" *Id.*, PageID.583-584 ¶ 2. For multiple reasons, these allegations utterly fail to state a remotely plausible claim for relief.

### A. Plaintiff Pleads No Facts Supporting His Conclusory Allegations That Christianbook Disclosed His or Anyone Else's PPPA-Protected Information in the Pre-July 2016 Period He Targets.

Plaintiff fails to state a plausible PPPA claim for two related, though independently fatal reasons: (1) Plaintiff pleads no facts in support of his conclusory allegation that Christianbook disclosed any customer information at all during the pre-July 30, 2016 period of which he complains, and (2) he utterly fails to provide any factual support for the allegation that *his* information has been disclosed at all.

*First*, the "[d]ocumented evidence" that Plaintiff contends "confirms" that Christianbook violated the PPPA during the "relevant pre-July 30, 2016 timeframe" (*id.*, PageID.583-584 ¶¶ 2-

3) "confirms" nothing of the sort. Such "evidence" is nowhere to be found in the Amended Complaint, as Plaintiff alleges no facts plausibly supporting that Christianbook disclosed his or anyone else's data in the "relevant pre-July 30, 2016 timeframe." Plaintiff's only support for these allegations is the NextMark screenshot purportedly marketing a so-called "Christianbook Catalog Buyers Mailing List." *See id.*, PageID. 583-84 ¶¶ 2-3; *id.*, PageID.599-601 ¶¶ 43-50 (citing only Exhibit A). But this "mailing list" expressly states that it contains customer "counts through 02/28/2022"—nearly ***six years after*** the pre-July 30, 2016 period in which Plaintiff alleges Christianbook disclosed his and the purported Class's data. Even taking as true that the NextMark 2022 "mailing list" contains Christianbook customer information protected by the PPPA—and Plaintiff alleges no facts plausibly supporting that it does—what Christianbook may or may not have disclosed to NextMark in 2022 says nothing about Christianbook's treatment of customer data during the pre-July 30, 2016 period in which Plaintiff alleges his PPPA claim accrued.[7]

Plaintiff admits as much in his Amended Complaint, as he now alleges that Christian Book Distributors, LLC—a predecessor to Christianbook—"publicly advertised" the "same rates" in the 2022 "datacard" during the "pre-July 31, 2016 time period." *See id.*, PageID.585 ¶ 4. But this

---

[7] As noted *supra*, pp. 5-6, n.4 in all but one of the ten "cognate" cases filed by the attorneys representing Plaintiff that have been reassigned to this Court, a version of this NextMark "mailing list" purportedly containing PPPA-protected customer data circa 2021/2022 is cited as "documented evidence" confirming pre-July 30, 2016 disclosures of customer data. Without addressing whether these NextMark mailing lists plausibly support the existence of PPPA violations in those cases, it is telling that the *only* factual support this Plaintiff alleges for Christianbook violating the PPPA in 2016 is a version of the 2022 mailing list his attorneys relied upon as support for the PPPA claims they have brought in at least eight other cases they filed in this Court over the last four months. This underscores how utterly devoid of merit Plaintiff's claim against Christianbook is. Indeed, it appears that Plaintiff's attorneys have shoehorned Christianbook into one of the template PPPA complaints they have strategically pursued in this Court without regard to whether there is actually a factual basis for pursuing such claims against Christianbook.

new allegation does not plausibly support that Christianbook disclosed Plaintiff's or any other putative class member's data during the pre-July 30, 2016 time period.

Most conspicuously, Plaintiff does not attach the "datacard" that Christianbook allegedly "publicly advertised" during the pre-July 30, 2016 time period, or any other document supporting any inference that the "same rates" from the 2022 "datacard" were actually disclosed in the pre-July 30, 2016 time period. While Plaintiff includes a hyperlink to the purported 2016 "datacard" in a footnote in his Amended Complaint, that hyperlink opens a web page with the message, "Oops, This Page Could Not Be Found!" and not the "datacard" Plaintiff claims was "accessible" during the relevant time period." This hyperlink is the only support Plaintiff asserts to support his allegation that Christianbook advertised customer data during the pre-July 30, 2016 time period. If Plaintiff actually had any document supporting that Christianbook advertised this "datacard" during the pre-July 30, 2016 time period, he presumably would have attached it as an exhibit to his Amended Complaint. But he has not, and instead continues to rely on the 2022 NextMark "mailing list" to "confirm" that Christianbook violated the PPPA during the pre-July 30, 2016 time period, even though he admits this "mailing list" does not contain information from the pre-July 30, 2016 time period. Plaintiff alleges no facts that support extending any inferences about the 2022 "mailing list" to Christianbook's 2016 practices, when a materially different version of the PPPA was in force.[8] Such allegations about what "*might*" have occurred in 2016, "without any

---

[8] Indeed, Plaintiff's speculation about Christianbook's pre-July 30, 2016 conduct is patently unreasonable in light of the PPPA's 2016 amendments, which significantly curtailed what counts as a prohibited disclosure. *See supra*, pp. 8-10. Simply put, certain disclosures that the PPPA countenances now, in 2022, would have violated the pre-amendment PPPA that governed prior to July 30, 2016. Without conceding that Christianbook has ever disclosed customer data to NextMark or anyone else, the simple fact is that a hypothetical disclosure of customer data in 2022, permissible under the current PPPA, could have violated the version of the PPPA that governed prior to July 30, 2016.

factual basis in the pleadings to support that speculative possibility, fail[] to satisfy *Twombly*, which limits claimants to *plausible* claims, not just *possible* ones." ***See Barry v. Ally Fin., Inc.***, 2021 WL 2936636, at \*5 (E.D. Mich. July 13, 2021).

Moreover, even if Plaintiff had alleged facts supporting an inference that Christianbook "publicly advertised" the "same rates" from the 2022 "mailing list" during the pre-July 30, 2016 time period, his Amended Complaint would still lack sufficient facts plausibly supporting that this hypothetical disclosure violated the PPPA. Plaintiff does not identify the information underpinning the "rates" Christianbook allegedly "publicly advertised" in 2016, much less whether this information is covered by the PPPA or even reflects Plaintiff's PPPA-protected information. In short, even if Christianbook publicized "rate" information during the 2016 time period—and Plaintiff has put forward no facts plausibly suggesting that it did—Plaintiff's failure to allege any facts at all about the customer information reflected in that "rate" information, and whether such information was PPPA-protected is fatal to his PPPA claim.

*Second*, and relatedly, Plaintiff provides no factual support—through Exhibit A or otherwise—for his speculative allegation that Christianbook actually disclosed *his* information at all. In fact, Exhibit A affirmatively contradicts this allegation. Specifically, Exhibit A shows that the NextMark mailing list contains Christianbook customer information about "buyers" within, at most, the twenty-four months preceding February 28, 2022—*i.e.*, data concerning "buyers" between February 28, 2020 and February 28, 2022. *See* ECF. No. 11-2, PageID.614. Plaintiff alleges that he purchased *The Drop Box* "during the relevant pre-July 30, 2016 time period[,]" ECF No. 11, PageID.587 ¶ 11—multiple years before the two-year window of buyer information that Exhibit A purports is reflected in the mailing list. Plaintiff's own allegations thus foreclose any inference that the only fact he marshals as support of his PPPA claim—*i.e.*, NextMark's 2022

"mailing list"—evidences disclosure of *his* personal information.[9]  Far from supporting Plaintiff's speculative allegation that Christianbook disclosed Plaintiff's information, Exhibit A renders that allegation implausible.  *See Gamino-Ramirez*, 2018 WL 10394898, at *2 ("if the plaintiff's pleading 'internally contradict[s] verifiable facts central to his claims, that makes his allegations implausible'" (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)).  For this reason, too, Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," and his Amended Complaint must be dismissed.  *See Twombly*, 550 U.S. at 570.[10]

**B.     Even if Plaintiff Had Plausibly Pled That Christianbook Disclosed Customer Information in the Pre-July 2016 Time Period, He Pleads No Facts Supporting That Such Disclosures Contained the Type of Information Prohibited by the PPPA.**

Plaintiff also fails to plead any facts that plausibly support his allegation that Christianbook disclosed the type of information prohibited from disclosure under the PPPA.  The pre-amendment PPPA prevented "a person . . . engaged in the business of selling at retail . . . video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer."  Mich. Comp. Laws § 445.1712 (effective through July 30, 2016).  This command could not be clearer:

---

[9] Moreover, it is too great an inferential leap to assume that simply because NextMark "offers to provide renters access to the mailing list titled 'Christianbook Catalog Buyers Mailing List'" (ECF No. 11, PageID.583 ¶ 2), that this necessarily means *Christianbook* was the one "renting, exchanging, or otherwise disclosing" that information," *id.*, PageID.584 ¶ 3.  Plaintiff pleads no facts in support of that allegation.

[10] Plaintiff's claim that Christianbook "rent[s], exchang[es], or otherwise disclos[es]" his and other class members' "Private Reading, Listening, and Viewing Information" "rather than selling it" so that it can reap "handsome[]" "profits" suffers from the same pleading defect (ECF No. 11, PageID.587 ¶¶ 8-10)—*i.e.*, Plaintiff pleads no facts remotely suggesting that Christianbook has done anything of the sort.  Plaintiff alleges no facts supporting that Christianbook rented his or anyone else's PPPA-protected data at any point—much less during the relevant pre-July 30, 2016 time period—and alleges no facts regarding any supposed "profits" Christianbook reaped by these alleged practices.

where a disclosure does not identify either the "identity of the customer" or the specific "materials" purchased, then there is no violation. *See Wheaton v. Apple Inc.*, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019) ("Under the unamended []PPPA, to hold [a defendant] liable, the information disclosed must indicate a customer's identity in connection with their [video] selection."). Thus, without disclosure of a customer's *selections and their identities*, there is no PPPA violation.

Here, although Plaintiff has alleged in a conclusory manner that Christianbook's purported disclosures indicated "the fact that he purchased *The Drop Box*[,]" in addition to his "name and address," ECF No. 11, PageID.605 ¶ 68, he pleads no "further factual enhancement" that support these "naked assertion[s]," *see Twombly*, 550 U.S. at 557. Indeed, the only factual support Plaintiff provides for these assertions is Exhibit A, which nowhere indicates that the allegedly disclosed information identifies the "particular . . . materials" purchased, ECF No. 11, PageID.599 ¶ 44, or even what type of information is included with the purported "mailing list" at all, let alone that the mailing list contains the "identity of the customer," *see* Mich. Comp. Laws § 445.1712 (effective through July 30, 2016). Moreover, NextMark itself confirms that it does not sell "mailing lists."[11] Even assuming that Plaintiff had pled any facts supporting that Christianbook disclosed his PPPA-protected information and that the NextMark "mailing list" contained this information—and he has not—NextMark's unambiguous confirmation that it does not sell "mailing lists" further negates any inference that Plaintiff or any other putative class member's PPPA-protected information was disclosed.

---

[11] *See* NextMark – FAQs, https://www.nextmark.com/company/faq/. Plaintiff selectively references NextMark's website by citing to and attaching the Christianbook "mailing list" to his Amended Complaint. ECF No. 11-2, PageID.614. As Plaintiff has incorporated references to NextMark's website into his Amended Complaint, the Court may take judicial notice of this content from NextMark's website. *See Atlantis Grp., Inc. v. Alizac Partners*, 1991 WL 319384, at *1 n.2 (W.D. Mich. Aug. 27, 1991).

\* \* \*

In short, Plaintiff's Amended Complaint has "not nudged [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and it should be dismissed, with prejudice, for three independently sufficient reasons. *First*, Plaintiff provides no factual support for his allegations that Christianbook made PPPA-prohibited disclosures in the pre-July 30, 2016 period, which he defines as the period in which his and the putative Class's claims accrued. *Second*, the only factual support Plaintiff does provide—*i.e.*, NextMark's 2022 "mailing list"—contradicts any inference that his data was disclosed at all. *Third*, Plaintiff's allegations that Christianbook disclosed the type of information prohibited by the PPPA are insufficient to state a claim, where they are nothing more than conclusory assertions untethered to factual allegations.

## II. Plaintiff's Claim is Untimely Under Section 5805's Three-Year Limitations Period.

Even if Plaintiff had otherwise set forth allegations sufficient to state a claim for a violation of the PPPA (he has not), his Amended Complaint is untimely under the three-year limitations period in Mich. Comp. Laws § 600.5805(2) ("Section 5805"), and should be dismissed. Christianbook recognizes that this Court recently held that the six-year statute of limitations in Mich. Comp. Laws § 600.5813 ("Section 5813") applies to PPPA claims because the PPPA sets forth a "statutory cause of action [that] does not define a statute of limitations and . . . does not have a traditional common-law counterpart." *Krassick*, 2022 WL 2071730, at *4. Christianbook respectfully submits that the precedents on which this Court relied in *Krassick* have too narrowly construed the concept of "traditional common-law counterpart" when determining whether to apply Michigan's three-year statute of limitations. As Plaintiff's own allegations confirm, and the legislative history surrounding the enactment of the PPPA and Congress's enactment of the federal precursor to the PPPA make clear, the "right to privacy in [one's] reading materials" (*id.* at *3)

enshrined in the PPPA is a "personal privacy" right the Michigan legislature sought to "preserve"—***not*** to invent—through the legislative process. *See* ECF No. 11-4, PageID.619. Because the PPPA provides a mechanism for Michigan residents to vindicate privacy rights long recognized by the Michigan common law, the PPPA constitutes an "action[] to recover damages . . . for injury to a person," and is thus subject to Section 5805's three-year limitations period. Under Section 5805, Plaintiff had until July 30, 2019 to file a complaint seeking to recover for the injuries he allegedly incurred by July 30, 2016—a deadline he missed by nearly three years.

### A.      Section 5805 Applies Because Plaintiff Expressly Seeks to Recover For "Injury to a Person."

Section 5805 provides a three-year limitations period for "all actions to recover damages . . . for injury to a person, and "Michigan courts "take[] an expansive view of what constitutes 'injuries to person.'" *See National Sand, Inc. v. Nagel Construction, Inc.*, 451 N.W.2d 618, 621-22 (Mich. Ct. App. 1990). Plaintiff's own allegations confirm that he is pursuing a PPPA claim against Christianbook to recover for alleged "injur[ies] to a person." He pleads that Christianbook's alleged disclosures "put[] consumers, especially the more vulnerable members of society, at risk of serious harm from scammers." ECF No. 11, PageID.600 ¶ 46. He claims that he and members of the purported Class "suffered invasions of their . . . privacy," *id.*, PageID.607 ¶ 75, indicating that he is seeking to recover for "injury to a person." Courts consistently recognize that the "nature" of a PPPA claim, such as Plaintiff's, is to vindicate personal injuries to one's long-recognized privacy rights. *See, e.g.*, *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) (noting "Michigan Legislature recognized subscribers' [common-law] right to privacy in their personal reading information, and through the enactment of the PPPA, 'define[d] the injury' and 'articulate[d] the chain of causation that gives rise to the injury.'"); *Lin v. Crain Commc'ns Inc.*, 2020 WL 248445, at *2 (E.D. Mich. Jan. 16, 2020) (PPPA seeks to "'preserve

personal privacy with respect to the purchase, rental, or borrowing' of written materials, sound recordings, and video recordings" so as to "address[] many concerns related to an 'unwarranted invasion of privacy'" (citations omitted)). Thus, the "statutorily protected right to privacy" Plaintiff seeks to vindicate in his Amended Complaint (*e.g.*, ECF No. 11, PageID.602 ¶ 54) falls within the expansive contours of Section 5805's "injury to a person" provision.

## B. The Privacy Rights Enshrined in the PPPA Are Encompassed By the Traditional Michigan Common-Law Right to Privacy.

This Court, based on its consideration of applicable Michigan state and federal cases,[12] has considered whether the "injury" for which the PPPA was enacted to provide recovery "was . . . the result of a traditional tort" such that Section 5805's three-year statute of limitations applied, and has found that it is not. *Krassick*, 2022 WL 2071730, at *3. Christianbook respectfully argues that Plaintiff's PPPA claim—as he himself has framed it, consistent with the Michigan legislative history contemporaneous with adoption of the PPPA—far from being a new right unrecognized

---

[12] Christianbook acknowledges that in *Krassick*—yet another PPPA case filed by the attorneys representing this Plaintiff and alleging violations of the pre-amendment version of the PPPA—the parties presented the issue of what limitations period governs PPPA claims, invoked various state and federal case law authorities relevant to this issue, and that the Court considered these authorities in determining that Section 5813's six-year limitations period applied. *Krassick*, 2022 WL 2071730, at *3-5. Christianbook will not belabor here this Court's analysis of these authorities, but submits that there is ample precedent under both Michigan appellate-level state courts and federal courts applying Section 5805's three-year limitations period to common-law invasion of privacy claims akin to Plaintiff's PPPA claim. *See, e.g.*, *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-160 (Mich. Ct. App. 2004) (false light invasion of privacy claim subject to "general 'injury to person' limitation period"); *Green v. Lansing Automakers Fed. Credit Union*, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019) (noting parties "rightfully" "agree[d] that the 3-year statute of limitations for personal injury suits" applied to "invasion of privacy, unlawful instruction claim"); *Smith v. Asphalt Specialists, Inc.*, 1997 WL 33344052, at *4 (Mich. Ct. App. Oct. 17, 1997) ("The period of limitation applicable to a claim of invasion of privacy is three years."); *see also Cooper v. Team Wellness (Mental Health) Servs. Supervisor*, 2018 WL 7360647, at *2 (6th Cir. Oct. 11, 2018) ("The statute of limitations for the invasion of privacy . . . in Michigan is three years."); *Daniel v. DTE Energy*, 2012 WL 12925071, at *4 (E.D. Mich. Aug. 30, 2012) ("With respect to invasion of privacy causes of action, 'the period of limitations is 3 years . . . .'").

by Michigan common law, is encompassed by traditional rights to privacy long-recognized by Michigan common law.

The "right to privacy in . . . personal-reading information" codified in the PPPA "is grounded in an interest 'traditionally regarded as providing a basis for a lawsuit in English or American courts[,]'" and "the common law ha[s] long recognized [such] a right to personal privacy," which "encompass[es] [an] individual's control of information concerning his or her person." *See Moeller*, 235 F. Supp. 3d at 873 (citations omitted). The Michigan legislature was explicit on this point when it proposed adoption of the PPPA, stating that "[t]he bill would create a new public act to **preserve** personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." ECF No. 11-4, PageID.619. To "preserve" a right is to protect and maintain an existing right, not to create a new right.[13] The legislative history surrounding Congress's adoption of the Video Privacy Protection Act—the federal precursor to the PPPA—likewise confirms that the statutory privacy rights Congress sought to codify grew out of long-recognized traditional common-law rights to privacy. Indeed, Plaintiff says as much in his Amended Complaint, highlighting Senator Leahy's statement at the time he promulgated this legislation that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our homes. And it protects the selection of books that we choose to read." ECF No. 11, PageID.591 ¶ 20.[14]

---

[13] *Preserve*, Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/preserve (defining "preserve" as "to keep safe from injury, harm, or destruction: protect" or "maintain").

[14] This is consistent with other legislative history surrounding adoption of the Video Privacy Protection Act. *Accord* S. REP. 599, 6, 1988 U.S.C.C.A.N. 4342-1, 4342–6 (quoting 134 Cong.Rec. S5400–01 (May 10, 1988)) ("There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a

Michigan courts have likewise held that the invasion of privacy tort "is based on a common-law right to privacy" that protects, among other things, "public disclosure of embarrassing private facts about the plaintiff" and "publicity that places the plaintiff in a false light in the public eye." *Doe v. Mills*, 536 N.W.2d 824, 828 (Mich. Ct. App. 1995); *see also Mays v. Int'l Mkt. Place, Inc.*, 2021 WL 4932057, at *9 (Mich. Ct. App. Oct. 21, 2021) ("Michigan has long recognized the common-law tort of invasion of privacy."), *appeal denied*, 971 N.W.2d 651 (Mich. 2022). The "right to privacy in [one's] reading materials" (*Krassick*, 2022 WL 2071730, at *3) mirrors the long-held common-law right Michigan residents enjoy to be free from "public disclosure of . . . [their] private facts" and "publicity that places [them] in a false light in the public eye." Viewed against this backdrop, the PPPA simply reflects the Michigan legislature's effort to step in and codify a right already anchored in Michigan's traditional common-law right to privacy, thus bringing the PPPA within the ambit of Section 5805's three-year statute of limitations.

### C. Plaintiff's Complaint is Time-Barred Under Section 5805.

Since Section 5805 applies to claims under the PPPA, Plaintiff was required to file his Complaint within three years of his alleged injury. Plaintiff specifically alleges that Christianbook disclosed his information at some unspecified date "during the relevant pre-July 30, 2016 time period[.]" ECF No. 11, PageID.582-583 ¶ 1. Plaintiff was therefore required to bring his claims by July 30, 2019 at the latest. Plaintiff did not file his initial Complaint until March 31, 2022— nearly three years after expiration of his PPPA claims. Plaintiff's Amended Complaint should therefore be dismissal as untimely. *See, e.g.*, *Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914

---

nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy."). The Court may take notice of these congressional statements on a motion to dismiss. *See U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972-73 (W.D. Mich. 2003).

F.3d 435, 441 (6th Cir. 2019) ("Dismissal of a complaint because it is barred by the statute of limitations is proper when 'the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.'" (citation omitted)); *Rayfield v. Grand Rapids, City of*, 373 F. Supp. 3d 962, 974 (W.D. Mich. 2018) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]" (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)), *aff'd sub nom. Rayfield v. City of Grand Rapids, Michigan*, 768 F. App'x 495 (6th Cir. 2019).

> **D.      Section 5813 Forecloses Alleged PPPA Breaches Pre-Dating March 31, 2016.**

Even if Section 5813's six-year period applied to Plaintiff's claims, Plaintiff cannot bring claims premised on the entire pre-July 30, 2016 time period.  As noted, Plaintiff did not file his initial Complaint until March 31, 2022, which means any alleged PPPA violation that occurred before March 31, 2016 would be untimely.  Plaintiff's Amended Complaint is therefore subject to dismissal to the extent it complains of alleged PPPA violations occurring before March 31, 2016.

## III.      Dismissal of Plaintiff's Amended Complaint Should Be With Prejudice.

Plaintiff's Amended Complaint should be dismissed with prejudice.  Plaintiff has now made two attempts to articulate a cognizable PPPA claim—and in fashioning his Amended Complaint, had the benefit of Christianbook's first motion to dismiss as a roadmap to cure his numerous pleading deficiencies—yet still failed to do so.  Plaintiff can do nothing to any further amended complaint that would cure his pleading deficiencies, making amendment futile.  *See Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014) (dismissal with prejudice proper where plaintiff "could prove no set of facts in support of its allegations that would entitle it to relief" rendering amendment futile).  Indeed, the Amended Complaint is filled with "inescapabl[e]" legal deficiencies (*see supra*, pp. 12-18), about which Plaintiff can do nothing to "save [his]complaint from dismissal."  *Arbre Farms Corp. v. Great Am. E&S Ins.*, 2021 WL

81780, at *4 (W.D. Mich. Jan. 11, 2021), *aff'd sub nom. Arbre Farms Corp. v. Great Am. E&S Ins. Co.*, 2021 WL 5095533 (6th Cir. Nov. 2, 2021).  "Amendment would be futile" for those reasons, too, meaning "the complaint must be dismissed with prejudice."  *Id.*

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's Amended Complaint, with prejudice, for failure to state a claim under Rule 12(b)(6).

Dated:  July 15, 2022                              Respectfully submitted,

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher
Mboettcher@plunkettcooney.mom
Patrick C. Lannen
Plannen@plunkettcooney.com
Plunkett Cooney, PC
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Tel.:  (248) 901-4035
Fax:  (248) 901-4040

Jennifer L. Chunias
JChunias@goodwinlaw.com
Timothy Bazzle
TBazzle@goodwinlaw.com
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  (617) 570-1000
Fax.:  (617) 523-1231

*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 15, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which caused it to be served on all counsel of record.

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher

## **LOCAL RULE 7.1(d) CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies pursuant to Local Civil Rule 7.1(d) that, on July 15, 2022, counsel emailed Plaintiff's counsel to ascertain whether Plaintiff will oppose Christianbook, LLC's Motion to Dismiss.  Plaintiff's counsel asked the undersigned for Christianbook's grounds for dismissal, and the undersigned stated that Christianbook is moving for dismissal under Rule 12(b)(6) for failure to state a claim.  Plaintiff's counsel did not respond to the undersigned, and did not indicate whether Plaintiff would oppose the motion.

## **LOCAL RULE 7.2(b)(ii) CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies pursuant to Local Civil Rule 7.2(b)(ii) that this Brief in Support of Defendant Christianbook, LLC's Motion to Dismiss contains 8,463 words, excluding the parts of the document that are exempted by Local Civil Rule 7.2(b)(i).  This word count was generated using Microsoft Word version 2180.