## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIMOTHY BOZUNG, individually and on behalf of all others similarly situated, | Case No. 22-cv-00304-HYJ-RSK |
| Plaintiff, | Honorable Hala Y. Jarbou |
| | Magistrate Judge Ray S. Kent |
| v. | |
| CHRISTIANBOOK, LLC f/k/a CHRISTIAN BOOK DISTRIBUTORS CATALOG, LLC, | |
| Defendant. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... i

I.      INTRODUCTION ........................................................................... 1

II.     FACTUAL ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ............... 2

III.    THE PPPA ........................................................................... 4

IV.     ARGUMENT ........................................................................... 5

   A.   Plaintiff States a Claim for Violations of the PPPA ........................................... 5

   B.   Plaintiff Plausibly Alleges That Christianbook Disclosed Information
        Prohibited by the PPPA ........................................................... 12

   C.   Plaintiff's Claims Are Timely ........................................................... 14

   D.   Plaintiff's Claims Were Tolled by Michigan's COVID-19 Executive and
        Administrative Orders Related to Statutes of Limitation ............................... 15

V.      CONCLUSION........................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Blaha v. A.H. Robins & Co.*,
    708 F.2d 238 (6th Cir. 1983)....................................................................16

*Boelter v. Advance Magazine Publishers Inc.*,
    210 F. Supp. 3d 579 (S.D.N.Y. 2016)........................................................7

*Boelter v. Hearst Commcn's, Inc.*,
    192 F. Supp. 3d 427 (S.D.N.Y. 2016)........................................................7

*Boelter v. Hearst Commcn's, Inc.*,
    269 F. Supp. 3d 172 (S.D.N.Y. 2017)........................................................5

*Bowles v. Sabree*,
    2022 WL 141666 (E.D. Mich. Jan. 14, 2022)..........................................17

*Bownes v. Borroughs Corp.*,
    2021 WL 1921066 (W.D. Mich. May 13, 2021)........................................17

*Cain v. Redbox Automated Retail, LLC*,
    981 F. Supp. 2d 674 (E.D. Mich. 2013)..............................................10, 12

*Citizens for Pretrial Justice v. Goldfarb*,
    327 N.W.2d 910 (Mich. 1982)..................................................................14

*DiPonio Constr. Co. v. Rosati Masonry Co.*,
    631 N.W.2d 59 (Mich. Ct. App. 2001)................................................14, 15

*Hall v. Farm Journal, Inc.*,
    Case No. 21-cv-11811 (E.D. Mich. Apr. 5, 2022)....................................14

*Horton v. GameStop Corp.*,
    380 F. Supp. 3d 679 (W.D. Mich. 2018)...........................................7, 10, 14

*Howard v. Onion*,
    2022 WL 2065950 (6th Cir. May 17, 2022)..............................................17

*Hyman v. TV Guide Magazine, LLC*,
    2017 WL 4405009 (E.D. Mich. Oct. 4, 2017)............................................5

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017).....................................................12

*Krassick v. Archaeological Institute of Am.*,
    2022 WL 2071730 (W.D. Mich. June 9, 2022)....................................14, 15

*Mackey v. Rising*,
    2021 WL 4034226 (E.D. Mich. Sept. 3, 2021)..........................................17

*Moeller v. Am. Media, Inc.*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017......................................................7

*Nat'l Sand v. Nagel Constr., Inc.*,
    451 N.W.2d 618 (Mich. Ct. App. 1990)....................................................14

*Palmer Park Square, LLC v. Scottsdale Ins. Co.*,
    878 F.3d 530 (6th Cir. 2017).....................................................................14

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017).....................................................7

*Pratt v. KSE Sportsman Media, Inc.*,
    -- F. Supp. 3d --, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022)........14, 15

*Purnell v. Arrow Fin. Servs., LLC*,
    2009 WL 1508340 (E.D. Mich. May 29, 2009) ............................................ 15
*Ruppel v. Consumers Union of United States, Inc.*,
    2017 WL 3085365 (S.D.N.Y. June 12, 2017) .............................................. 7
*Smith v. Hilliard*,
    578 F. App'x 556 (6th Cir. 2014) ............................................................ 16
*Straus v. Governor*,
    592 N.W.2d 53 (Mich. 1999) .................................................................. 16
*Wallace v. Kato*,
    549 U.S. 384 (2007) ............................................................................. 16
*Wheaton v. Apple Inc.*,
    2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) .......................................... 13
*Yershov v. Gannett Satellite Information Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ................................................................. 12
*Zimmerman v. 3M Company*,
    542 F. Supp. 3d 673 (W.D. Mich. 2021) .................................................. 9

**Statutes**

Mich. Comp. Laws § 600.5805(2) ................................................................ 2, 14
Mich. Comp. Laws § 600.5813 .............................................................. 2, 14, 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................... 5

**Other Authorities**

28 U.S.C. § 1332(d) ................................................................................. 5
28 U.S.C. § 1332(d)(10) ........................................................................... 5
H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West) .................................... 4
Mich. Executive Order 2020-58 ................................................................ 16
Mich. Executive Order 2020-122 .............................................................. 16
Mich. Supreme Court Administrative Order 2020-3 .................................... 16
Mich. Supreme Court Administrative Order 2020-18 .................................. 16

Plaintiff Timothy Bozung, individually and on behalf of all others similarly situated, submits this response in opposition to the Motion to Dismiss (ECF No. 19 (the "Motion" or "Mot.")) the First Amended Class Action Complaint (ECF No. 11 (the "FAC")) filed by Defendant Christianbook, LLC f/k/a Christian Book Distributor Catalog, LLC ("Defendant" or "Christianbook").

## I.    INTRODUCTION

Defendant moves to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6), and as time-barred by the applicable statute of limitations. Both grounds for dismissal are completely without merit.

The factual allegations of the FAC easily state a claim for relief for violation of Michigan's Preservation of Personal Privacy Act ("PPPA"). Plaintiff alleges that Defendant sold, rented, exchanged, and otherwise disclosed its entire digital customer database – containing, *inter alia*, *all* of its customers' (including Plaintiff's) full names, the titles of written materials, sound recordings, or video recordings they purchased, and their home addresses – to various third parties. Plaintiff alleges when the disclosures occurred (prior to July 31, 2016 and within the six-year limitation period, including with the benefit of the tolling afforded by Governor Whitmer's COVID orders). Plaintiff alleges the identities of several of the third parties to whom this sensitive personal data was disclosed during that time period (and discovery will undoubtedly reveal numerous more). Plaintiff's allegations even recite the title, pricing information, subscriber counts, and other details of the publicly accessible "data card" used to advertise the sale of this trove of personal information during that pre-July 31, 2016 time period when the disclosures at issue occurred, and provide a screenshot of the way the same data card appears today. And Plaintiff specifically alleges that Defendant disclosed *all* of its customers' personal information (including Plaintiff's and every

Class member's) during that time period. These factual allegations, which must be accepted as true for purposes of deciding the Motion, are detailed and robust, and go far beyond what Rule 8 requires. Indeed, courts across the country in other PPPA publication cases have concluded that plaintiffs have stated plausible claims for relief under the statute based on substantially the same facts as alleged in the FAC. The FAC adequately states a claim for relief.

Plaintiff's claim is also timely under the applicable six-year limitation period set forth in Michigan Compiled Laws ("M.C.L.") 600.5813. While Defendant contends that the three-year limitation period set forth in M.C.L. § 600.5805(2) applies, this argument is foreclosed by controlling Sixth Circuit precedent holding that all statutory claims under Michigan law are subject to the six-year period found in section 600.5813. Moreover, in the PPPA context specifically, three federal district courts in Michigan (including, most recently, this very Court) recently decided the exact same statute of limitation question presented in the Motion – uniformly holding that PPPA claims are subject to the six-year period found in section 600.5813 (not the three-year period found in 600.5805(2)). Those courts carefully considered and thoroughly rejected all of the same arguments for applying the three-year period that Defendant raises in the Motion here. This Court should adopt the reasoning of its prior opinion on the same issue, hold that section 600.5813's six-year limitation period governs Plaintiff's claim, and find that Plaintiff timely filed this action (which seeks to redress alleged disclosures of his and Class members' personal information that occurred during the relevant pre-July 31, 2016 time period).

The FAC states a claim for relief and was timely filed. The Motion should be denied.

## II.    FACTUAL ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Defendant maintains a vast digital database comprised of its customers' information—including their full names, the titles of written materials, sound recordings, or video recordings

purchased, and home addresses (collectively "Private Reading, Listening, and Viewing Information"). FAC ¶ 43.

Defendant discloses its customers' Private Reading Information to data aggregators and appenders, who then supplement that information with additional sensitive private information about each Defendant customer, including his or her age, gender, ethnicity, and religion. *Id.* Defendant then rents and/or exchanges its mailing lists – which include subscribers' Private Reading, Listening, and Viewing Information identifying which individuals purchased subscriptions to particular written materials and particular audiovisual materials, and can include the sensitive information obtained from data aggregators and appenders – to other data aggregators and appenders, other consumer-facing businesses, non-profit organizations seeking to raise awareness and solicit donations, and to political organizations soliciting donations, votes, and volunteer efforts. *Id.* ¶ 44 (citing Ex. A).

At various times during the pre-July 30, 2016 time period, Defendant disclosed Plaintiff's Private Reading, Listening, and Viewing Information, which identified him as a purchaser of *The Drop Box* video and other video recording titles, in at least three ways. *Id.* ¶ 62. First, Defendant disclosed mailing lists containing Plaintiff's Private Reading, Listening, and Viewing Information to data aggregators and data appenders, who then supplemented the mailing lists with additional sensitive information from their own databases, before sending the mailing lists back to Defendant. *Id.* ¶ 63. Second, Defendant disclosed mailing lists containing Plaintiff's Private Reading, Listening, and Viewing Information to data cooperatives, who in turn gave Defendant access to their own mailing list databases. *Id.* ¶ 64. And third, Defendant rented and/or exchanged its mailing lists containing Plaintiff's Private Reading, Listening, and Viewing Information – enhanced with additional information from data aggregators and appenders – to third parties, including other

consumer-facing companies, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes. *Id.* ¶ 65.

By renting, exchanging, or otherwise disclosing Plaintiff's Private Reading, Listening, and Viewing Information of Plaintiff and its other Michigan-resident customers during the relevant pre-July 30, 2016 time period, Defendant violated the PPPA. *Id.* ¶ 5. Plaintiff seeks $5,000.00 for himself and each Class member pursuant to PPPA § 5(a) and costs and reasonable attorneys' fees pursuant to PPPA § 5(b). *Id.* ¶ 75.

**III.    THE PPPA**

In 1988, Michigan's legislature enacted the PPPA to protect "privacy with respect to the purchase, rental, or borrowing of certain materials," by prohibiting companies from disclosing certain types of sensitive consumer information. H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West).

Subsection 2 of the PPPA states:

> [A] person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings *shall not disclose* to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

PPPA § 2 (emphasis added).

Michigan's passage of the PPPA established as a matter of law "that a person's choice in reading, music, and video entertainment is a private matter, and not a fit subject for consideration by gossipy publications, employers, clubs, or anyone else for that matter." *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989. *See* FAC, Ex. B.

4

## IV.    ARGUMENT

The factual allegations of the FAC state a claim for violation of the PPPA, and Plaintiff's claim is timely. The Motion should be denied.[1]

### A.    Plaintiff States a Claim for Violation of the PPPA

The crux of the Motion is that "Plaintiff fails to state a plausible PPPA claim" because he "pleads no facts support[ing] his conclusory allegation that Christianbook disclosed any customer information at all during the pre-July 30, 2016 period of which he complains" and "he utterly fails to provide any factual support for the allegation that *his* information has been disclosed at all." Mot. at 13. Both are wrong.

"As relevant to this action, the Michigan [PPPA] prohibits a person, and an 'employee or agent of the person,' 'engaged in the business of selling at retail . . . books or other written materials, [sound recordings, or video recordings]' from 'disclos[ing] to any person, other than the customer,' 'a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer." *Boelter v. Hearst Commcn's, Inc.*, 269 F. Supp. 3d 172, 177-78 (S.D.N.Y. 2017) (quoting PPPA § 2).

---

[1] Defendant also contends that dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) because "Plaintiff must allege the citizenship of each member of Christianbook in order to establish complete diversity between Plaintiff and Christianbook and invoke diversity jurisdiction." Mot. at 1 n.1. The argument is baseless, as Plaintiff has already explained. On July 8, 2022, the Court issued an Order to Show Cause on this issue (ECF No. 14). On July 13, 2022, Plaintiff filed a response to the Order to Show Cause explaining that under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") "an unincorporated association shall be deemed to be a citizen of a State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). And that rule also applies to limited liability companies. *Hyman v. TV Guide Magazine, LLC*, 2017 WL 4405009, at *2 (E.D. Mich. Oct. 4, 2017). Thus, Plaintiff has properly invoked the Court's subject-matter jurisdiction pursuant to CAFA, even without alleging the citizenship of each of the members of the LLC Defendant. Notably, on July 18, 2022, the Court issued an Order finding that the Order to Show Cause was "satisfied" and that "dismissal of the case is not warranted at this time." (ECF No. 20). In other words, the Court held that subject-matter jurisdiction was properly invoked under CAFA.

The factual allegations of the FAC firmly give rise to a claim for relief under the PPPA.
The FAC specifically alleges that Defendant disclosed Plaintiff's Private Reading, Listening, and
Viewing Information to "data aggregators and data appenders, who then supplemented the mailing
lists with additional sensitive information from their own databases, before sending the mailing
lists back to Christianbook." FAC ¶ 63. The FAC also specifically alleges that Defendant
"disclosed mailing lists containing Plaintiff's Private Reading, Listening, and Viewing
Information to data cooperatives, who in turn gave Christianbook access to their own mailing list
databases." *Id.* ¶ 64. And the FAC specifically alleges that Defendant "rented and/or exchanged
its mailing lists containing Plaintiff's Private Reading, Listening, and Viewing Information –
enhanced with additional information from data aggregators and appenders – to third parties,
including other consumer-facing companies, direct-mail advertisers, and organizations soliciting
monetary contributions, volunteer work, and votes." *Id.* ¶ 65. The FAC alleges that Defendant
disclosed its *entire* digital customer database (comprised of the Private Reading, Listening and
Viewing Information of *all* of its customers, including Plaintiff and all Class members) to these
third parties. *Id.* ¶ 7. The FAC alleges that these disclosures occurred during the relevant pre-July
31, 2016 time period, and even alleges the identities of some of the third-party recipients of
Defendant's disclosures that occurred during that time period: "NextMark, Experian, Alterian, and
Carney Direct Marketing[.]" *Id.* ¶¶ 1, 7. Finally, the FAC recites the title, pricing information,
subscriber counts, and other details of the publicly accessible "data card" used to advertise the sale
of this trove of personal information during that pre-July 31, 2016 time period when the disclosures
at issue occurred, and provide a screenshot of the way the same data card appears today. *Id.* ¶¶ 2-
4.

Numerous courts across the country, including in this District, have held such factual allegations sufficient to state a claim for a violation of the PPPA. *See, e.g.*, *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018); *Boelter v. Hearst Commcn's, Inc.*, 192 F. Supp. 3d 427, 452 (S.D.N.Y. 2016); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641-42 (E.D. Mich. 2017); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016); *Ruppel v. Consumers Union of United States, Inc.*, 2017 WL 3085365, at *1 (S.D.N.Y. June 12, 2017).

Rather than tackle that overwhelming weight of authority, Defendant attempts to recast the entire FAC as predicated solely on disclosures of Private Reading, Listening, and Viewing Information to a single data-broker named NextMark. This completely misses the mark. For one thing, the FAC identifies several third parties to whom Plaintiff's and the Class's Private Reading, Listening, and Viewing Information was disclosed by Defendant during the relevant pre-July 31, 2016 time period – NextMark, Experian, Alterian, and Carney Direct Marketing. The FAC makes clear that these are but a handful of examples of recipients and resellers of this data, but by no means the *only* traffickers of such information. *See* FAC ¶¶ 63-65 (describing alleged disclosure pattern). Discovery will surely reveal many more. At this stage of the proceedings, however, whether Defendant in fact disclosed Plaintiff's and the class's Private Reading, Listening, and Viewing Information to NextMark and other data companies is a factual matter not susceptible to resolution on a motion to dismiss.

Defendant next takes aim at the screenshot of the current, 2022 version of the NextMark "datacard" included in the FAC. *See* FAC 2 (screenshot of current datacard for "Christianbook Catalog Buyers Mailing List," which identifies the list's owner as "Christianbook (formerly Christian Book Distributors)"). According to Defendant, "what Christianbook may or may not

have disclosed to NextMark in 2022 says nothing about Christianbook's treatment of customer data during the pre-July 30, 2016 period in which Plaintiff alleges his PPPA claim accrued." Mot. at 14. This is incorrect. As the FAC explains:

> The same 'datacard,' with the same rates shown above, was also publicly advertised by Defendant during the relevant pre-July 31, 2016 time period, with a slightly different title. Throughout the relevant pre-July 31, 2016 time period, NextMark and other list brokers, including SRDS, Inc., offered to provide renters access to the mailing list titled 'Christian Book Distributors (CBD) Catalog Buyers,' which contained the Private Reading, Listening, and Viewing Information of 1,407,451 customers of Christianbook (which as at the time was known as Christian Book Distributors, LLC, as explained . . . in paragraph 12 [of the FAC]) at a base price of $95.00/M per thousand (i.e., 9.5 cents apiece).

*Id.* Thus, the FAC makes clear that, during the relevant pre-July 31, 2016 time period, Defendant publicly advertised its entire customer list for rental to third parties – in the same manner that it does now under its new name (as the current Nextmark datacard confirms) – and actually recites the title, listed subscriber count, and prices for renting Defendant's entire customer database that appeared on the 2016 version of Defendant's datacard. *Id.* ¶ 4. These factual allegations – that Defendant, under its prior name (Christian Book Distributors (CBD)), was actively advertising the sale of its entire customer database to third parties during the relevant pre-July 31, 2016 time period – plausibly demonstrate that Defendant disclosed its entire customer database (comprised of the Personal Reading, Viewing and Listening Information of all of its customers during the relevant pre-July 31, 2016 time period, including of Plaintiff and all Class members) to various third parties who rented it in response to the advertised data card.

Defendant does not deny these allegations in the Motion. Rather, Defendant argues that these allegations lack any "facts that support extending any inferences about the 2022 'mailing list' to Christianbook's 2016 practices." Mot. at 15. But again, the FAC alleges facts demonstrating

that the same datacard currently accessible on Nextmark's website (as shown in paragraph 2 of the FAC) also existed in 2016 (as recited in paragraph 4 of the FAC), with all of the same rates and offerings except with a slightly different title reflecting the name that Defendant did business under at the time (before changing its name to Christianbook, LLC in connection with a merger). And the FAC specifically alleges that, "[d]uring the relevant pre-July 31, 2016 time period, Christianbook (then known as Christian Book Distributors, LLC) likewise rented, exchanged, or otherwise disclosed all of its customers' Private Reading, Listening, and Viewing Information to data aggregators, data appenders, data cooperatives, and other third parties – including, without limitation, NextMark, Experian, Alterian, and Carney Direct Marketing – without the written consent of its customers." FAC ¶ 7. The FAC further alleges that, as a result of Defendant's disclosures of his information to third-party data and marketing companies during the relevant pre-July 31, 2016 time period, he "received a barrage of unwanted junk mail." *Id*. ¶ 1. These factual allegations are well pled and must be accepted as true in deciding the Motion, and they plainly give rise to a plausible claim for relief under the PPPA.

Indeed, the FAC is governed by the liberal Rule 8 pleading standard. Plaintiff is not required to prove his claim with "documents" or any other evidence at this time. He must merely allege facts plausibly demonstrating that Defendant violated the PPPA. *See, e.g.*, *Zimmerman v. 3M Company*, 542 F. Supp. 3d 673, 681 (W.D. Mich. 2021) (Jarbou, J.) (Rule 8 pleading standard was satisfied in class action where named plaintiffs alleged that they were exposed to purportedly harmful chemical in drinking water, without alleging "whether any PFAS ha[d] been detected in their drinking water, and if so, how much"). Plaintiff's allegations, taken as true as they must be at this stage of the case, establish that Defendant's entire customer list (containing the personal, PPPA-protected data pertaining to all of its customers, including Plaintiff and each Class member)

was publicly available for rental during the relevant pre-July 31, 2016 time-period, and that Defendant in fact rented and otherwise disclosed that entire customer list to various third-party purchasers throughout that same time period. *See, e.g.*, FAC ¶¶ 4, 63-65. These allegations are more than sufficient to state a claim. *See, e.g.*, *Horton*, 380 F. Supp. 3d at 682 ("Given that GameStop possessed the *Game Informer* subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark or other data-mining companies passes the threshold of plausibility"); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 685 (E.D. Mich. 2013) (Rosen, J.) (holding, in PPPA case, that at the motion to dismiss stage "this Court must take Plaintiffs' allegations regarding the relationship between Defendant and its 'unrelated' vendors as true").

Defendant's argument that "Plaintiff provides no factual support . . . for his speculative allegation that Christianbook actually disclosed *his* information at all," fails for similar reasons. Mot. at 16. Again, the argument attempts to recast the entire FAC as alleging only disclosures to NextMark in 2022, rather than what it actually alleges occurred during the pre-July 31, 2016 time period – namely, disclosures to various data companies, including several specifically identified by name. As alleged in the FAC, Defendant disclosed its *entire* customer file (containing the Private Reading, Viewing, and Listening Information of *all* of its then-existing customers, including of Plaintiff and all Class members) to various data aggregators, data appenders, data cooperatives, and other third parties during the relevant pre-July 31, 2016 time period. FAC ¶¶ 63-65. Contrary to Defendant's assertion, Exhibit A to the FAC (the 2022 datacard) further bolsters these allegations because the datacard in existence today, which the FAC alleges is substantially the same as datacard in existence in 2016 (although bearing a slightly different heading to reflect Defendant's new name), indicates that Defendant is (and was in 2016) able to segregate customers

10

by "age," "gender," "Donor" status, and "Ethnic & Religious enhancements," all information which is not collected through the purchasing process, but rather was appended by third party data companies after receiving from Defendant its entire customer file. FAC ¶¶ 2-3. Simply put, the FAC alleges that: (i) Plaintiff purchased *The Drop Box* video directly from Defendant; (ii) Defendant then disclosed, during the relevant pre-July 31, 2016 time period, Plaintiff's Private Reading, Listening, and Viewing Information to data aggregators, data appenders, and/or data cooperatives, who supplemented that information with data from their own files; and (iii) Defendant then rented the enhanced mailing lists containing Plaintiff's Private Reading, Listening, and Viewing Information to third parties, also during the relevant pre-July 31, 2016 time period. FAC ¶ 7. And the FAC alleges Christianbook did that for *every* customer. *Id.* ¶ 7 ("During the relevant pre-July 31, 2016 time period, Christianbook . . . rented, exchanged, or otherwise disclosed *all* of its customers' Private Reading, Listening, and Viewing Information to data aggregators, data appenders, data cooperatives, and other third parties – including, without limitation, NextMark, Experian, Alterian, and Carney Direct Marketing – without the written consent of its customers.") (emphasis added); ¶¶ 63-65 (describing same). Accordingly, because Plaintiff alleges he was a purchaser of a video from Christianbook, and because Plaintiff alleges Christianbook engaged in a uniform practice of disclosing its customer information to data companies and other third parties, it is more than plausible that his Private Reading, Listening, and Viewing Information was disclosed in that same manner.

What Defendant really wants to do is turn the PPPA into a toothless tiger. The crux of this lawsuit is that Defendant *failed to inform* Plaintiff and the proposed class members that it would disclose their Private Reading, Listening, and Viewing Information to others and *failed to obtain their consent* prior to disclosing that Information to others. *See generally* FAC. Thus, under the

circumstances alleged in the FAC, Plaintiff and the unnamed class members cannot possibly be expected to allege the specific dates of disclosure or all of the entities to whom Defendant made these non-consensual, uninformed disclosures, absent a reasonable opportunity for discovery. By demanding such specificity in the Motion, Defendant asks the Court to adopt a pleading standard no PPPA plaintiff could ever satisfy, emasculating this important consumer protection statute and inoculating the company from liability under it in the process. This Court need not go along.[2]

The FAC states a claim, and the Motion should be denied.

### B.   Plaintiff Plausibly Alleges That Christianbook Disclosed Information Prohibited by the PPPA

Defendant also argues that "Plaintiff also fails to plead any facts that plausibly support his allegation that Christianbook disclosed the type of information prohibited from disclosure under the PPPA." Mot. at 17. That is wrong. Plaintiff alleges that "[d]uring the relevant pre-July 31, 2016 time period, Christianbook . . . rented, exchanged, or otherwise disclosed all of its customers' Private Reading, Listening, and Viewing Information to data aggregators, data appenders, data cooperatives, and other third parties – including, without limitation, NextMark, Experian, Alterian, and Carney Direct Marketing – without the written consent of its customers." FAC ¶ 7. In other words, Plaintiff alleges what information was disclosed, when, and to whom. As Judge Rosen held in *Cain*, at this stage these allegations must be taken as true. *See also In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017) (accepting allegations regarding types of information disclosed in a federal VPPA case as true at the motion to dismiss stage); *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (same).

---

[2] This is especially true where, as here, nearly six years have passed since the alleged unlawful conduct and the filing of the FAC. But, as this Court has already held and as explained below, claims brought within six years are timely under the PPPA. Thus, it would make no sense to gut a PPPA plaintiff's ability to bring a timely claim by demanding such an exacting pleading standard.

Moreover, Plaintiff bolsters his allegations with the "mailing list" attached as Exhibit A to the FAC and the substantially identical 2016 version recited in paragraph 4 of the FAC, which indicate that Defendant sold, rented, and otherwise exchanged to third parties not just its customers' names and addresses, but also myriad categories of additional information pertaining to each of its customers' purchases, including how much money the customer spent and the "product" the customer purchased. FAC ¶¶ 2-4 & Ex. A. And by nature of the fact that the list is a "mailing list," it can reasonably be inferred that it must include names and addresses. *Id.*

Defendant's citation to *Wheaton v. Apple Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) is inapposite. In *Wheaton*, the plaintiffs alleged violations of the PPPA arising from disclosures of music purchase information made on their phones, and relied on an unnamed purported data offering to bolster their allegations. *Id.* at *4. The defendant in *Wheaton* denied that it was even responsible for disclosing the data that was offered for sale. Here, by contrast, Defendant does not even deny disclosing its customers' data (including during the relevant pre-July 31, 2016 time period), and Plaintiff includes an offering titled "Mailing List" that was undeniably offered for sale publicly online by the Defendant to third parties and in fact sold by the Defendant to third parties, thereby plausibly alleging that the list includes identifying information of all of Defendant's customers and information concerning each of their purchases of video recordings, sound recordings, or written materials. FAC ¶¶ 2-4. Moreover, *Wheaton* was limited to the purported data offerings, where as here, Plaintiff merely provides the datacards to bolster his allegations that Defendant disclosed its customers' Private Reading, Listening, and Viewing Information to a variety of data companies. FAC ¶¶ 63-65. *Wheaton* is also the only decision that has ever been issued finding a PPPA plaintiff's allegations insufficient to withstand a motion to dismiss, and Plaintiff respectfully submits that other courts' decisions on this issue in PPPA cases (such as, *e.g.*,

*Horton v. Gamestop*) are better reasoned and more persuasive.

### C. Plaintiff's Claims Are Timely

Defendant also argues that Plaintiff's claim "is untimely under the three-year limitations period in Mich. Comp. Laws § 600.5805(2) . . . and should be dismissed." Mot. at 19. But as this Court has already determined, "the six-year statute of limitations in Mich. Comp. Laws § 600.5813 governs a PPPA claim." *Krassick v. Archaeological Institute of Am.*, 2022 WL 2071730, at *5 (W.D. Mich. June 9, 2022) (Jarbou, J.). This Court's decision in *Krassick* is well-reasoned and supported by Sixth Circuit and Michigan appellate authority. *See Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 540 (6th Cir. 2017) (holding that "§ 600.5813 applies to statutory causes of action, including those for civil fines"); *DiPonio Constr. Co. v. Rosati Masonry Co.*, 631 N.W.2d 59, 66 (Mich. Ct. App. 2001) (holding that "a civil cause of action arising from a statutory violation is subject to the six-year limitation period in § 5813, if the statute itself does not provide a limitation period"); *Citizens for Pretrial Justice v. Goldfarb*, 327 N.W.2d 910, 915 (Mich. 1982) (holding that § 5805 only "applies to traditional, primarily common-law torts"); *Nat'l Sand v. Nagel Constr., Inc.*, 451 N.W.2d 618, 622 (Mich. Ct. App. 1990) (describing *Goldfarb* and stating that because "the plaintiffs' injury was not the result of a traditional tort, it must fall under the residual six-year period of limitation contained in § 5813"). Moreover, every other court to consider this question has concluded that the six-year statute of limitations in § 5813 applies to PPPA claims. *See Pratt v. KSE Sportsman Media, Inc.*, -- F. Supp. 3d --, 2022 WL 469075, at *5 (E.D. Mich. Feb. 15, 2022) (Ludington, J.) ("A six-year statute of limitations applies to PPPA claims."); *Hall v. Farm Journal, Inc.*, Case No. 21-cv-11811, ECF No. 26, PageID.718, at 19:8-10 (E.D. Mich. Apr. 5, 2022) (Lawson, J.) ("The plaintiff's claim is governed by Section 5813, and therefore, the claim appears to be timely for the purpose of this motion."). Exhibit 1, transcript.

The Motion raises the same arguments that were rejected by this Court in *Krassick* and that were rejected by Judge Ludington in *Pratt* and by Judge Lawson in *Hall*. Mot. at 19-23. Specifically, Defendant argues that "Plaintiff's PPPA claim . . . far from being a new right unrecognized by Michigan common law, is encompassed by traditional rights to privacy long-recognized by Michigan common law." Mot. at 21-22. But as this Court held in *Krassick*, Plaintiff's "injury to [his] right to privacy . . . is not a traditional common-law tort. Although such a right is 'similar in kind' to rights protected by the common-law tort of invasion of privacy, the right to privacy in one's [audiovisual and] reading materials is nonetheless the creation of a statute; it did not exist under common law." *Krassick*, 2022 WL 2071730, at *3. "Accordingly, because '[Plaintiff's] injury was not the result of a traditional tort, [his claim] must fall under the residual six-year period contained in § 5813.'" *Id.* (quoting *Nat'l Sand*, 451 N.W.2d at 622). "Put another way, because [Plaintiff's] 'right to recovery' 'arises from a statute' rather than a 'a common-law right,' the six-year limitation period applies." *Id.* (quoting *Nat'l Sand*, 451 N.W.2d at 622 n.7).

In sum, it is of no consequence whether Plaintiff's PPPA claim "is encompassed by traditional rights to privacy long-recognized by Michigan common law." Mot. at 22. What matters is whether the claim <u>was</u> a tort at common law. Here, it was not. The six-year statute of limitations in § 5813 therefore applies. *See Purnell v. Arrow Fin. Servs., LLC*, 2009 WL 1508340, at *2 (E.D. Mich. May 29, 2009) ("The mere fact that Plaintiff's allegations may be, in some manner, shoe-horned into a common-law tort cannot control in light of clear direction that where 'plaintiff's civil cause of action [is] for … a statutory violation, [the court should apply] the six-year limitation period found in § 5813.") (citing *DiPonio*, 631 N.W.2d at 66) (alterations in original).

### D.    <u>Plaintiff's Claims Were Tolled by Michigan's COVID-19 Executive and Administrative Orders Related to Statutes of Limitation</u>

Defendant argues that "[e]ven if Section 5813's six-year period applied to Plaintiff's

claims," "Plaintiff's Amended Complaint is [] subject to dismissal to the extent it complains of alleged PPPA violations occurring before March 31, 2016," *i.e.*, six-years before the date Plaintiff filed his initial Complaint. Mot. at 24. That is wrong. Plaintiff's claims were tolled for 101 days from March 10, 2020, through June 20, 2020, by Governor Whitmer's Executive Orders and the Michigan Supreme Court's Administrative Order (together, the "COVID-19 Orders") tolling the statute of limitations for all Michigan claims due to COVID-19. *See* Mich. Executive Order 2020-58 ("[A]ll deadlines applicable to the commencement of all civil and probate actions and proceedings, <u>including but not limited to any deadline for filing an initial pleading</u> . . . are suspended as of March 10, 2020 <u>and shall be tolled</u> until the end of the declared states of disaster and emergency.") (emphasis added); Mich. Supreme Court Administrative Order 2020-3 ("For all deadlines applicable to the commencement of all civil and probate case types, <u>including but not limited to the deadline for the initial filing of a pleading</u> . . . any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included.") (emphasis added); *see also* Mich. Executive Order 2020-122 (ending tolling period on June 20, 2020); Mich. Supreme Court Administrative Order 2020-18 (same).

Under Michigan law "the Governor's action [in issuing an Executive Order] has the status of enacted legislation." *Straus v. Governor*, 592 N.W.2d 53, 57 (Mich. 1999). "Pursuant to the *Erie* doctrine, state statutes of limitations must be applied by federal courts sitting in diversity." *Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983). "Just as limitations periods are taken from state law, so are the rules regarding tolling." *Smith v. Hilliard*, 578 F. App'x 556, 562 (6th Cir. 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007)) ("We have generally referred to state law for tolling rules, just as we have for the length of statute of limitation."). Thus, because the *Erie* doctrine requires this Court to apply Michigan statute of limitations and tolling rules, and

because the COVID-19 Orders have the same status as enacted legislation under Michigan law, the Court is compelled to apply the COVID-19 Orders and find that the statute of limitations as tolled from March 10, 2020, to June 20, 2020.

Indeed, this Court and others have held that the COVID-19 Orders toll the statute of limitations for Michigan claims. *See Bownes v. Borroughs Corp.*, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (Jarbou, J.) (holding that plaintiff's Elliot-Larsen Civil Rights Act claim was tolled from March 10, 2020, to June 20, 2020 by COVID-19 Orders); *Mackey v. Rising*, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021) (holding same in § 1983 action); *Bowles v. Sabree*, 2022 WL 141666, at *9 (E.D. Mich. Jan. 14, 2022) (same); *see also Howard v. Onion*, 2022 WL 2065950, at *2 (6th Cir. May 17, 2022) (concluding same under Ohio law).

Accordingly, Plaintiff's claim was tolled for 101 days from March 10, 2020, to June 20, 2020. Therefore, the applicable period is December 21, 2015, to July 31, 2016.[3]

## V.    CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Dated:  August 12, 2022                     Respectfully submitted,

<div style="margin-left: 40%;">

/s/ E. Powell Miller
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph I. Marchese (P85862)
Philip L. Fraietta (P85228)
BURSOR & FISHER, P.A.
888 Seventh Avenue

</div>

---

[3] This period was calculated by subtracting 101 days from March 31, 2016.

New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
David W. Hall
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
dhall@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 12, 2022, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.


/s/ *E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com

1