## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| TIMOTHY BOZUNG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIANBOOK, LLC f/k/a CHRISTIAN BOOK DISTRIBUTORS CATALOG, LLC,<br><br>Defendant. | Hon. Hala Y. Jarbou<br>Case No. 22-cv-00304-HYJ-RSK<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT CHRISTIANBOOK, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................. 3

    I.    Plaintiff Does Not Allege Facts Plausibly Supporting a Pre-July 31, 2016
        Disclosure. ............................................................................................... 3

    II.    Plaintiff Concedes That Conduct Outside the December 21, 2015 to July
        31, 2016 Range Is Subject to Dismissal.................................................. 7

CONCLUSION............................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boelter v. Hearst Commcn's, Inc.*,
    192 F. Supp. 3d 427 (S.D.N.Y. 2016) ......................................................................6

*D'Ambrosio v. Marino*,
    747 F.3d 378 (6th Cir. 2014) ..................................................................................5

*Duchin v. E. Upper Peninsula Intermediate Sch. Dist.*,
    2022 WL 969679 (W.D. Mich. Mar. 31, 2022)........................................................7

*High Five Threads, Inc. v. Mich. Farm Bureau*,
    2021 WL 1809835 (W.D. Mich. May 6, 2021) ........................................................6

*Horton v. GameStop Corp.*,
    380 F. Supp. 3d 679 (W.D. Mich. 2018) .................................................................6

*Moeller v. Am. Media, Inc*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017) ..................................................................6

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) ..................................................................6

*Ruppel v. Consumers Union of U. S., Inc.*,
     2017 WL 3085365 (S.D.N.Y. June 12, 2017) .........................................................6

*Smith v. BAC Home Loans Servicing, LP*,
    552 F. App'x 473 (6th Cir. 2014) ........................................................................2, 5

*Zimmerman v. 3M Company*,
    542 F. Supp. 3d 673 (W.D. Mich. 2021) .................................................................7

The Opposition ("Opp.") confirms that Plaintiff's First Amended Complaint ("FAC") is propped up by conclusory allegations and unwarranted factual inferences, and subject to dismissal under Rule 12(b)(6).  Stripped of its boilerplate "factual" allegations, the FAC consists of (1) Plaintiff's claim that he purchased *The Drop Box* video from Christianbook prior to July 30, 2016, (2) a 2022 "mailing list" apparently advertising aggregate Christianbook customer information from February 28, 2020 to February 28, 2022, and (3) a link to a dead end website that Plaintiff claims shows that Christianbook disclosed information "substantially identical" to the 2022 "mailing list" during the pre-July 31, 2016 period.  These barebone allegations do not support any reasonable inference that Christianbook disclosed Plaintiff or anyone else's personal information prior to July 30, 2016, fall far short of satisfying Plaintiff's pleading burden under Rule 8, and make clear that dismissal of the FAC with prejudice is warranted.

Rather than explain why it is reasonable for the Court to infer that Christianbook disclosed his or anyone else's PPPA-protected information in 2016 based on the 2022 "mailing list" and a defunct website, Plaintiff uses his Opposition to further obfuscate and mischaracterize Rule 8 pleading requirements.  Plaintiff treats the 2022 "mailing list" as interchangeable with and a proxy for a hypothetical Christianbook "datacard in existence in 2016," begging the Court to jump to the conclusion that Christianbook disclosed customer data in 2016 simply because the 2022 "mailing list" suggests it may have done so in 2022. *See, e.g.*, ECF No. 24, PageID.1196.  Yet Plaintiff utterly fails to explain why this is a reasonable inference.  As Christianbook noted in its Motion to Dismiss (the "Motion"), the 2022 "mailing list" expressly aggregates customer counts from February 2022 (not 2016), the website allegedly showing that this information was "accessible" in 2016 does not exist, and the amended version of the PPPA that existed in 2022 authorizes disclosures that the pre-amendment version of the PPPA that existed in July 2016 did not.

Plaintiff's total failure to even address, much less rebut, any of these points is fatal to his PPPA claim.

Plaintiff attempts to salvage his concocted PPPA claim by arguing that Christianbook is asking the Court to hold him to "a pleading standard no PPPA plaintiff could ever satisfy."  ECF No. 24, PageID.1198.  Not so.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x 473, 476 (6th Cir. 2014) (internal citations and quotations omitted).  Plaintiff consistently masquerades legal conclusions as factual allegations in the FAC, and his inability to marshal factual allegations that satisfy Rule 8 does not mean that Christianbook is asking the Court to adopt a too aggressive Rule 8 pleading standard.  Simply put, Plaintiff's "conclusion" that Christianbook disclosed his information in 2016 because he happened to find a 2022 "mailing list" is a bridge too far, even under Rule 8, particularly where there are no allegations that the 2022 "mailing list" contained his PPPA-protected information or that the 2022 "mailing list" disclosed information prohibited by the PPPA in the first place.

Finally, even if Plaintiff's PPPA claim survives dismissal, the scope of any actionable disclosure and the putative class is far narrower than how he characterizes them in his FAC.  Plaintiff argues that Michigan's COVID-19 Executive and Administrative Orders tolled the running of the statute of limitations such that the applicable period is December 21, 2015 through July 31, 2016.  ECF No. 24, PageID.1203.[1]  Plaintiff thus admits that the FAC is subject to

---

[1] Christianbook acknowledges that based on this Court's decision in *Krassick v. Archaeological Inst. of America*, Plaintiff's claims, as alleged in the FAC, would not be subject to dismissal on statute of limitations grounds.  Further, Christianbook is mindful that it bears the burden of setting forth facts that demonstrate that the limitations period has run, as the statute of limitations is an affirmative defense.  Nevertheless, for the reasons it set forth in its Motion, Christianbook

dismissal to the extent it complains of PPPA violations occurring outside the range of December 21, 2015 and July 31, 2016.  Plaintiff likewise concedes that he was wrong when he claimed in the FAC that the putative class includes "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period" allegedly had their PPPA-protected information disclosed by Plaintiff.  ECF No. 11, PageID.601 ¶ 51.  The putative class would instead include only those Michigan residents whose PPPA-protected information was allegedly disclosed from December 21, 2015 to July 31, 2016.

For these reasons, and those argued in Christianbook's opening Motion, the Court should dismiss the FAC with prejudice.

## ARGUMENT

### I.    Plaintiff Does Not Allege Facts Plausibly Supporting a Pre-July 31, 2016 Disclosure.

In his FAC, Plaintiff touts one piece of "[d]ocumented evidence" that he argues supports his claim that Christianbook disclosed his and other Michigan residents' PPPA-protected data prior to July 30, 2016—a screenshot of a "mailing list" publicized by NextMark that contains customer "counts" from February 28, 2020 through February 28, 2022.  ECF No. 11, PageID.583-84, ¶ 2. Plaintiff does not allege that this 2022 "mailing list" contains his data or data from any other pre-2016 Christianbook customers, admitting that the 2022 "mailing list" by itself does not plausibly support that Christianbook disclosed his or anyone else's PPPA-protected information at any point

_____

respectfully submits that the precedents on which this Court's decision in *Krassick* rest misconstrue the concept of "traditional common-law counterpart" when determining whether to apply Michigan's three-year statute of limitations.  ECF No. 19, PageID.1164-1169. Christianbook reiterates that Plaintiff's own allegations confirm that the privacy rights he seeks to vindicate through the FAC encompass traditional Michigan common law "privacy rights" and are thus subject to Michigan's three-year limitations period.  *Id.*  Christianbook further notes that Plaintiff does not argue that his PPPA claims would be timely should Michigan's three-year limitations apply, even accounting for tolling of those claims. Accordingly, Christianbook reserves and does not waive its rights to seek dismissal of the FAC on statute of limitations grounds at a later date.

other than the 2022 period expressly described in the "mailing list," let alone prior to July 31, 2016.  ECF No. 19, PageID.1151, 1159.  The hyperlink Plaintiff includes in the FAC purporting to show that the information from the 2022 "mailing list" was "accessible" in 2016 leads not to a "datacard" of Christianbook customer data as Plaintiff claimed it would, but to a dead end error page.  *Id.*, PageID.1148.  *At most*, these allegations might plausibly support an argument that Christianbook disclosed certain customers' data in 2022—not in 2016.  But even then, the FAC fails to plausibly allege that the alleged disclosures in the 2022 "mailing list" violated the PPPA.[2]

The Opposition does not, and cannot, save the FAC from these total pleading failures.  Over and over, Plaintiff asks the Court to treat the 2022 "mailing list" as a proxy for the imaginary "datacard in existence in 2016."  He claims that "the same datacard currently accessible on NextMark's website . . . also existed in 2016 . . . with all of the same rates and offerings except with a slightly different title. . . ."  ECF No. 24, PageID.1195.  He argues that that the 2022 "mailing list" "is substantially the same as [sic] datacard in existence in 2016 . . . [and] indicates that Defendant is (and was in 2016) able to segregate customers by 'age,' 'gender,' 'Donor' status, and 'Ethnic & Religious enhancements,'" guilefully listing demographic information from the 2022 "mailing list" that he speculates must have also existed in the hypothetical 2016 "datacard."  *Id.*, PageID.1196-97.  But these allegations hinge on the Court jumping to the conclusion that, because Christianbook may have disclosed customer information in 2022, it surely must also have done so in 2016.  Plaintiff alleges no facts plausibly supporting any reasonable basis for the Court to take this jump.  If Plaintiff had anything beyond a self-serving hunch to go on to support his bare

---

[2] Plaintiff, of course, very intentionally avoids arguing that the information contained in the 2022 "mailing list" violated the PPPA as it existed in 2022 because Plaintiff does not want to tether his hypothetical PPPA claim to an alleged disclosure of protected customer data in February 2022.  Doing so would bring that hypothetical claim within the ambit of the amended—and much less plaintiff-friendly—iteration of the PPPA.  ECF No. 19, PageID.1153-1155.

assertion that the 2016 datacard is "substantially identical" to the 2022 datacard, he would have included it in the FAC. He did not. If Plaintiff had anything beyond "naked assertions" to explain why he believes that Christianbook's hypothetical 2016 disclosures "segregate[d] customers" according to the same demographic characteristics as in 2022, when the amended version of the PPPA authorized more expansive disclosures than the pre-amendment version of the PPPA, he would have said so. He does not. Plaintiff argues that the 2022 mailing list "bolsters" his claim that Christianbook disclosed his information prior to July 31, 2016 (ECF No. 24, PageID.1196), and yet makes no effort to explain why this is a reasonable inference to draw. Rule 8 requires more. *See, e.g. Smith*, 552 F. App'x at 476 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Plaintiff accuses Christianbook of "miss[ing] the mark" by "recast[ing]" the FAC as "predicated solely on disclosures . . . to a single data-broker named NextMark," and proceeds to conjure a list of "third parties" to whom Christianbook allegedly disclosed PPPA-protected information prior to July 31, 2016, along with "at least three ways" Christianbook disclosed customer data in 2016. ECF No. 24, PageID.1189, 1193. But make no mistake, Plaintiff is the one who anchored his PPPA claims on the so-called "documented evidence" of NextMark's 2022 "mailing list," and has asked the Court to use that "documented evidence" to draw unreasonable inferences about what Christianbook did in 2016. The Court need not "accept as true legal conclusions[,] unwarranted factual inferences" "or "conclusory allegations or legal conclusions masquerading as factual allegations" like these at the motion to dismiss stage. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

Plaintiff claims that "[n]umerous courts across the country" have found allegations as sparsely pled as his sufficient to survive dismissal, but he grossly mischaracterizes these courts'

5

decisions.  ECF N. 24, PageID.1193.  Five of the six cases he cites do not actually challenge the sufficiency of the plaintiffs' factual allegations, and instead turn on a host of other issues like standing, damages, and the retroactivity and constitutionality of the PPPA.  *See, e.g., Boelter v. Hearst Commcn's, Inc.,* 192 F. Supp. 3d 427, 452 (S.D.N.Y. 2016) (finding, among other things, plaintiff adequately pled standing, amendments to PPPA did not apply retroactively, and PPPA was not unconstitutional)*; Perlin v. Time Inc.,* 237 F. Supp. 3d 623, 641-42 (E.D. Mich. 2017) (finding plaintiff adequately pled standing and amendments to PPPA did not apply retroactively)*; Moeller v. Am. Media, Inc,* 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) (same); *Ruppel v. Consumers Union of United States, Inc.*, 2017 WL 3085365, at *1 (S.D.N.Y. June 12, 2017) (same).  How those courts resolved these inapposite issues in no way signals that they did—or would—endorse the kind of threadbare allegations Plaintiff alleges here as sufficient under Rule 8, and it is disingenuous for Plaintiff to imply otherwise.  *Horton v. GameStop Corp.* is the only case Plaintiff cites involving a motion to dismiss on failure to plead grounds, and the *Horton* court's denial of that defendant's motion to dismiss does not come close to dictating that same result here.  380 F. Supp. 3d 679, 682 (W.D. Mich. 2018)*.*  In *Horton*, the court was not asked to consider how customer information GameStop allegedly disclosed years after that plaintiff's pre-July 30, 2016 PPPA claim accrued supported an inference that GameStop disclosed "substantially identical" data during the pre-July 30, 2016 period.  ECF No. 24, PageID.1199.  Plaintiff does not address this in his Opposition, or explain why the court's reasoning in *Horton* supports the inferences Plaintiff asks the Court to draw about the 2022 "mailing list."  Accordingly, this Court should dismiss the FAC for failure to state a claim, as it has done in numerous other cases where the complaint pleads "very few facts," "in conclusory fashion," that taken together "fall[] far short of stating a plausible claim" for relief.  *High Five Threads, Inc. v. Michigan Farm Bureau*, 2021

6

WL 1809835, at \*4-\*6 (W.D. Mich. May 6, 2021) (Jarbou, J.) (granting motion to dismiss on Rule

12(b)(6) grounds where the complaint "contains few allegations" and those allegations "indicate"

that it is "very unlikely" that a required element of the claim has been met).[3]

For these reasons and those argued in more detail in the Motion, Plaintiff has failed to state

facts plausibly supporting that Christianbook disclosed his or anyone else's PPPA-protected

information prior to July 31, 2016.  ECF No. 19, PageID.1157-1164.

## II.     Plaintiff Concedes That Conduct Outside the December 21, 2015 to July 31, 2016 Range Is Subject to Dismissal.

Even if Plaintiff's PPPA claim survives dismissal, the scope of any actionable disclosure

and the putative class is far narrower than how he characterizes them in his FAC.  Because

Michigan statutes of limitations were tolled pursuant to Michigan's COVID-19 Executive and

Administrative Orders, Plaintiff concedes that the period from December 21, 2015 through July

31, 2016 is the operative period for giving rise to actionable PPPA disclosure claims and

defining the putative class.  Thus, any alleged disclosures by Christianbook that took place

before December 21, 2015 are subject to dismissal.  Likewise, the putative class, Plaintiff now

admits, is far narrower than how he originally characterized it in the FAC, and would include at

most Christianbook customers—accounting for tolling of the statute of limitations—whose

---

[3] *Accord Duchin v. Eastern Upper Peninsula Intermediate School Dist.*, 2022 WL 969679, at \*7 (W.D. Mich. Mar. 31, 2022) (Jarbou, J.) (granting motion to dismiss claims where plaintiffs did not plead sufficient facts to support claim and instead "acknowledge" facts that contradicted basis for claimed relief).  Plaintiff ignores these cases, instead focusing on this Court's decision in *Zimmerman v. 3M Company*, which he suggests supports a finding that his sparsely pled allegations satisfy Rule 8.  ECF No. 24, PageID.1195.  But *Zimmerman* further highlights the FAC's pleading defects and underscores why dismissal is warranted.  In *Zimmerman*—unlike here—the plaintiffs buttress their claims with "voluminous allegations in the remainder of the complaint."  542 F. Supp. 3d 673, 681 (W.D. Mich. 2021).  Plaintiff's allegations here are far from "voluminous," as they begin and end with the alleged customer information disclosed in the NextMark 2022 "mailing list."

PPPA-protected information was disclosed between December 21, 2015 and July 31, 2016.  ECF

No. 24, PageID.1203.

## **CONCLUSION**

For the foregoing reasons, and those articulated in Christianbook's opening Motion, the

Court should dismiss Plaintiff's Amended Complaint, with prejudice, for failure to state a claim

under Rule 12(b)(6).

Dated:  August 26, 2022                           Respectfully submitted,

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher
Mboettcher@plunkettcooney.mom
Patrick C. Lannen
Plannen@plunkettcooney.com
Plunkett Cooney, PC
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Tel.:  (248) 901-4035
Fax:  (248) 901-4040

Jennifer L. Chunias
JChunias@goodwinlaw.com
Timothy Bazzle
TBazzle@goodwinlaw.com
Dylan Schweers
DSchweers@goodwinlaw.com
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  (617) 570-1000
Fax.:  (617) 523-1231

*Attorneys for the Defendant*

9

## CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which caused it to be served on all counsel of record.

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher

## <u>LOCAL RULE 7.2(b)(ii) CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies pursuant to Local Civil Rule 7.2(b)(ii) that this Brief in Support of Defendant Christianbook, LLC's Motion to Dismiss contains 2,504 words, excluding the parts of the document that are exempted by Local Civil Rule 7.2(b)(i).  This word count was generated using Microsoft Word version 2180.