**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| TIMOTHY BOZUNG, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| CHRISTIANBOOK, LLC f/k/a CHRISTIAN BOOK DISTRIBUTORS CATALOG, LLC, | )<br>)<br>) |
| Defendant. | )<br>) |

Hon. Hala Y. Jarbou
Magistrate Judge Ray Kent
Case No. 22-cv-00304-HYJ-RSK

**DEFENDANT CHRISTIANBOOK, LLC'S OPPOSITION**
**TO PLAINTIFF'S MOTION TO COMPEL**

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED .................................................................................. 1

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY ........................... 2

INTRODUCTION ................................................................................................................... 3

FACTUAL BACKGROUND .................................................................................................. 3

I.     Plaintiff's Request For An Order Compelling Defendant to State Whether It Will Withhold Any Documents on the Basis of Any Objection Lacks Merit Because Defendant Provided This Information to Plaintiff in Writing During the Meet and Confer. ...................................................................................................................... 4

II.    Defendant Confirmed During the Parties' Meet and Confer that It Has Not Withheld Documents on the Basis of Any Privilege, and Will Produce a Privilege Log If He Does, Negating Plaintiff's Claim for Relief. ..................................................... 5

III.   Plaintiff Has No Basis to Demand that Defendant Respond to Document Requests That The Court's Case Management Orders Do Not Permit Him to Ask. ....................... 8

IV.   COVID-19 Tolling Does Not Apply to Plaintiff's Claim and Plaintiff Is Not Entitled to Seek Discovery Presupposing That It Does. ................................................. 10

     a.    *The Plain Language of the COVID-19 Orders Forecloses Plaintiff's Claim for COVID Tolling.* .......................................................................... 11

     b.    *The Only Court That Has Defined the Start Date for a Putative PPPA Class Following the COVID Orders Did not Apply COVID Tolling to Extend the Start Date for the Putative Class*. ...................................................... 12

V.    Plaintiff's Request That the Court Set a Date for Substantial Completion of Document Productions Is Premature. ........................................................................... 13

CONCLUSION ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bownes v. Borroughs Corp.*,
   2021 WL 1921066 (W.D. Mich. 13, 2021)..............................................................13

*Carhatt Inc. v. Innovative Textiles, Inc.*,
   333 F.R.D. 118 (E.D. Mich. 2019) .......................................................................7

*Catrinar v. Wynnestone Cmtys. Corp.*
   2016 WL 1084687 (E.D. Mich. Mar. 21, 2016) ....................................................7

*Jagielo v. Van Dyke Public Schs.*,
   2010 WL 259503 (E.D. Mich. Jan. 20, 2010)........................................................7

*Khalil v. Transunion, LLC*,
   2008 WL 4642857 (E.D. Mich. Oct. 20, 2008) ................................................6, 10

*Mike Vaughn Custom Sports, Inc. v. Piku*,
   2013 WL 5818557 (E.D. Mich, Oct. 29, 2013) .....................................................5

*Pratt v. KSE Sportsman Media*,
   586 F. Supp. 3d 666 (E.D. Mich. 2022)....................................................10, 12, 13

*Steele v. Punch Bowl Detroit, LLC*,
   2017 WL 2821970 (E.D. Mich. June 29, 2017)...............................................6, 15

*Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*,
   2022 WL 17364773 (Mich. Ct. App. Dec. 1, 2022) .............................................12

**Other Authorities**

Mich. Executive Order No. 2020-58...........................................................................11

Fed. R. Civ. P. 26(a)(1)...............................................................................................15

Fed. R. Civ. P. 26(b)(5)................................................................................................6

Fed. R. Civ. P 26(f)......................................................................................................8

L.R. 7.1(d)........................................................................................................ *passim*

Mich. Sup. Ct., Administrative Order No. 2020-3................................................11, 12

**STATEMENT OF ISSUES PRESENTED**

1.  Should the Court compel Defendant "to produce Amended Responses and Objections stating whether responsive materials are being withheld on the basis of any objection," when Defendant confirmed in writing to Plaintiff during the meet and confer process that it has not and will not withhold any responsive material on the basis of any objection, except as to its objection to Plaintiff's definition of "CLASS PERIOD"?

    a.  Defendant's Answer: No

2.  Should the Court order Defendant "to produce a privilege log that details all of the otherwise responsive documents that Defendant has withheld from production pursuant to any claim of privilege, immunity, doctrine, or the like," when Defendant confirmed in writing to Plaintiff during the meet and confer process that Defendant has not withheld any documents from its document productions on the basis of privilege, and that it will produce privilege log(s) consistent with all applicable rules if and when it withholds information otherwise discoverable by claiming that such information is privileged?

    a.  Defendant's Answer: No

3.  Should the Court compel Defendant "to produce all responsive documents to Plaintiff's Requests for Production Nos. 23, 27, 28, 29, and 30" where Plaintiff offers as a "compromise" to withdraw ten other requests, when the Case Management Order limits the parties to twenty requests per side, Plaintiff could have asked the Court at any point over the last five months to modify its Case Management Order to permit additional requests but did not do so, and Defendant provided substantive responses to five of the document requests Plaintiff has offered to withdraw as a "compromise"?

    a.  Defendant's Answer: No

4.  Should the Court order Defendant "to produce any non-privileged documents that are being withheld as a result of its objection to the Class Period as defined in the Complaint" where Plaintiff's definition of "CLASS PERIOD" assumes that Executive Orders and Michigan Supreme Court Administrative Orders implemented to extend filing deadlines in the first days of the COVID-19 pandemic applies to enlarge the putative class, even though Plaintiff had no such deadline?

    a.  Defendant's Answer: No

5.  Should the Court set a February 3, 2023 deadline for Defendant to substantially complete production of responsive documents to Plaintiff's Requests, when Defendant has made an initial document production and confirmed in writing to Plaintiff during the meet and confer process to complete its document productions as expeditiously as possible and well in advance of the September 25, 2023 deadline for completing discovery?

    a.  Defendant's Answer: No

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for Defendant's Opposition to Plaintiff's Motion to Compel includes:

- *Pratt v. KSE Sportsman Media*, 586 F. Supp. 3d 666 (E.D. Mich. 2022)

- *Mike Vaughn Custom Sports, Inc. v. Piku*, 2013 WL 5818557 (E.D. Mich, Oct. 29, 2013)

- *Khalil v. Transunion, LLC*, 2008 WL 4642857 (E.D. Mich. Oct. 20, 2008)

- *Steele v. Punch Bowl Detroit, LLC*, 2017 WL 2821970 (E.D. Mich. June 29, 2017)

- *Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*, 2022 WL 17364773 (Mich. Ct. App. Dec. 1, 2022)

- L.R. 7.1(d)

- Mich. Executive Order No. 2020-58

- Mich. Sup. Ct., Administrative Order No. 2020-3

## INTRODUCTION

Plaintiff's Motion to Compel ("Motion") is the culmination of a rushed, perfunctory meet and confer process that does not satisfy L.R. 7.1(d)'s requirement to confer in good faith to resolve areas of dispute before filing a discovery motion. L.R. 7.1(d) demand that Plaintiff confer in good faith with Defendant before filing a discovery motion to narrow the areas over which the parties disagree. Plaintiff has done the opposite. Instead, Plaintiff misrepresents Defendant's position on multiple allegedly disputed issues to justify his failure to confer in good faith to narrow or resolve such issues before moving to compel. Plaintiff asks the Court to compel Defendant to provide certain discovery when Plaintiff knows full well that Defendant confirmed during the parties' meet and confer that it would (or has) provide such discovery. Plaintiff likewise fails to explore whether middle ground might exist between the parties that would avoid burdening the Court with unnecessary and costly motion practice. This is unacceptable under L.R. 7.1(d).

Plaintiff states that Defendant's "gamesmanship" and "refusal to participate in the discovery process in good faith threatens to severely prejudice Plaintiff." Mot. at 11, ECF No. 37, PageID.1358. This is false. It is hard to conceive of something more lacking in good faith than Plaintiff's Motion, which requires the Court and parties to devote substantial resources litigating so-called "disputed" discovery issues that Plaintiff could have narrowed or resolved had he operated with even a fraction of the good faith required by L.R. 7.1(d).

For these reasons, and those discussed more fully below, the Court should deny Plaintiff's frivolous Motion in full.

## FACTUAL BACKGROUND

Plaintiff misrepresents relevant information in the "Relevant Factual and Procedural Background" section in his Motion. His most glaring misrepresentations concern the parties' lone

telephonic meet and confer on November 30, 2022, and their limited correspondence thereafter regarding the disputed issues discussed at the conference. Among other things, Plaintiff misquotes or omits Defendant's responses to Plaintiff's meet and confer questions and exaggerates the extent of his good faith efforts to seek concurrence and narrow or resolve disputes before filing the Motion. Plaintiff could paraphrase Defendant's responses to Plaintiff's meet and confer questions because he did not attach the parties' meet and confer email correspondence to his Motion. This correspondence is the best evidence of the parties' positions as to each disputed issue in the Motion, as well as Plaintiff's good faith (or lack thereof) in seeking concurrence or resolution of disputed issues prior to bringing his Motion. Accordingly, Defendant attaches at Exhibit 1 the parties' meet and confer correspondence so the Court can review the full extent of the parties' meet and confer, rather than the incomplete narrative of events from Plaintiff's Motion.

I. **Plaintiff's Request For An Order Compelling Defendant to State Whether It Will Withhold Any Documents on the Basis of Any Objection Lacks Merit Because Defendant Provided This Information to Plaintiff in Writing During the Meet and Confer.**

The Court should deny Plaintiff's Motion for an order compelling Defendant to "state whether responsive materials are being withheld on the basis of any objection," because Defendant provided this exact information to Plaintiff during the parties' meet and confer. Following the parties' November 30, 2022 meet and confer, Plaintiff asked Defendant "[w]hether [it] is withholding any documents based on its objections" and Defendant responded that "it is not withholding any documents based on its objections, except as to its objections to Plaintiff's definition of 'CLASS PERIOD.'" *See* Exhibit 1 at 4-5.[1] Without following up in any way with Defendant to clarify its position or request further meet and confer discussions,

_____

[1] Page references herein to Exhibit 1 are to PDF page numbers.

Plaintiff unilaterally declared that the parties were at an impasse and filed his Motion.

L.R. 7.1(d) requires Plaintiff to meet and confer in good faith with Defendant to narrow or resolve areas of disagreement before resorting to motion practice. Plaintiff did not do this. Instead, he burdened the Court with a Motion seeking to compel Defendant to provide the same information it provided Plaintiff during the meet and confer. Even worse, nowhere in his Motion does Plaintiff acknowledge that Defendant confirmed to him during the meet and confer that it was not withholding documents based on any objection, except as to Plaintiff's definition of "CLASS PERIOD." *See* Mot. at 3-4, ECF No. 37, PageID.1350-1351. *See infra* at 10-13. The only plausible reason for Plaintiff to conceal this from the Court was to further the charade that he had a good faith basis to move to compel on an issue for which Defendant already provided a substantive response. *See Mike Vaughn Custom Sports, Inc. v. Piku*, 2013 WL 5818557, at *3 (E.D. Mich, Oct. 29, 2013) (denying motion to compel discovery where the opposing party had "attempt[ed] to resolve some of the discovery matters at issue in the instant Motion" and "worked in good faith to resolve th[e] dispute," and the moving party "[mis]characterize[ed]" these efforts in order to bring its motion).

The Court should deny Plaintiff's request for an order compelling Defendant to state whether it is withholding documents on the basis of any objection. If Plaintiff wants this information, he need look no further than Defendant's meet and confer response.

## II. Defendant Confirmed During the Parties' Meet and Confer that It Has Not Withheld Documents on the Basis of Any Privilege, and Will Produce a Privilege Log If He Does, Negating Plaintiff's Claim for Relief.

Similarly, Plaintiff accuses Defendant of "gamesmanship," arguing that Defendant has "fail[ed] to provide Plaintiff a privilege log detailing the basis for [its] . . . assertions [of attorney-client and work-product protection] and describing the withheld materials." Mot. at 9, ECF. No.

37, PageID.1356. Plaintiff argues that Defendants' "assertions of privilege, work-product protection, and the like should be deemed waived" on account of its supposed failure to produce a privilege log. *Id.* But the factual record tells a different story, and precludes Plaintiff from his requested relief.

On January 5, Plaintiff's counsel asked Defendant to "advise tomorrow" if it "will be producing a privilege log" and "when" it would do so. Ex. 1 at 1-2. Plaintiff warned that he "intend[ed] to include this issue in our motion to compel" if Defendant did not so advise. *Id.* This single email Plaintiff's counsel sent the day before filing his Motion reflects the sum total of Plaintiff's efforts to meet and confer in good faith to resolve this dispute. Such meet and confer efforts "do[] not comply with the letter or spirit of" the rules, and Courts have not hesitated to deny motions to compel in such circumstances. *See Khalil v. Transunion, LLC*, 2008 WL 4642857, *3 (E.D. Mich. Oct. 20, 2008) (denying plaintiff's motion to compel and awarding defendant its fees and costs because plaintiff did not "make any good faith attempt to" meet and confer where plaintiff's only "attempt" to "determine if the discovery c[ould] be obtained without a court order" was a single email "sent . . . one day before filing the motion").[2]

Defendant confirmed in writing that it did not withhold any document from its December 15, 2022 production on privilege grounds, and that it would produce a privilege log consistent with Fed. R. Civ. P. 26(b)(5) and other all other appliable rules "when and if it withholds information otherwise discoverable by claiming that such information is privileged." Ex. at 1. Even though Defendant answered each of Plaintiff's questions regarding its production of a privilege log, Plaintiff still moved to compel on the issue, without seeking clarification from

---

[2] *Accord Steele v. Punch Bowl Detroit, LLC*, 2017 WL 2821970, at *1 (E.D. Mich. June 29, 2017) (denying plaintiff's motion to compel where plaintiff's efforts to "seek concurrence prior to filing his motion . . . were cursory and flippant at best").

Defendant about its position, objecting to Defendant's plan to produce a privilege log, or even acknowledging that Defendant sent the email at all. Rule 7.1(d) requires more. The Court need not order Defendant to produce a privilege log when Defendant confirmed that it did not withhold any document from its first production on the basis of privilege and that it will produce a privilege log when and if it withholds any documents on this basis.

Nor is Plaintiff's ludicrous demand for an order finding that Defendant has "waived its right" to assert privilege by not yet producing a privilege log – when Defendant confirmed that it has not withheld *any* documents on the basis of privilege – warranted. Mot. at 10, ECF No. 37, PageID.1357. The cases Plaintiff cites in support of his waiver argument are on different footing than this case, as the parties that moved to compel production of a privilege log in those cases did not do so until their adversaries *had actually withheld documents from their productions based on an assertion of privilege*. *See, e.g.*, *Jagielo v. Van Dyke Public Schs.*, 2010 WL 259503, at *2 (E.D. Mich. Jan. 20, 2010) (party produced document with privilege redactions without producing a privilege log); *Carhatt Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118, 119 (E.D. Mich. 2019) (challenging the sufficiency of entries on a 136-page privilege log that listed more than 1,000 documents withheld as attorney-client or work product privileged); *Catrinar v. Wynnestone Cmtys. Corp.* 2016 WL 1084687, at *3 (E.D. Mich. Mar. 21, 2016) (ordering party to produce documents responsive to Plaintiff's requests "subject to any claim of privilege, and to submit a privilege log "[i]f the Defendants do claim privilege"). Plaintiff does not cite authority supporting his request that the Court find that Defendant "waived" its right to withhold documents on the basis of any privilege under these circumstances. Plaintiff's Motion should be denied.

**III.** **Plaintiff Has No Basis to Demand that Defendant Respond to Document Requests That The Court's Case Management Orders Do Not Permit Him to Ask.**

Plaintiff again accuses Defendant of "gamesmanship," this time because Defendant "refus[ed] to substantively respond to Request Nos. 21-31 on the ground that they exceed the Court's limitation of 20." Mot. at 8, ECF No. 37, PageID.1355. He asks the Court to compel Defendant to respond to each of the ten requests Plaintiff served in violation of the Case Management Orders, or to accept Plaintiff's "compromise position" requiring Defendant to answer five of Plaintiff's unauthorized requests in exchange for Plaintiff "voluntarily withdraw[ing]" five requests to which Christianbook already provided substantive responses. *Id.* Plaintiff fails to justify why he is entitled to any relief for his calculated efforts to subvert the parameters for discovery this Court established in its two Case Management Orders.

Plaintiff concedes that he served Defendant with thirty (30) document requests when the Case Management Orders limit the parties to twenty (20) document requests each. *Id.* Defendant is unaware of any case law – and Plaintiff tellingly does not identify any – that requires Defendant "to substantively respond" to unauthorized discovery requests propounded in violation of a case management order. This alone is sufficient grounds to deny Plaintiff's Motion as to this issue.

Plaintiff goes on. He claims that he only violated the Court's clear discovery limits because he served his discovery "immediately after" the parties' Rule 26(f) conference when he had "no indication" that the Court would limit the number of requests per side. *Id.* Plaintiff argues that allowing Defendant to refuse to respond to his unauthorized requests "punish[es]" him for "adhering to the Court's guidance and serving discovery as soon as possible." *Id.* None of these arguments survive even the slightest scrutiny.

Plaintiff served his initial document requests nearly five months ago, on August 25, 2022.

The Court issued its first Case Management Order more than four months ago, on September 8, 2022. Even though Plaintiff knew or should have known no later than September 8, 2022 that the Court had limited the parties to twenty document requests and that Plaintiff's Request Nos. 21-30 were propounded in violation of the Case Management Order, he did nothing. If Plaintiff had a good faith basis for seeking Defendant's responses to unauthorized Request Nos. 21-30, he would have sought relief from the Court during the last four months. He could have filed a motion – either jointly with Defendant or on his own – asking the Court to modify the limit it imposed on document requests. Or he could have done exactly what he offers to do now – *i.e.*, formally withdraw the unauthorized requests and serve an amended set of 20 requests in its place. Plaintiff instead chose to sit on his hands and do nothing. Or, perhaps, he gambled that Defendant might respond to all thirty requests, even though there is no requirement that Defendant do so. Regardless of his actual motive, to the extent Plaintiff purports to suffer prejudice by seeking discovery beyond what the Court permitted, he alone shoulders the blame.

The relief Plaintiff seeks – either an order that Defendant respond substantively to Request Nos. 21-30 or agree to Plaintiff's so-called "compromise position" – runs afoul of L.R. 7.1(d)'s requirement that the moving party operate in good faith during the meet and confer process. When Defendant stated its objections to responding to requests beyond the twenty allowed by the Court, the only "compromise" Plaintiff offered was to "voluntarily withdraw" five requests to which Defendant already provided substantive responses, if Defendant answered five requests Plaintiff asked in violation of the Case Management Orders. This is not a "compromise." Plaintiff simply took stock of his requests and offered to withdraw those that sought information plainly not relevant to the parties' claims and defenses (*i.e.*, Request Nos. 9, 19, 20 (seeking Defendant's revenue, expenses and profits), Request No. 15 (seeking "articles

and studies concerning the value or uses" of customer information), and Request No. 16 (seeking

"consumer surveys").  With his "compromise position," Plaintiff is asking the Court for a

mulligan to save him from his decision to blast out ill-judged discovery that, only in hindsight,

he realizes would not advance his case.  If "gamesmanship" means anything, this certainly is it.

The Court should thus deny Plaintiff's requested relief.  *See Khalil*, 2008 WL 4642857,

\*3.

## IV. COVID-19 Tolling Does Not Apply to Plaintiff's Claim and Plaintiff Is Not Entitled to Seek Discovery Presupposing That It Does.

Plaintiff filed his complaint on March 31, 2022.  Under the six-year statute of limitations

this Court has applied to PPPA claims, the putative class would consist of individuals whose

PPPA claims accrued between March 31, 2016 and July 30, 2016.  Defendant has agreed to

produce documents and information dated between March 31, 2016 and July 31, 2016, consistent

with the dimensions of the putative class derived from the date Plaintiff filed his complaint.

Plaintiff disagrees.  He claims the operative "CLASS PERIOD" is December 20, 2015

through July 31, 2016 because various Executive Orders and Michigan Supreme Court

Administrative Orders implemented in the earliest days of the COVID-19 pandemic tolled PPPA

claims for 101 days, from March 10, 2020, through June 20, 2020.  Mot. at 6, ECF No. 37,

PageID.1353; Reply at 16, ECF No. 24, PageID.1201-02.  Plaintiff's argument is premised on a

misreading of the plain language of the COVID-19 Orders, which unambiguously allows only

for tolling of deadlines falling within the declared state of emergency – *i.e.*, March 10, 2020 to

June 19, 2020.  Plaintiff had no such deadline here.  Decisions issued by Michigan federal and

state courts confirm that COVID tolling does not apply to Plaintiff's claim and does not re-set

the start date for defining the putative class.  *See Pratt v. KSE Sportsman Media*, 586 F. Supp. 3d

666 (E.D. Mich. 2022).  Because COVID tolling does not apply to Plaintiff's claims, Defendant

objects to producing documents from December 20, 2015 through March 31, 2016.

Plaintiff does not explain how COVID tolling could possibly apply to enlarge the size of his putative class when both the plain language of the COVID-19 Orders and decisions from multiple Michigan federal and district courts foreclose it.[3]  Rather, he asks that the Court "overrule" Defendant's objections to producing documents from December 20, 2015 through March 31, 2016 because documents from December 20, 2015 are "still potentially actionable due to COVID tolling."  Mot. at 7, ECF No. 37, PageID.1354.  But the plain language of the COVID-19 Orders and on-point case law confirms such documents are not actionable at all.

For these reasons, and as argued more fully below, the Court should deny Plaintiff's request for an order compelling Defendant to produce documents based on its objections to Plaintiff's improper and unsupported assertion of COVID tolling.

>    a.    *The Plain Language of the COVID-19 Orders Forecloses Plaintiff's Claim for COVID Tolling.*

The plain text of the Covid-19 Orders confirms that they were intended to toll only those deadlines falling within the declared states of disaster and emergency.  Executive Order No. 2020-58, entered on April 23, 2020, provided that "all deadlines applicable to the commencement of all civil and probation actions and proceedings . . . are suspended as of March  10, 2020 and shall be tolled until the end of the declared states of disaster and emergency."  *See* Mich. Sup. Ct., Administrative Order No. 2020-3 (same).  The COVID-19 Orders were entered "to protect the public health" and "to limit in-person interaction and services as much as possible" in light of the "severe health, economic, and social hams posed by the

---

[3] Even if COVID tolling somehow applied to extend by 101 days the deadline to file a PPPA claim – and it does not – Plaintiff cites no authority holding that a Plaintiff who timely filed a PPPA claim may weaponize COVID tolling to expand the size of the putative class.

COVID-19 pandemic." *Id.* This rationale for entering the COVID-19 Orders – *i.e.*, to protect public health by limiting in-person interactions during the early days of the pandemic – reinforces that Governor Whitmer and the Michigan Supreme Court sought to toll the filing deadlines for only those claims whose deadlines fell within the declared state of emergency, when such "public health" concerns were most acute. The Michigan Court of Appeals has endorsed this reading of the COVID-19 Orders, holding that one of the Administrative Orders "toll[ed] the statute of limitations for the commencement of actions and a concomitant tolling of the filing of responsive pleadings during the state of emergency." *Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*, 2022 WL 17364773, at *4 (Mich. Ct. App. Dec. 1, 2022). Because Plaintiff's deadline to file his PPPA claim did not occur during the declared state of disaster and emergency – *i.e.*, March 16, 2020 through June 19, 2020 – he cannot invoke COVID tolling to expand the size of the putative class.

> b. *The Only Court That Has Defined the Start Date for a Putative PPPA Class Following the COVID Orders Did not Apply COVID Tolling to Extend the Start Date for the Putative Class.*

The only court to determine the start date for a putative PPPA class under Plaintiff's argued-for six-year statute of limitations unequivocally held that any claims accruing six-years before the date on which the named plaintiff filed his complaint are time-barred. *See Pratt*, 586 F. Supp. 3d at 675. In *Pratt*, the named plaintiffs filed a complaint on June 15, 2021 alleging that the defendant violated the PPPA. *Id.* at 668. The court found that while plaintiffs timely filed "most" of their claims, the six-year statute of limitations barred claims that accrued on or before June 15, 2015, such that individuals whose claims accrued more than six years from the date plaintiffs filed the class action were excluded from the putative class. *Id.* at 675. *Pratt* dictates the outcome here. Just like Plaintiff, the *Pratt* plaintiffs brought PPPA claims after entry

of the COVID-19 Orders that theoretically could be subject to COVID tolling. The *Pratt* court did not apply COVID tolling to enlarge the putative class, instead fixing the start date for the putative class as the date six years earlier than the date on which plaintiffs filed their claim. The Court should follow *Pratt*'s lead and do the same here.[4]

For these reasons, COVID tolling does not apply to Plaintiff's PPPA claim and does not expand the size of the putative class. The plain text of the COVID-19 Orders and relevant case law precludes Plaintiff from contorting the COVID-19 Orders to claim that his PPPA claim was tolled by an extra 101 days such that the start date for the class period reaches backwards to December 20, 2015. As such, the Court should not overrule Defendant's well-founded objection to producing documents from December 20, 2015 to March 30, 2016.[5]

## V. Plaintiff's Request That the Court Set a Date for Substantial Completion of Document Productions Is Premature.

Plaintiff's request that the Court order Defendant "to substantially complete its document

---

[4] Plaintiff claims there is "ample support" for applying COVID-19 tolling to Plaintiff's PPPA claims, including Judge Jarbou's decision in *Bownes v. Borroughs Corp.*, 2021 WL 1921066, at *2 (W.D. Mich. 13, 2021). Mot. at 6, ECF No. 37, PageID.1353. *Bownes* is the only case Plaintiff cites, and it is distinguishable for many reasons. Most relevant here, *Bownes* did not involve a PPPA claim and COVID tolling was applied to provide relief for a claim that would have expired while the PPPA was at its height. *Bownes*, 2021 WL 1921066, at 2.

[5] Plaintiff claims that Defendant does not "contest [in its reply to its motion to dismiss] that COVID tolling would apply to Plaintiff's claims" (Mot. at 7, ECF No. 37, PageID.1354), but this is neither here nor there. Defendant referred to Plaintiff's COVID tolling argument in its reply to highlight how far Plaintiff backtracked during motion to dismiss briefing from his initial allegation that the putative class includes "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period" allegedly had their PPPA-protected information disclosed by Defendant. Reply at 3, ECF No. 26, PageID.1235. Defendant did not (and does not) admit that the COVID-19 Orders tolled Plaintiff's claims. Nor did Defendant waive its right to challenge the applicability of the COVID-19 Orders by referencing them in its reply as further support for the insufficiency of Plaintiff's allegations under Rule 8. In any event, Defendant is not foreclosed from arguing that Plaintiff's COVID tolling arguments are inconsistent with the plain language of the COVID-19 Orders and unsupported by existing case law, and Plaintiff does not argue otherwise.

production by February 3, 2023" is premature, and the byproduct of Plaintiff's refusal to engage in good faith meet and confer discussions to resolve disputes. The Court should not reward Plaintiff for his failure to comply with L.R 7.1(d).

Plaintiff presented Defendant with an ultimatum during their meet and confer – agree to substantially complete your document productions by February 3, 2023, or face a motion to compel. Defendant confirmed that it would substantially complete its document productions "as expeditiously as possible" and "well in advance of the Court-ordered September 25, 2023 deadline" for completing discovery, but "cannot agree to substantially complete its production of documents by February 3, 2023." Ex. at 3-4. But Defendant not agreeing to Plaintiff's arbitrary February 3, 2023 deadline, which falls *more than seven months before the close of fact discovery*, is not the same thing as Defendant "refus[ing] . . . to commit to a date by which it will produce[] the remainder of [its] responsive document," as Plaintiff claims in his Motion. Mot. at 5, ECF No. 31, PageID.1352. Plaintiff did not ask Defendant to suggest dates by which it could commit to complete its document productions, even though a "good-faith effort to resolve [this] dispute" required at least that. A good faith meet and confer could have avoided a motion to compel on this issue entirely, as the parties very likely could have found a date after February 3 but "well in advance of" September 25 on which Defendant could agree to substantially complete its document productions. Plaintiff did not seek resolution of this issue in good faith, and the Court should deny his requested relief. *See Steele*, 2017 WL 2821970, at *1 (denying plaintiff's motion to compel where plaintiff's efforts to "seek concurrence prior to filing his motion . . . were cursory and flippant at best").

Plaintiff's claim that Defendant has "stonewalled" him at "every step" and engaged in "gamesmanship" that "threatens to severely prejudice Plaintiff" is unhelpful hyperbole and

untrue.  Mot. at 11-12, ECF No. 37, PageID.1358-1359.  Defendant timely served its Rule 26(a)(1) disclosures on September 30, 2022, identifying (among other things) third parties likely to have discoverable information concerning any disclosure(s) by Defendant of customer information.  Defendant has been diligent in investigating Plaintiff's claims and identifying documents responsive to Plaintiff's discovery requests.  Defendant has made an initial document production, and will soon make more, on a rolling basis.  Defendant's diligent performance of its discovery obligations in the weeks leading up to the Christmas holiday also bears mentioning, as this Christian holiday is the busiest time of year for Christianbook, a catalog and internet retailer specializing in the sale of Christian products.  Indeed, Defendant's good faith stands in even starker relief now, in light of Plaintiff's lack of good faith in bringing this Motion, which identifies several discovery disputes, most or all of which could have been narrowed or resolved had Plaintiff actually met and conferred in good faith, as required by L.R. 7.1(d).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied in its entirety.

Dated:  January 20, 2023

Respectfully submitted,

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher
Mboettcher@plunkettcooney.mom
Patrick C. Lannen
Plannen@plunkettcooney.com
Plunkett Cooney, PC
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Tel.:  (248) 901-4035
Fax:  (248) 901-4040

Jennifer L. Chunias
JChunias@goodwinlaw.com
Timothy Bazzle
TBazzle@goodwinlaw.com
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  (617) 570-1000
Fax.:  (617) 523-1231

*Attorneys for the Defendant*

## <u>LOCAL RULE 7.3(b)(ii) CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies pursuant to Local Civil Rule 7.3(b)(ii) that this Brief in Support of Defendant Christianbook, LLC's Opposition to the Motion to Compel contains 4,211 words, excluding the parts of the document that are exempted by Local Civil Rule 7.3(b)(i).  This word count was generated using Microsoft Word version 2180.

## CERTIFICATE OF SERVICE

I hereby certify that, on January 20, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which caused it to be served on all counsel of record.

*/s/ Matthew J. Boettcher*
Matthew J. Boettcher