# Exhibit I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIMOTHY BOZUNG, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTIANBOOK, LLC f/k/a CHRISTIAN BOOK DISTRIBUTORS CATALOG, LLC, <br><br> Defendant. | Case No. 1:22-cv-00304-HYJ-RSK <br><br> Honorable Hala Y. Jarbou <br><br> **PLAINTIFF'S MOTION** <br><br> **JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e) & FED. R. CIV. P. 60(b) AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT <u>PURSUANT TO FED. R. CIV. P. 15(a)</u>**

# INTRODUCTION

Plaintiff's Motion ("Mot."), ECF Nos. 58-59, requests that the Court alter or amend, or set aside, its March 6, 2023 Order and Judgment pursuant to Rule 59(e) and/or Rule 60(b), and grant Plaintiff leave pursuant to Rule 15 to file a Second Amended Complaint ("SAC"), in which Plaintiff alleges facts concerning newly discovered evidence that addresses the very issues identified by the Court in its Opinion and Order of dismissal (collectively, "Order").

Defendant's Response ("Resp."), ECF No. 70, raises a number of challenges, none of which is persuasive. Defendant argues that the newly discovered evidence is not sufficiently *new*—and that a plaintiff, in order to avoid dismissal with prejudice and without leave to amend, must ***immediately*** seek leave to amend a complaint upon receipt of such evidence—even where a motion to dismiss the complaint is under submission before the court, where the plaintiff believes he has stated a claim and that the motion should be denied, but where ultimately the plaintiff has no way of knowing how the motion will be resolved (or what deficiencies in the complaint the court may identify). That is not the law. Requiring a plaintiff to seek leave to amend before a motion to dismiss the complaint pursuant to Rule 12(b)(6) is resolved would result in seriatim motions to amend even where an amendment is unnecessary, wasting valuable judicial resources preparing decisions on motions to dismiss that are ultimately rendered moot by amended pleadings, and needlessly

1

wasting litigants' time in violation of Rule 1's mandate for a speedy resolution. Defendant's argument would prove far too much.

Defendant's own caselaw does not support this drastic notion, and such a rule would produce absurd results. Indeed, Plaintiff received much of the new evidence serving as the basis for his new allegations on a rolling basis over a period of several weeks, continuing right up until the Court issued its Order—including important evidence from ▮▮▮▮ (SAC ¶ 7) *hours* before the Court issued its order. Defendant next argues that the proposed amendment is futile because the proposed SAC does not adequately plead disclosures in violation of the PPPA. However, Defendant itself concedes that it made the disclosures that Plaintiff complains of in his proposed amended pleading, and the allegations in the proposed amendment plausibly suggest that those disclosures entitle Plaintiff to relief under the PPPA. Rule 8 requires no more. The Court should decline Defendant's invitation to dive into the substance of Plaintiff's underlying claim for relief in the course of resolving this straightforward, procedural Motion.

## ARGUMENT

According to Defendant, the new evidence that serves as the basis for the new allegations in Plaintiff's proposed SAC was in Plaintiff's possession before the adverse judgment was entered, and, as such, "the evidence is not 'new' for purposes

of Rule 59(e) or Rule 60(b)." Resp. at 8-9, PageID.1827-28.[1] That makes no sense. Plaintiff had no need to allege facts concerning his recently discovered evidence until the Court found that the allegations of now-dismissed FAC were insufficient to state a claim for relief. Thus, the proper question is whether the facts Plaintiff seeks leave to allege in his proposed SAC were already in his possession at the time he filed the FAC. And the answer to that question is indisputably "no" – these are new facts that Plaintiff only recently obtained in the course of formal discovery, well after he had filed his FAC.

Defendant misleadingly argues that "courts are clear that evidence predating the adverse judgment does not qualify as 'newly discovered.'" Resp. at 7, PageID.1826.[2] Defendant cites to Sixth Circuit opinions where courts did not find

---

[1]    Defendant cites Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2859 (3d ed. 2022), yet omits a key portion of § 2859's, discussing how "[u]nder both rules [59 and 60], the evidence must have been in existence *at the time of the trial*" (emphasis added). Here, Plaintiff brought this Motion after discovering new, previously unavailable evidence *during the discovery process* – evidence that therefore was "in existence at the time of [any future] trial." *See id.*

[2]    Defendant's *Hernandez v. City of Saginaw*, 2013 WL 4052632, at *4 (E.D. Mich. Aug. 12, 2013) involved the denial of a request to amend a dismissal order under Rule 59(e) relying on emails sent weeks before the dismissal because "'[n]one of this evidence is new.'" Def.'s Resp. at 7, PageID.1826 (citing *Hernandez*). But *Hernandez* involved a plaintiff seeking to vacate the plaintiff's **voluntary dismissal**. The plaintiff "[sought] relief from the order granting his motion to dismiss because of his own actions and errors. He chose to seek dismissal of his complaint without determining the applicable statute of limitations…His oversight, however, does not establish the type of manifest injustice contemplated by Rule 59(e)." *Hernandez*, 2013 WL 4052632, at *3 (emphasis added). Here, Plaintiff did not "cho[ose] to seek

an abuse of discretion in not permitting "new" evidence. But there is no rule that *any* evidence in existence is not new if it is possessed even a day prior to entry of a judgment of dismissal, as Defendant would have the Court believe; rather, the Sixth Circuit has consistently weighed a number of factors in its analysis, such as Rule 60's and examining "***reasonable diligence***."[3] *See* Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party…from a final judgment, order, or proceeding for the following reasons: …(2) newly discovered evidence that, with *reasonable diligence*, could not have been discovered in time to move for a new trial under Rule 59(b).") (emphasis added); *see, e.g.*, *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1535 (8th Cir. 1996) (plaintiffs entitled to have motion for relief from summary judgment on grounds of newly discovered evidence considered, even where plaintiffs had possessed this evidence when summary judgment entered).

Here, Plaintiff exercised reasonable diligence—reviewing and analyzing the information provided through discovery as it was presented. The material presents a

---

dismissal of his [FAC]"—rather, the Court dismissed the FAC over Plaintiff's strong opposition. Plaintiff here did just what the court indicated the *Hernandez* plaintiff should have done, wait for the Court to issue its order "determining" the threshold issue—here, the sufficiency of the FAC's allegations—prior to seeking leave to file a SAC with new allegations (concerning recently discovered evidence) to cure the deficiencies with the FAC that the Court identified.

[3]    "The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2)." Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2859 (3d ed. 2022).

complex interconnected web of relationships, which reveals that Plaintiff's information, and that of Class Members, has been wrongly disclosed in violation of the PPPA. Plaintiff exercised reasonable diligence in obtaining this newly discovered evidence, including participating in motion practice to obtain it. While Defendant's Motion to Dismiss was under submission before the Court, the Parties exchanged initial disclosures and discovery commenced. Plaintiff served written discovery requests to Defendant and subpoenaed third parties identified in Defendant's initial disclosures for documents, ESI, and information relevant to Plaintiff's claims. It was through these efforts, i.e., Plaintiff's diligence, that Plaintiff recently obtained new evidence from Defendant and relevant third parties that adds strong support for Plaintiff's PPPA claim. *See* Mot., PageID.1714-22.

Defendant contends that "Plaintiff anchors his proposed amendment on 'newly discovered evidence' produced "well before the Court's dismissal of his complaint," and that it "made its initial disclosures on September 30, 2022, well before the November 4, 2022 deadline the Court imposed for parties to move to amend their pleadings." Resp. at 9-10, PageID.1828-29. However, the new evidence that serves as the basis for Plaintiff's new allegations is not Defendant's initial disclosures, but rather evidence obtained from Defendant *and relevant third parties* in response to targeted requests for production and subpoena. Defendant's disclosures merely assisted Plaintiff in determining who to subpoena. And after

5

Plaintiff subpoenaed third parties identified in Defendant's initial disclosures, and after the targets of those subpoenas were provided extensions in which to comply, Plaintiff received important new evidence responsive to his subpoenas over several weeks right up to the Court's Order on March 6, 2023, including from ███ *mere hours* before this Order. *See* **Exhibit A** hereto, Declaration of Philip Fraietta at ¶ 3.

Defendant also incorrectly argues that *Nashel v. New York Times*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) "put Plaintiff on notice that a PPPA claim based on an obsolete 'data card' will not survive a Rule 12(b)(6) motion to dismiss." Resp. at 5, PageID.1824. But *Nashel* is non-binding and is readily distinguishable. The *Nashel* plaintiffs pointed to data cards from 2007-2008 to support allegations of disclosures eight years later. *See Nashel*, 2022 WL 6775657, at *5. Here, the data card post-dates the period (ECF No. 11, 2/28/2022 data card), and, as the information is cumulative of that collected in the past (*id.*, "COUNTS THROUGH 02/28/2022"), Plaintiff had a reasonable belief that the allegations were sufficient. Other courts, prior to the Court's March 6, 2023 Order, have agreed. *See Briscoe v. NTVB Media Inc.*, 2023 WL 2950623 (E.D. Mich. Mar. 3, 2023) (finding similar allegations, including a post-dated data card, to be adequate in sufficiently alleging claim); *see also Batts v. Gannett Co.*, 2023 WL 3143695 (E.D. Mich. Mar. 30, 2023) (post-3/6/23 decision holding the same); *Gaines v. Nat'l Wildlife Fed.*, 2023 WL 3186284 (E.D. Mich. May 1, 2023) (same).

Further, discovery has revealed—as described in Plaintiff's proposed SAC—that Defendant ███████████████████████████████████ ██████ at least once a month throughout the relevant pre-July 31, 2016 period for, *inter alia*, data appending, modeling, data exchange (including prospecting via data cooperatives), and list rental purposes, pursuant to contracts between Defendant and each of these data companies. *See* SAC ¶¶ 6-15, PageID.1673-79.

Even if *Nashel* somehow changed how district courts should apply Rules 8 and 12 in PPPA cases (and it did not, nor could it), Plaintiff—despite his reasonable diligence—had yet to receive the additional corroborating evidence, received *hours* prior to the Court's Order. A plaintiff is not required to amend upon receipt of any probative evidence throughout discovery—no Court has *required* such a practice and surely judicial efficiency would be lost with each additional request to amend.

Defendant further argues that there is no "manifest injustice" because "nobody has 'deprived' Plaintiff of the opportunity to bring an amended complaint based on these supposedly 'new facts.'" Resp. at 11, PageID.1830. However, there is no concrete rule that pre-judgement evidence cannot qualify as "new" under Rules 59(e) or 60(b). Plaintiff exercised reasonable diligence, uncovering new, previously unavailable evidence during discovery, some as recently as a *week prior* to filing this Motion (hours before the Court's Order). *See* Ex. A; PageID.1723.

Defendant claims that *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860

F.3d 425, 431 (6th Cir. 2017) "is on point" and that there is no manifest injustice because Plaintiff chose to wait for dismissal before moving to amend. *See* Resp. at 11-12, PageID.1830-31. However, *Michigan Flyer* itself acknowledges that it is readily distinguishable, discussing the differences between it and *Morse v. McWhorter*, 290 F.3d 795 (6th Cir. 2002); *Morse* permitted amendment where new *facts*—as opposed to new legal arguments—were obtained just prior to the order of dismissal. *See Michigan Flyer*, 860 F.3d at 432 ("*Morse* concerned factual allegations rather than legal issues, as are presented in this case…[here] however, Plaintiffs proposed to add a new claim altogether."). Defendant acknowledges this distinction, arguing that the *Michigan Flyer* plaintiff there had been "well aware of **arguments**" but "strategically…proceeded[.]" Resp. at 11-12, PageID.1830-31 (citing *Michigan Flyer*, 860 F.3d at 431) (emphasis added). Here, Plaintiff's Motion was not the product of any "wait and see" strategic decision concerning legal *arguments*, Resp. at 12, PageID.1831, but in response to the Court's Order of dismissal, which was based on Plaintiff's purported failure "to plead sufficient *factual matter* to support a plausible claim." Op., PageID.1602. Plaintiff's amendments concern previously unavailable factual evidence obtained during discovery; Plaintiff believed (as he was entitled to) that his FAC adequately stated a claim for relief; Plaintiff was in the process of analyzing new evidence in response to third-party subpoenas when this Court issued its Order on March 6, 2023; and

Plaintiff acted promptly, filing the Motion days after the March 6 Order to cure the deficiencies identified by the Court.[4]

Defendant next contends that "Rule 15(a) forecloses Plaintiff's request for leave" "because the proposed amendment is futile, and the product of bad faith and dilatory tactics." Resp. at 12, PageID.1831. Nothing could be further from the truth. Defendant relies upon a spreadsheet, Ex. 2 to Resp., purportedly indicating that Plaintiff's affirmatively requested that Defendant not rent his information. Defendant contends that Plaintiff "omits any mention of his opt-out status" in his Motion or SAC, and that "[t]his fact is fatal to Plaintiff's PPPA claim, confirming that Defendant did not disclose his information in violation of the PPPA." Resp. at 13, PageID.1832.

But this argument fails for multiple reasons. First, at this stage, Plaintiff's allegations are to be accepted as true. Further, Defendant itself ***admits that it*** ██████████████████████████, stating: ██████████████████████ ████████████████████████████████████████████████ ██████████████████████[.]'" Resp. at 14, PageID.1833. But Defendant was more than a mere ████████████████████████████████; for

---

[4]     Defendant's reliance on *Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, 616 F.3d 612, 616-17 (6th Cir. 2010) is also misplaced. In *Leisure Caviar*, the court found that the plaintiffs knew, or were on notice of, the "new evidence" at the time they filed their *original* complaint, and failed to come forward with any evidence to corroborate an additional cause of action. *See id.* at 616-17.

example, ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Disclosures for purposes of data appending, like the disclosures ████████

████████████, are plainly actionable under the PPPA. *See Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 201-02 (S.D.N.Y. 2017) (granting plaintiff's motion for summary judgment in a PPPA case based on disclosures to Experian).

But the Court need not resolve such issues now. At this stage, ███████████

████████████████████████ did not violate the PPPA is plainly insufficient to override Plaintiff's allegations that plausibly establish that these disclosures *did violate* the PPPA. *See* proposed SAC at ¶¶ 7, 11. Plaintiff's allegations must be accepted as true, and they readily satisfy the *Iqbal/Twombley* standard because they plausibly give rise to a claim for relief under the PPPA. *See, e.g.*, *Gaines*, 2023 WL 3186284, at *5 (denying motion to dismiss where defendant argued alleged disclosures were not violative of the PPPA and holding that "this argument is an attempt to hold [plaintiff] to an inapplicable evidentiary standard at the pleading stage"). Further, any request by Plaintiff does not establish that Defendant did *not* in fact rent Plaintiff's information contrary to his purported request; in many prior cases, Plaintiff's counsel encountered defendants who

disclosed data of subscribers who had the same type of do-not-rent flag associated with their names, and that appears to be exactly what happened here given Defendant's concession that it ████████████████████████████████ is just the tip of the iceberg—Plaintiff has not even had a full opportunity to take discovery.

Based on the do-not-rent flag in its database for Plaintiff, Defendant then leaps to the merits-conclusion that "Defendant did not disclose his information in violation of the PPPA." Resp. at 13, PageID.1832. But Plaintiff's proposed SAC is not limited to allegations that Defendant *rented* his information. Plaintiff alleges that Defendant "rented, ***exchanged, and/or otherwise disclosed***," Plaintiff's information, including specifically to data appenders like ██████ for list-enhancement purposes. *See, e.g.*, SAC, ¶¶ 1-15.[5] Thus, it can hardly be said that this renders Plaintiff's proposed SAC futile.

Defendant further argues that the proposed SAC contains an "absence of allegations plausibly supporting that Defendant disclosed Plaintiff's information during the relevant time period." Def's Resp. at 14, PageID.1833 (citing *Bozung*, 2023 WL 2385004, at *4-6). Defendant's argument fixates solely on the 2022 datacard attached to the FAC, overlooking the additional allegations in the proposed

---

[5]    Defendant even acknowledges this. Resp. at 13, PageID.1832 (stating that "Plaintiff alleges that Defendant 'rented, exchanged, and/or otherwise disclosed' Plaintiff's 'detailed information'").

SAC, such as:

Christianbook ███████████████████████
████████████████████ **during the relevant pre-July 31, 2016 time period**. In response to a subpoena issued by Plaintiff's counsel, ████████████████████████████
█████████████████████████████████████
██████████████████████████, **including during the relevant pre-July 31, 2016 time period**.
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████**during the relevant pre-July 31, 2016 time period**, ████████████
█████████████████████████████

SAC at ¶ 7 (emphasis added); and:


████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████ still **during the relevant pre-July 31, 2016 time period**, ██████████



during the relevant time period

SAC at ¶ 9 (emphasis added). These allegations, in addition to the 2022 data card, provides strong support for Plaintiff's claim, remedies the timing issue, and plausibly alleges that Plaintiff and the proposed Class had their information wrongfully disseminated in violation of the PPPA during the relevant period. These allegations are firmly supported by the ███████████████████, which reflects ████████████████████████ squarely within the relevant period.

Defendant also contends that Plaintiff's proposed SAC is the product of bad faith because, the Motion states, absent the proposed amendment, Plaintiff or another putative class member would be forced to file a separate case based on allegations derived from Plaintiff's newly discovered evidence. Resp. at 14-15, PageID.1833-

34 (citing Mot. at 15-16). But the Motion merely states that "allowing the proposed amendment would serve the interests of judicial efficiency," and "[a]llowing the proposed amendment would be a far more efficient and prudent course forward" as opposed to Plaintiff (or another putative class member) filing a separate case. *See* Mot. at 15-16, PageID.1723-24.[6] To be clear: if this Motion is denied, Plaintiff will both (1) appeal the dismissal and denial of the instant Motion, (2) and, to protect the interests of the proposed class from statute of limitation-based defenses, initiate a new action.

Indeed, this Court's Order did not foreclose the possibility of amendment, dismissing Plaintiff's FAC *without* prejudice, stating that "[a]t this stage…the Court cannot say that no amendment would be warranted, or that no amendment could save the complaint." Op., PageID.1603. The Court acknowledged that Plaintiff "ask[ed] the Court to give him leave to amend his complaint, in the event the Court decide[d] that his allegations [were] not sufficient" while stating that "the Court generally does not consider a request to amend a complaint without a proposed amended complaint." *Id.* This is precisely what Plaintiff has come forward with: a proposed

---

[6]    Defendant contends that "Plaintiff clearly filed his original complaint based on little to no investigation, and did so to obtain free discovery[.]" *See id.* at n.3. But the information obtained in discovery is the exact type of information that would be in the possession of Defendant and third-parties with which Defendant contracts. These surreptitious relationships are difficult for any PPPA plaintiff to pierce absent precisely the discovery that took place here.

SAC alleging facts concerning newly discovered evidence that addresses the issues identified by the Court's Order.

Defendant further contends that "Plaintiff's decision to delay seeking leave to file the proposed SAC until after the Court's dismissal of his PPPA claim constitutes undue delay and requires denial of his Rule 15(a) request." Resp. at 15, PageID.1834. There is no undue delay, bad faith, or dilatory motive here in seeking leave to file his proposed SAC, and Rule 15(a) mandates that leave to amend a pleading be freely given. *See, e.g.*, *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[I]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). Plaintiff was in the process of analyzing discovery that strongly supports the notion that Defendant wrongfully disclosed the information of Plaintiff and putative Class Members in violation of the PPPA during the relevant period, including discovery received mere hours before the Court's Order.

Further, Defendant would not be prejudiced by allowing Plaintiff to file his proposed SAC. Defendant was put on notice wherein the Court left open the possibility of an amendment. Op., PageID.1603. Nor does Plaintiff's SAC overhaul

Plaintiff's case, add claims, nor legal theories, such as in Defendant's *Michigan Flyer*; rather, it presents allegations curing factual defects that this Court believed were present in Plaintiff's FAC. Defendant's Response is evidence of the fact that Defendant has even begun the process of countering Plaintiff's proposed SAC.[7]

Defendant also argues that "[t]he proposed SAC…should be denied as further evidence of bad faith by Plaintiff[,]" arguing that Defendant's documents **confirm** that Plaintiff "███████████████████████████████" Def.'s Resp. at 15, PageID.1834.[8] This is misleading and contradicted by Defendant.

---

[7]    *See, e.g.*, *Morse*, 290 F.3d at 800–01 ("With respect to potential prejudice…it also does not appear that [defendant] would be significantly prejudiced by allowing plaintiffs to file their proposed second amended complaint. The [decision] put [defendant] on notice that plaintiffs would seek to amend…[defendant] also does not have to substantially revise any present defense strategy because the plaintiffs' proposed second amended complaint does not add new substantive claims or overhaul plaintiffs' theory of the case, but merely attempts to remedy the defects identified by the magistrate. [Defendant] has even begun the process of dismantling plaintiffs' proposed second amended complaint…We recognize [defendant] will be inconvenienced by another round of motion practice, but given…the competing interest of the proposed class, such inconvenience does not rise to the level of prejudice that would warrant denial of leave to amend."). A similar lack of prejudice exists here.

[8]    In Defendant's *Bailey v. Papa John's USA, Inc.*, 236 F. App'x 200, 205 (6th Cir. 2007), however, the plaintiff pursued a claim to summary judgment "after the evidence clearly demonstrated that there was no factual basis to support the claim" and that "it wa*s* clear before the summary judgment stage" that the claim lacked the necessary factual basis and evidentiary support, and the plaintiff "either knew, or reasonably should have known" that the claim was meritless. *Id.* at 202-06. Here, Plaintiff seeks to amend to add newly discovered evidence that addresses the very issues noted in the Court's Order, providing a clear factual basis.

Defendant admits that, not only was Plaintiff's ████████████████████████

████████████████████" *See supra*; Resp. at 14, PageID.1833; *see also* proposed

SAC at ¶¶ 7, 11.[9]

At the heart, rather than gamesmanship or reframing legal arguments, Plaintiff's Motion, filed days after the Dismissal Order, merely seeks to amend the operative complaint with a proposed SAC that adds allegations concerning **facts** that Plaintiff uncovered during discovery, including as recently as hours prior to the Court's Order. *See* PageID.1723.

## CONCLUSION

For the reasons above, Plaintiff respectfully requests that this Court grant his Motion.

Dated: May 4, 2023                    Respectfully submitted,

                                      */s/ E. Powell Miller*
                                      E. Powell Miller (P39487)
                                      **THE MILLER LAW FIRM, P.C.**
                                      950 W. University Drive, Suite 300
                                      Rochester, MI 48307
                                      Tel: 248-841-2200
                                      epm@millerlawpc.com

                                      Joseph I. Marchese
                                      Philip L. Fraietta (P85228)
                                      **BURSOR & FISHER, P.A.**
                                      888 Seventh Avenue

---

[9]    Defendant argues that Plaintiff improperly relies on stricken discovery which allegedly contradicts other documents previously produced. Resp. at 16, PageID.1835. But Defendant fails to identify any such purportedly contradictory documents.

New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiff, following LCivR 7.3(b)(i)-(ii), used 4,296 words in Plaintiff's foregoing Brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached Brief.

Dated: May 4, 2023                  Respectfully submitted,

                                    <u>*/s/ E. Powell Miller*</u>
                                    E. Powell Miller (P39487)
                                    **THE MILLER LAW FIRM, P.C.**
                                    950 W. University Drive, Suite 300
                                    Rochester, MI 48307
                                    Tel: 248-841-2200
                                    epm@millerlawpc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIMOTHY BOZUNG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIANBOOK, LLC f/k/a CHRISTIAN BOOK DISTRIBUTORS CATALOG, LLC,<br><br>Defendant. | Case No. 1:22-cv-00304-HYJ-RSK<br><br>Honorable Hala Y. Jarbou<br><br>**PLAINTIFF'S MOTION**<br><br>**JURY TRIAL DEMANDED** |

## DECLARATION OF PHILIP L. FRAIETTA

I, Philip L. Fraietta, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Bursor & Fisher, P.A., one of the counsel of record for Plaintiff Timothy Bozung ("Plaintiff") in this action.  I am an attorney at law licensed to practice in the States of Michigan, New York, New Jersey, and Illinois, and I am a member of the bar of this Court.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.      I make this declaration in support of Plaintiff's unopposed motion for preliminary approval of class action settlement filed herewith. Motion for Relief From  Judgment Pursuant to Fed. R. Civ. P. 59(e)  & Fed. R. Civ. P. 60(b) and for

Leave to File Second Amended Complaint Pursuant to Fed. R. Civ. P. 15(A).

3.      On March 6, 2023, as one of the counsel for Plaintiff, I received

certain discovery material in this matter from ████████████████████

███████ .

4.      Attached hereto as **Exhibit 1** is a copy of the cover letter from

████████ which references the discovery material being transmitted to counsel for

Plaintiff on March 6, 2023.

5.      This material was received mere hours before the Court's issuance of

its March 6, 2023 Opinion and Order, ECF Nos. 51 and 52.

I declare under penalty of perjury that the above and foregoing is true and

accurate.  Executed this 3rd day of May at New York, New York.

_____
Philip L. Fraietta

# Exhibit 1

# JONES DAY

110 NORTH WACKER DRIVE • SUITE 4800 • CHICAGO, ILLINOIS 60606

TELEPHONE: +1.312.782.3939 • JONESDAY.COM

DIRECT NUMBER: 3122694134
KATHERINESMITH@JONESDAY.COM

March 6, 2023

VIA E-MAIL ONLY

Philip L. Fraietta
Bursor & Fraietta, Bursor & Fisher, P.A.
888 7th Ave.
New York, NY 10019

Re:    Timothy Bozung v. Christianbook, LLC, Case No.
1:22-cv-00304

Dear Counsel:

I write in response to Plaintiff Timothy Bozung's ("Plaintiff") January 10, 2023 subpoenas to ███████████████████████████████████████████ objections attached.

A separate email with an FTP link to ████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

Per our conversations on this matter and subject to the attached objections, ██████ ███████████████████████████████████████████

Very truly yours,

Katherine E. Smith

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# Exhibit B
(filed under seal)